Michael T. Risher (CA SBN 191627)
mrisher@aclunc.org
Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street, 2nd Floor
San Francisco, California 94111
Telephone:    415-621-2493
Facsimile:    415-255-8437

Attorneys for Plaintiffs
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA and
SAN FRANCISCO BAY GUARDIAN

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; *SAN FRANCISCO BAY GUARDIAN*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br><br> Defendant. | CASE No.: 12-cv-4008-MEJ <br><br> **PLAINTIFFS' NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date:  August 22, 2013 <br> Time:          10:00 a.m. <br> Location:      San Francisco U.S. Courthouse <br> Judge:         Hon. Maria-Elena James |

1    **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

2    TO DEFENDANT AND ITS COUNSEL OF RECORD:  PLEASE TAKE NOTICE

3    THAT on August 22, 2013 at 10 am, or as soon thereafter as the parties may be heard,

4    Plaintiffs American Civil Liberties Union of Northern California and San Francisco Bay

5    Guardian will bring for hearing a cross-motion for partial summary judgment pursuant to

6    Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") action

7    on the ground that Defendant is unlawfully withholding agency documents, in particular

8    that the exemptions asserted by the agency as to the documents processed thus far are

9    inapplicable.  The hearing will take place before the Honorable Maria-Elena James, in

10   Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  This

11   motion is based on this notice, the attached memorandum of points and authorities, the

12   accompanying Declaration of Linda Lye and attached exhibits, all pleadings and papers

13   filed in this action, and such oral argument and evidence as may be presented at the

14   hearing on the motion.

15

16   Dated:  June 27, 2013                         Respectfully submitted,

17                                                 By: _____/s/_____
                                                              Linda Lye
18

19                                                 Michael T. Risher
                                                   Linda Lye
20                                                 AMERICAN CIVIL LIBERTIES UNION
                                                   FOUNDATION OF NORTHERN CALIFORNIA
21                                                 39 Drumm Street
                                                   San Francisco, CA 94111
22                                                 Tel:    (415) 621-2493
                                                   Fax:    (415) 255-8437
23
                                                   Attorneys for Plaintiffs
24

25

26

27

28

*ACLU-NC, et al. v. U.S. DEPARTMENT OF JUSTICE,* CASE No.: 12-cv-4008-MEJ
PLTFS' CROSS-MOTION AND OPPOSITION

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND .............................................................................................. 1

III.  ARGUMENT ................................................................................................... 4

    A.  Statutory Framework ............................................................................... 4

        1.  FOIA Requires Disclosure Unless the Government Can Justify
           Withholding ..................................................................................... 4

        2.  FOIA Reflects a Congressional Aversion to Secret Law ................... 5

    B.  DOJ's Position On The Legal Prerequisites For Obtaining Location
       Tracking Orders Constitutes The Agency's Working Law ......................... 8

    C.  The Withheld Documents Are Not Exempt Work Product Because They
       Simply Set Forth General Legal Standards ................................................ 11

        1.  The EOUSA Documents Are Not Work-Product ............................. 11

        2.  The Criminal Division Documents Are Not Work-Product ............. 12

        3.  Publicly Available Documents Illustrate Why The Withheld
           Documents Are Not Exempt Work Product ................................... 13

    D.  The Criminal Division Documents Are Not Covered By
       Exemption 7(E) ....................................................................................... 15

        1.  The Withheld Documents Pertain to Well-Known Location
           Tracking Techniques ....................................................................... 15

        2.  Disclosure of Legal Standards Do Not Raise A Risk Of
           Circumvention ............................................................................... 18

    E.  DOJ Has Failed To Demonstrate That It Released All Reasonably
       Segregable Information ............................................................................ 20

    F.  FOIA Does Not Permit Agencies to Withhold Non-Exempt
       Portions Of Responsive Records .............................................................. 21

IV. CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ............................................ 11

*American Immigration Council v. United States Department*
 *of Homeland Security*, 905  F.Supp.2d 206 (D.D.C. 2012).......... 8, 11, 12, 13

*Blakely v. Washington*, 542 U.S. 296 (2004) ....................................................... 13, 14

*Branch v. FBI,* 658 F.Supp. 204 (D.D.C. 1987)......................................................... 21

*Brennan Center v. Dep't of Justice*, 697 F.3d 184 (2d Cir. 2012) ............................. 9

*Church of Scientology v. Dep't of Army*, 611 F.2d 738 (9th Cir. 1979) ................... 22

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854
 (D.C. Cir. 1980)……………………………………...…………………………..7,10

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051
 (D.C. Cir. 1981)…………...............………………………….……………..…..6

*Davin v. Dep't of Justice*, 60 F.3d 1043 (3d Cir. 1995) ........................................... 17

*Delaney, Migdail & Young v. IRS*, 826 F.2d 124 (D.C. Cir. 1987)........................... 12

*Dettmann v. U.S. Department of Justice*, 802 F.2d 1472 (D.C. Cir. 1986).............. 22

*Feshbach v. SEC*, 5 F.Supp.2d 774 (N.D. Cal. 1997). ................................. 18, 19, 23

*Fitzgibbon v. United States Secret Serv.*, 747 F.Supp. 51 (D.D.C. 1990)................ 17

*Friedman v. United States Secret Serv.*, _F.Supp.2d_, 2013
 WL 588228 (D.D.C. Feb. 14, 2013)................................................. 18, 19

*Gordon v. FBI*, 390 F.Supp.2d 897 ................................................................... 20, 21

*Heggestad v. United Dep't of Justice*, 182 F.Supp.2d 1
 (D.D.C.2000)……………………………………..……………………………13

 *Hickman v. Taylor*, 329 U.S. 495 (1947) .......................................................... 7, 13

*In re Application of the United States for an Order Pursuant*
 *to 18 U.S.C. Section 2703(d)*, _F.Supp.2d _, 2012 WL
 4717778 (S.D. Tex. Sept. 26, 2012)............................................................ 3

*In re Application of the United States for an Order Pursuant*

    *to 18 U.S.C. Section 2703(d)*, _F.Supp.2d_, 2013 WL

    1934491 (S.D. Tex. May 8, 2013) ................................................................. 3

*In re Application of U.S. for an Order Directing a Provider of*

    *Elec. Commc'n Serv. to Disclose Records to Gov't,*

    620 F.3d 304 (3d Cir. 2010) ................................................................. 2, 3, 9

*In re Application*, 534 F.Supp.2d 585 (W.D. Pa. 2008) .............................................. 9

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*,

    562 F.Supp.2d 876 (S.D.Tex. 2008) ................................................... 3, 4, 10

*Jordan v. United States Department of Justice*, 591 F.2d 753

    (D.C. Cir. 1978)…………….................. ……………………6, 7, 10, 11, 13

*Judicial Watch v. United States Department of Homeland Security*,

    _F.Supp.2d_, 2013 WL 753437 (D.D.C. Feb. 28, 2013) ............. 7, 8, 11, 12

*Lawyers' Comm. for Civil Rights of San Francisco Bay Area v.*

    *Dep't of Treasury,* 2008 WL 4482855 (N.D. Cal. Sept. 30, 2008) ............. 21

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242

    (D.C. Cir. 1977) ...................................................................................... 20

*Minier v. Central Intelligence Agency*, 88 F.3d 796 (9th Cir. 1996) ............... 5, 6, 17

*Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350 (2d Cir. 2005)............... 8

*Nat'l Immigration Project of Nat'l Lawyers Guild v. United States*

    *Dep't of Homeland Sec.*, 868 F.Supp.2d 284 (S.D.N.Y. 2012) .................... 8

*Nat'l Sec. Archive v. FBI*, 759 F.Supp. 872 (D.D.C. 1991) ....................................... 17

*New York Times v. United States Dep't of Defense*, 499 F.Supp.2d 501

    (S.D.N.Y. 2007)………………………………………………………....13

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)………............……………10

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ................................. 5, 6, 9, 10

*People v. Weaver*, 12 N.Y.3d 433 (2009) .................................................................. 2

*PHE, Inc. v. Dep't of Justice*, 983 F.2d 248 (D.C. Cir. 1993) ...................... 18, 19, 20

iii

*Press-Enterprise Co. v. Superior Court of California*,

    478 U.S. 1 (1986)……………………………………….…………10

*Raytheon Aircraft Co. v. United States Army Corps of Eng'rs*,

    183 F.Supp.2d 1280 (D. Kan. 2001)………………...……………………13

*Rosenfeld v. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995)................................. 15, 17

*United States v. Bus. of the Custer Battlefield Museum and Store*

    *Located at Interstate 90, Exit 514, South of Billings,*

    *Montana,* 658 F.3d 1188, 1196 (9th Cir. 2011)……................................…10

*United States v. Jones,* _U.S._, 132 S. Ct. 945 (2012)........................................ 1, 2, 9

*United States v. Katzin*, No. 12-2548 (3d Cir. Aug. 17, 2012) ................................. 2

*United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012) .............................................. 2

*United States v. Rigmaiden*, 2013 WL 1932800 (D. Ariz. May 8, 2013) .................. 3

*Voinche v. FBI*, 412 F.Supp.2d 60 (D.D.C. 2006) ..................................................... 19

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ....................................................... 5, 20

**Statutes**

18 U.S.C. § 2703(d)........................................................................................................ 9

5 U.S.C. § 552 .................................................................................................... passim

**Other Authorities**

H.R. Rep. No. 1497 (1966) ........................................................................................ 6

Davis, *The Information Act:  A Preliminary Analysis*,

    34 U. Chi. L. Rev. 761, 797 (1967) ........................................................... 5, 6

*Definition of Telematics*, PC Magazine, http://www.pcmag.com/encyclopedia/term/

    52693/telematics…..………………………………………………........16

*FOIA Counselor Q & A*, U.S. Dep't of Justice FOIA Post ……..…………...…..….22

Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming*

    *ECP's Secret Docket*, 6 Harv. L. & Pol. Rev. (2012)................................... 3

iv

*ACLU-NC, et al. v. U.S. DEPARTMENT OF JUSTICE,* CASE No.: 12-cv-4008-MEJ
PLTFS' CROSS-MOTION AND OPPOSITION

**Rules**

Fed. R. Civ. P. 26(b)(3) ................................................................................................ 7

## I.     INTRODUCTION

Plaintiffs in this Freedom of Information Act ("FOIA") suit seek to shed light on the federal government's surveillance practices, in particular, the use of location tracking technology. Troublingly, Defendant Department of Justice ("DOJ") refuses to release documents that set forth the agency's position on the legal standards that govern use of this technology.  Congress enacted FOIA to ensure that the public has access to documents that have the force and effect of law and to prohibit federal agencies from creating "secret law."  In attempting to withhold from public view the legal standards that federal prosecutors abide by when seeking court authorization for location tracking, DOJ seeks to develop a body of secret surveillance law.  FOIA does not tolerate such a result.

The documents at issue are not exempt from disclosure.  The attorney work-product doctrine does not apply because the documents contain no case-specific analysis; instead, they simply set forth general legal standards and are conceptually indistinguishable from legal manuals and guidelines that numerous courts have ordered agencies to disclose.  Nor are the documents covered by the exemption for investigative techniques disclosure of which would give rise to a risk of circumvention:  They pertain to well-known technologies used to track individuals through cell phones and vehicles.  DOJ has failed to offer any explanation of, much less meet its burden to demonstrate, how disclosure of these documents would risk circumvention.  More fundamentally, disclosure of documents setting forth the government's analysis of its constitutional and statutory obligations when seeking location information does not create a risk of circumvention.  It serves the crucial public purpose of holding the government accountable.

Finally, the government's claim that certain records contain some non-disclosable private information, such as employee names, does not support its refusal to release entire documents. Personally identifying information is easily segregable and DOJ has a statutory obligation to release the remainder of the documents.

## II.    BACKGROUND

"Recent years have seen the emergence of many new devices that permit the monitoring of a person's movements." *United States v. Jones*, _U.S._, 132 S. Ct. 945, 963 (2012) (Alito, J.,

concurring).  Advances in new technology "make long-term monitoring relatively easy and cheap."  *Id.* at 964.  But such monitoring also raises privacy concerns because it "generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations," such as "'trips to the psychiatrist, the plastic surgeon, the abortion clinic, . . . the mosque, synagogue or church, the gay bar and on and on.'"  *Id.* at 955 (Sotomayor, J., concurring) (quoting *People v. Weaver*, 12 N.Y.3d 433, 441-42 (2009)).  Last year, the Supreme Court unanimously held in *Jones* that use of a Global Positioning System ("GPS") device to track a suspect's vehicle constitutes a "search" within the meaning of the Fourth Amendment.  *See id.* at 949; *id.* at 954 (Sotomayor, J., concurring); *id.* at 964 (Alito, J., concurring).  Yet even after *Jones*, the United States government has asserted the position in litigation that it need not obtain a warrant to use GPS devices to track suspects.  *See, e.g.,* Br. for Appellant United States of America at 18, *United States v. Katzin*, No. 12-2548 (3d Cir. Aug. 17, 2012), ECF No. 003110991508, attached as Lye Decl., Ex. 3.

Information in the public domain makes clear that GPS is only one of many technologies available to the government to track location through vehicles and cellular phones.  And just as the technology is evolving, so too are the government's practices and the legal standards governing its use.

For example, the government routinely requires wireless carriers to divulge information about the historical and real-time location of individual cellular phones.  Courts are split on whether the government must obtain probable cause warrants or can rely on less demanding statutory orders to obtain this information.  *Compare In re Application for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't*, 620 F.3d 304, 319 (3d Cir. 2010) [hereinafter *In re Cell Provider Disclosure*] (judge may require government to obtain search warrant for cell site records), *with United States v. Skinner*, 690 F.3d 772, 781 (6th Cir. 2012) (no search warrant needed).[1]

---

[1] Wireless carriers provide coverage through a network of base stations, also known as cell towers, that connect wireless devices on the network to the regular telephone network.  Cell site location information, that is, information about the location of the cell towers, including the "face" of the cell tower, with which a cellular phone connects and the time specific calls were

1    The government also tracks location through "cell tower dumps," that is, requests to

2    wireless carriers for disclosure of "all telephone numbers and all other subscriber information"

3    from particular cell towers.  *See In re Application of the United States for an Order Pursuant to*

4    *18 U.S.C. Section 2703(d)*, _F.Supp.2d _, 2012 WL 4717778, at *1 (S.D. Tex. Sept. 26, 2012)

5    (government sought cell-tower dump where "victim of the crime had a cell phone that was taken

6    by the subject of the investigation when he left the crime scene").  At least one court has required

7    such requests to be supported by probable cause.  *See id.* at *3-4; *see also In re Application of the*

8    *United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, _F.Supp.2d_, 2013 WL

9    1934491, at *4-5 (S.D. Tex. May 8, 2013) (rejecting application under 18 U.S.C. § 2703(d)'s

10   "specific and articulable facts" standard).

11   In addition, the government tracks people using "cell site simulator" technology.  The

12   federal government has publicly acknowledged that such devices operate by mimicking a wireless

13   provider's "cell tower and sen[ding] signals to, and receiv[ing] signals from" a target device,

14   thereby obtaining real-time data that can track a suspect's location "precisely within [the

15   person's] apartment."  *United States v. Rigmaiden*, 2013 WL 1932800, at *15 (D. Ariz. May 8,

16   2013).

17   Each type of technology presents critical questions of fact, law, and policy:  Does the

18   government seek *any* court approval to use the device?  And if so, *what type* of court

19   authorization does it seek – statutory court orders or probable-cause warrants?

20   The answers to these questions are only partially available to the public because the

21   federal government typically obtains electronic surveillance orders under seal, and those orders

22   often remain under seal indefinitely.  *See In re Sealing and Non-Disclosure of Pen/Trap/2703(d)*

23   *Orders*, 562 F.Supp.2d 876, 878 (S.D.Tex. 2008) [hereinafter *In re Sealing*] (3,886 electronic

24   surveillance orders issued under seal in Southern District of Texas between 1995 and 2007,

25   99.7% of which "remain[ed] under seal [in 2008], many years after [their initial] issuance");

26   Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECP's Secret Docket*, 6 Harv. L. &

27

28   made, provides information about the location of the cellular phone at various points in time.  *See*
     *In re Cell Provider Disclosure*, 620 F.3d at 308.

1    Pol. Rev. 313, 322 (2012) (estimating that federal magistrate judges issued more than 30,000

2    orders for electronic surveillance under seal in 2006, "more than thirty times the annual number

3    of [Foreign Intelligence Surveillance Act] cases").

4         Yet the answers to these questions have enormous consequence for democratic

5    governance. "It may very well be that, given full disclosure of the frequency and extent of these

6    [electronic surveillance] orders, the people and their elected representatives would heartily

7    approve without a second thought.  But then again, they might not." *In re Sealing*, 562 F.Supp.2d

8    at 886.

9         Plaintiffs, a civil-liberties organization and an independent newspaper, thus seek in their

10   FOIA request information pertaining to the federal government's policies and practices in using

11   location tracking technology in order to shed light on the government's surveillance activities.

12   *See* FOIA Request, attached as Lye Decl., Ex. 1.[2]

13        On March 22, 2013, Defendant Department of Justice ("DOJ") released some responsive,

14   non-exempt records.  *See* Kornmeier Decl. ¶ 5, ECF No. 23-1; Cunningham Decl. ¶ 11, ECF No.

15   23-2.  However, it has withheld in full or in part documents pertaining to the agency's legal

16   position regarding the federal government's use of various location tracking technologies.  The

17   withheld information falls into two broad categories:

18        (1)   guidance memos prepared by DOJ to inform its staff about the department's legal
                position with respect to various location tracking technologies (*see* Kornmeier
19              Decl. ¶ 9 & Ex. C (EOUSA Doc. 2); Cunningham Decl. ¶¶ 15-16 & Ex. 2 (CRM
                One to Three and Five); and

20        (2)   template applications and orders as well as excerpts from a manual used by United
                States Attorneys to obtain location information (*see* Kornmeier Decl. ¶ 9 & Ex. C
21              (EOUSA Doc. 1); Cunningham Decl. ¶ 16 & Ex. 2 (CRM Four)).

22   **III.    ARGUMENT**

23        **A.    Statutory Framework**

24             **1.    FOIA Requires Disclosure Unless the Government Can Justify
                        Withholding**

25   Before turning to DOJ's claims of exemptions, we set forth the statutory framework.

26   _____

27   [2] Pursuant to stipulated court order, the parties will address an additional part of Plaintiffs' FOIA
     request – pertaining to actual requests, subpoenas, and applications for court orders or warrants –
28   on a subsequent summary judgment motion.  *See* Stip. Re: Briefing Sched. 6:7-8, ECF No. 22.

1  FOIA affirmatively requires agencies to make public several specified categories of

2  documents.  *See* 5 U.S.C. § 552(a)(1)-(2) (2011).  Some of these must be published in the Federal

3  Register.  *See id.* at § 552(a)(1).  With respect to others – including, most relevant here,

4  "statements of policy and interpretations which have been adopted by the agency and are not

5  published in the Federal Register" – agencies "*shall* make [them] available for public inspection

6  and copying."  *Id.* at § 552(a)(2)(B) (emphasis added).

7  Documents that do not fall into either of these categories must also be made available to

8  the public, unless the government shows that they fall into one or more of FOIA's nine statutory

9  exemptions from disclosure.  *See id.* at §§ 552(a)(3) & (b)(1)-(9).  The government bears the

10  burden of establishing an exemption, and it must do so with non-conclusory affidavits.  *See*

11  *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996) (government bears

12  "burden of proving the applicability of an exemption"); *Wiener v. FBI*, 943 F.2d 972, 977 (9th

13  Cir. 1991) (government must submit non-conclusory affidavits that provide "a particularized

14  explanation of how disclosure of the particular document would damage the interest protected by

15  the claimed exemption").

16  **2.      FOIA Reflects a Congressional Aversion to Secret Law**

17  The case law is clear that agency policies and documents setting forth the reasons

18  underlying those policies constitute an agency's "working law" and must be disclosed to the

19  public.  FOIA prohibits agencies from creating "secret law."  Nor can an agency clothe its

20  working law in secrecy simply because it was drafted by or for attorneys.  In recognition of this,

21  Exemption 5's qualified privilege for attorney work product applies only to documents prepared

22  in anticipation of litigating a *particular* matter.  It does not extend to an agency's policy

23  governing how to handle litigation in general.

24  As the Supreme Court has explained, "[t]he affirmative portion of the Act," discussed

25  above, that "expressly requir[es] indexing of . . . 'statements of policy and interpretations which

26  have been adopted by the agency,'" "represents a strong congressional aversion to 'secret

27  (agency) law.'"  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (quoting 5 U.S.C. §

28  552(a)(2) and Davis, *The Information Act:  A Preliminary Analysis*, 34 U. Chi. L. Rev. 761, 797

1  (1967)).  The Act embodies "an affirmative congressional purpose to require disclosure of

2  documents which have 'the force and effect of law.'"  *Id.* (quoting H.R. Rep. No. 1497, at 7

3  (1966), U.S. Code Cong. & Admin. News, 1966, p. 2424).

4       Exemption 5 – which covers "inter-agency or intra-agency memorandums or letters"

5  protected by the deliberative process and attorney work product/attorney-client privileges – does

6  not allow the government to withhold an agency's working law.  5 U.S.C. § 552(b)(5) (2011);

7  *Sears*, 421 U.S. at 149.  To the contrary, "[e]xemption 5, properly construed, calls for 'disclosure

8  of all "opinions and interpretations" which embody the agency's effective law and policy.'"  *Id.* at

9  153 (quoting Davis, *supra* at 797).  This exemption simply shields an agency's "'group thinking

10  in the process of working out its policy and determining what its law shall be,'" in part because

11  the public is only "marginally concerned" with learning about a policy or the reasons in support

12  of a position "an agency has rejected."  *Sears*, 421 U.S. at 152, 153 (quoting Davis*, supra* at 797).

13  By contrast, "the public is vitally concerned with the reasons which did supply the basis for an

14  agency policy actually adopted."  *Id.* at 152.  As a result, an actual "agency policy" and "the

15  reasons which … supply the basis for" its adoption "constitute the 'working law' of the agency,"

16  which must be disclosed.  *Sears*, 421 U.S. at 152-53.

17       Applying these principles, courts have repeatedly rejected agency efforts to withhold

18  documents setting forth agency policy governing how agency attorneys are to handle litigation.

19  In *Jordan v. United States Department of Justice*, 591 F.2d 753 (D.C. Cir. 1978), the D.C. Circuit

20  rejected DOJ's effort to withhold documents "relating to the exercise of prosecutorial discretion

21  by the United States Attorney for the District of Columbia and his assistants" on Exemption 5

22  deliberative process and attorney work product grounds.  *Id.* at 755, 772.[3]  The documents, the

23

24      [3] *Jordan* also held that the disputed documents were not exempt under Exemption 2, for

25  "personnel rules and practices."  *Id.* at 763 (quoting 5 U.S.C. § 552(b)(2)).  The D.C. Circuit
subsequently rejected *Jordan*'s analysis of Exemption 2.  *See Crooker v. Bureau of Alcohol*,

26  *Tobacco & Firearms,* 670 F.2d 1051, 1073 (D.C. Cir. 1981) (finding exempt Bureau of Alcohol,
Tobacco and Firearms training manual prescribing investigative techniques).  But *Crooker*, left

27  undisturbed *Jordan*'s Exemption 5 analysis.  Moreover, *Crooker* was subsequently abrogated by
the Supreme Court's decision in *Milner v. Dep't of Navy*, _U.S._, 131 S.Ct. 1259 (2011).

28

1   court found, were "instructions or guidelines issued by the U.S. Attorney and directed at his

2   subordinates" and thus "constitute[d] [the agency's] 'effective policy.'"  *Id.* at 774.

3        The *Jordan* court had no difficulty rejecting DOJ's work product argument.  The work

4   product privilege shields materials "prepared in anticipation of litigation," in order to guard

5   against disclosure of the "mental impressions, conclusions, opinions, or legal theories of a party's

6   attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3); *Hickman v.*

7   *Taylor*, 329 U.S. 495 (1947).  The Manual and Guidelines at issue in *Jordan* were "promulgated

8   as general standards to guide the Government lawyers" in the exercise of prosecutorial discretion;

9   they did not contain the type of "factual information, mental impressions" and "legal strategies

10  relevant" to a "particular trial" that the work-product privilege was intended to protect.  *Id.* at

11  775-76.

12       In *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980), the

13  D.C. Circuit rejected the agency's assertion of deliberative process and work product privilege as

14  to memoranda prepared by agency attorneys in response to requests from field staff for

15  "interpretations of regulations."  *Id.* at 857-58; *see also id.* at 865-66, 868.  The memoranda were

16  "neutral, objective analyses of agency regulations.  They resemble, in fact, question and answer

17  guidelines which might be found in an agency manual."  *Id.* at 863.  "A strong theme of our

18  opinions," the court explained, "has been that an agency will not be permitted to develop a body

19  of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the

20  public."  *Id.* at 867.

21       More recently, in *Judicial Watch v. United States Department of Homeland Security*,

22  _F.Supp.2d_, 2013 WL 753437, at *15 (D.D.C. Feb. 28, 2013), the court found "agency policies

23  and instructions regarding the exercise of prosecutorial discretion in civil immigration

24  enforcement," disclosable under FOIA.  Even though they were "in a literal sense" prepared "'in

25  anticipation of litigation,'" they set forth "'general standards' to instruct ICE staff attorneys in

26  determining whether to exercise prosecutorial discretion in specific categories of cases," and thus

27  did "not anticipate litigation in the way the work-product doctrine demands."  *Id.*  This was so

28

1   because they did not contain mental impressions or legal theories "relevant to any specific,

2   ongoing or prospective case or cases." *Id.*

3        Similarly, *American Immigration Council v. United States Department of Homeland

4   Security*, 905 F.Supp.2d 206 (D.D.C. 2012), rejected an agency's assertion of deliberative process

5   and work-product privilege for documents relating to "the role of counsel in immigration

6   proceedings." *Id.* at 211.  For example, the court found disclosable a document providing

7   instructions to "adjudication officers" and "attorneys appearing before [] adjudication officers" on

8   "interview techniques" because the document "conveys existing policies."  *Id.* at 219; *id.* at 218

9   (FOIA "will not … permit[] [agency] to develop a body of 'secret law'") (citation omitted).  It

10  also found disclosable documents governing how agency employees were to interact with private

11  counsel during certain legal proceedings and a legal memorandum regarding whether "an INS

12  regulation creates a right to counsel for people seeking admission as refugees."  *Id.* at 221-22.  A

13  "neutral, objective analysis" of the law that "convey[s] routine agency policies" but does not

14  relate to "any 'particular transaction,'" is not covered by the work-product privilege, even if

15  "those policies happen to apply in agency litigation."  *Id.* at 222; *see also Nat'l Council of La

16  Raza v. Dep't of Justice*, 411 F.3d 350, 360 -361 (2d Cir. 2005) (DOJ memos regarding authority

17  of state and local police to enforce immigration laws not exempt from disclosure under

18  deliberative process or attorney client privileges); *Nat'l Immigration Project of Nat'l Lawyers

19  Guild v. United States Dep't of Homeland Sec.*, 868 F.Supp.2d 284, 289, 295, 297 (S.D.N.Y.

20  2012) (documents relating to agency's implementation of policy of facilitating return to country

21  of aliens who have been removed from country but thereafter prevailed in petition for review in

22  court not exempt from disclosure under deliberative process or work-product privileges).

23      **B.**    **DOJ's Position On The Legal Prerequisites For Obtaining Location Tracking
24  Orders Constitutes The Agency's Working Law**

25       DOJ must disclose the documents at issue here because they constitute the agency's

"working law."

26       "Exemption 5 can never apply" to "'final opinions,'" one of the categories of documents

27  that FOIA affirmatively requires agencies to disclose in Section 552(a)(2), because these

28

documents "'have the force and effect of law'" and represent the agency's "'working law.'"

*Sears*, 421 U.S. at 153-54. Just like "final opinions," "statements of policy and interpretations which have been adopted by the agency," are a category of document that FOIA affirmatively requires agencies to disclose, 5 U.S.C. § 552(a)(2) (2011), and as such constitute the agency's "'working law.'" *Sears*, 421 U.S. at 152-53. Under *Sears*, policy statements and interpretations are thus simply outside the ambit of Exemption 5. *See also Brennan Center v. Dep't of Justice*, 697 F.3d 184, 198 (2d Cir. 2012) (documents lose protection of Exemption 5 if they have "'operative effect'" and are "equivalent of 'working law'"). Thus, even if DOJ were correct in its assertion of work-product privilege – which it is not, *see infra* Part III-C – the documents must still be disclosed because FOIA forbids agencies from creating "secret law."

Each of the documents DOJ seeks to withhold constitutes the agency's working law on location tracking technology.

The Executive Office for United States Attorneys ("EOUSA") seeks to withhold two documents. First, it seeks to withhold "templates for an application and order for the use of a pen register and trap and trace device." Kornmeier Decl. Ex. C (Doc. 1). The templates "represent the opinions of attorneys for the U.S. Attorney's Office on the applicable law" and "give advice on what information to include in particular situations." *Id.* It also seeks to withhold portions of a presentation given to "attorneys in the U.S. Attorney's Office for the Northern District of California" providing "a legal analysis of issues that may arise in connection with the use of location tracking devices." *Id.* at Ex. C (Doc. 2).

The Criminal Division also seeks to withhold similar types of documents. The documents described as CRM One, Two and Three are legal memoranda that analyze case law (in particular, *Jones*, 132 S.Ct. 945, and *In re Application*, 534 F.Supp.2d 585 (W.D. Pa. 2008)), and are intended "as an aid for federal prosecutors in their current and future litigations." Cunningham Decl. ¶ 15; *see also id.* ("provides guidance to federal prosecutors"). CRM Four and Five are excerpts from "USABook," which "functions as a legal resource book or reference guide for federal prosecutors." *Id.* at ¶ 16.

1    Like the DOJ manual and guidelines at issue in *Jordan*, all of these documents "are

2  instructions or guidelines issued by the U.S. Attorney and directed at his subordinates.  They

3  consist of positive rules that create definite standards for Assistant U.S. Attorneys to follow. . . .

4  While they may not be absolutely binding on each Assistant, the guidelines do express the settled

5  and established policy of the U.S. Attorney's Office."  *Jordan*, 591 F.2d at 774.  The withheld

6  memos (EOUSA Doc. 2 and Criminal Division CRM One, Two and Three) analyze the law on

7  location tracking; as "neutral, objective analyses" of the law, they must be disclosed.  *Coastal*

8  *States*, 617 F.2d at 863.  The template pen register applications and orders and excerpts of the

9  USABook (EOUSA Doc. 1 and Criminal Division CRM Four and Five) are guidance documents

10  used by agency personnel "in the discharge of [their] duties and in [their] dealings with" the

11  courts and the individuals who are the subject of location tracking orders.  *Id.* at 867.

12  Withholding these documents would result in DOJ "develop[ing] a body of 'secret law'" on

13  location tracking.  *Id.*  FOIA does not tolerate such a result.[4]

14    The danger of secrecy is compounded because – notwithstanding the right of access to

15  judicial records – location tracking orders are frequently applied for and issued under indefinite

16  seal.  *See In re sealing*, 562 F.Supp.2d at 878.  The public thus has a heightened interest in

17  gaining access to DOJ's policy and guidance documents.  *Cf. Sears*, 421 U.S. at 152 ("public is

18  vitally concerned with the reasons which did supply the basis for an agency policy actually

19  adopted").  Without such access, it has limited means of gaining an understanding of the legal

20

_____

21  [4] DOJ does not contend that the documents are covered by the deliberative process privilege, and
rightly so, given that they reflect the agency's final policy position on location tracking issues.  In

22  addition, templates used by Assistant United States Attorneys to draft pleadings that they
ultimately file in court would clearly not be covered by any deliberative process privilege under

23  the doctrine of incorporation.  *See, e.g., Coastal States,* 617 F.2d at 866 ("even if the document is
predecisional at the time it is prepared, it can lose that status if it is adopted, formally or

24  informally, as the agency position on an issue or is used by the agency in its dealings with the

25  public").  And the applications and orders for location tracking that are filed with the court are
judicial records to which the public has a right of access.  *See generally See Press-Enterprise Co.*

26  *v. Superior Court of California*, 478 U.S. 1 (1986); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S.
589, 597 (1978); *United States v. Bus. of the Custer Battlefield Museum and Store Located at*

27  *Interstate 90, Exit 514, South of Billings, Montana*, 658 F.3d 1188, 1196 (9th Cir. 2011) (common
law right of access attaches to search warrant materials once investigation has concluded).

28

prerequisites followed by the federal government in obtaining location tracking orders.  This information is "a topic of considerable public interest."  *ACLU v. Dep't of Justice*, 655 F.3d 1, 12-13 (D.C. Cir. 2011) ("The use of and justification for warrantless cell phone tracking is a topic of considerable public interest:  it has received widespread media attention and has been a focus of … congressional hearings" on whether legislation "should be revised either to limit or to facilitate the practice.") (footnotes omitted).

### C.    The Withheld Documents Are Not Exempt Work Product Because They Simply Set Forth General Legal Standards

The documents DOJ seeks to withhold are *not* exempt work-product.  They are neutral, objective analyses of the law and they do not analyze any particular matter.

### 1.    The EOUSA Documents Are Not Work-Product

DOJ contends that the template used by U.S. Attorneys in the Northern District in applying for pen register/trap and trace orders and that office's legal analysis of issues that "may arise in connection with the use of location tracking devices" are privileged work product because they "incorporate[] interpretations of the law by the U.S. Attorney's Office" and "represent[] the opinions of attorneys in that office."  *See* DOJ Br. 7, ECF No. 23.

DOJ places great emphasis on the fact that these documents are authored by and for lawyers.  But "[t]he work-product rule does not extend to every written document generated by an attorney; it does not shield from disclosure everything that a lawyer does.  Its purpose is more narrow, its reach more modest."  *Jordan*, 591 F.2d at 775.  The withheld documents simply "convey agency policies and instructions regarding" how attorneys should apply for location tracking orders.  *Judicial Watch*, _F.Supp.2d_, 2013 WL 753437, at * 15 (work product did not cover "agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement").  "The fact that those policies happen to apply in agency litigation does not shield [them] from disclosure."  *Am. Immigration Council*, 905 F.Supp.2d at 222.

As in *Jordan*, these documents set forth "*general* standards to guide the Government lawyers" in applying for orders seeking location tracking information; they do not contain

1   "factual information, mental impressions," or "legal theories" relating to any "*particular*" matter.

2   591 F.2d at 775-76 (emphasis added).

3        DOJ's characterization of the template as "provid[ing] advice on what information to

4   include in particular situations" cannot change this.  DOJ Br. 7.  A template is by definition not

5   case-specific and is necessarily authored without regard to any individual fact pattern.  The fact

6   that it provides generalized guidance to attorneys on how to handle "specific categories of cases"

7   does not make it work-product.  *See Judicial Watch*, _F.Supp.2d_, 2013 WL 753437, at *15

8   (ordering disclosure of documents setting forth "'general standards' to instruct ICE staff attorneys

9   in determining whether to exercise prosecutorial discretion in specific categories of cases").

10        **2.**    **The Criminal Division Documents Are Not Work-Product**

11        The five documents sought to be withheld by the Criminal Division are similarly not

12   exempt work-product.

13        In *Delaney, Migdail & Young v. IRS*, 826 F.2d 124 (D.C. Cir. 1987), cited by DOJ, the

14   Second Circuit distinguished between non-exempt 'neutral, objective analyses'" of the law, which

15   "like an agency manual, form[] a body of interpretive law" that guides the agency's conduct, and

16   a memo that sets forth "the agency's attorneys' assessment of the... legal vulnerabilities" of a

17   particular course of action undertaken by an agency (in that case, a statistical sampling program

18   on which the IRS embarked).  *Id.* at 127.

19        CRM One, Two, and Three analyze the implications of recent case law.  According to

20   DOJ, the memos "provide[] guidance to federal prosecutors" by setting forth the legal positions

21   that prosecutors can assert in current and future cases in light of recent decisions.  DOJ Br.  8.

22   CRM Four and Five are portions of the USABook which "functions as a legal resource book and

23   reference guide," and, like the memos, "are designed to aid federal prosecutors in their current

24   and future litigation."  *Id.* at 9.

25        DOJ's own description of the documents suggest that they are "'neutral, objective

26   analyses'" of the law, rather than an assessment of the "legal vulnerabilities" of any particular

27   criminal proceeding.  *Delaney*, 826 F.2d at 127; *see also Am. Immigration Council*, 905

28   F.Supp.2d at 222 ("[n]eutral, objective analysis is 'like an agency manual, fleshing out the

1   meaning of the' law, and thus is not prepared in anticipation of litigation"); DOJ Br. 9 ("up-to-

2   date legal analysis and guidance").

3        Moreover, as a guide for prosecutors in "current and future litigation," the memos clearly

4   set forth principles applicable to the agency's prosecutions across the board, rather than an

5   analysis of any specific prosecution.  *See Am. Immigration Council*, 905 F.Supp.2d at 222

6   (documents that were prepared "literally 'in anticipation of litigation' . . . do not anticipate

7   litigation in the manner that the privilege requires" unless they analyze a "'particular

8   transaction'").  Like the EOUSA documents, these documents are conceptually indistinguishable

9   from the DOJ Manual and guidelines for prosecutors that the D.C. Circuit in *Jordan* ordered

10   disclosed.[5]

### 3.   Publicly Available Documents Illustrate Why The Withheld Documents Are Not Exempt Work Product

11

12        It also bears note that the documents DOJ seeks to withhold in this action are very similar

13   to guidance memos, manuals, and template applications and orders that the DOJ has long made

14   available to the public without causing any injury to the adversary process.  Because these

15   publicly available guidance memos and manuals – like the withheld documents – are not case-

16   specific, they do not reveal the type of "mental impressions" and "private memoranda" that the

17   attorney work-product privilege is intended to protect.  *Hickman*, 329 U.S. at 510.

18        For example, in 2004, the Supreme Court issued *Blakely v. Washington*, 542 U.S. 296, 305

19   (2004), which held that a state court's sentencing of a defendant pursuant to Washington state

20

---

21   [5] DOJ's cases do not support its claim of work-product exemption.  *Raytheon Aircraft Co. v.*

22   *United States Army Corps of Eng'rs*, 183 F.Supp.2d 1280 (D. Kan. 2001), held that certain reports discussing the production, use and disposal of certain chemical compounds were protected work

23   product because they were generated in response to "identified litigation where these issues had arisen."  *Id.* at 1289; *see also id.* ("Corps has sufficiently shown the reports were created in

24   anticipation of specific and pending litigation").  *Heggestad v. United Dep't of Justice*, 182 F.Supp.2d 1 (D.D.C. 2000), involved memos prepared by prosecutors about the decision to

25   prosecute in particular criminal investigations.  *Id.* at 8.  The documents DOJ seeks to withhold, by contrast, set forth general legal standards, not an analysis of issues arising in "identified

26   litigation" or strategic decisions regarding any particular investigation.  *Raytheon*, 183 F.Supp.2d at 1289.  In *New York Times v. United States Dep't of Defense*, 499 F.Supp.2d 501 (S.D.N.Y.

27   2007), the plaintiff "concede[d]" that the documents were "properly withheld as attorney work product."  *Id.* at 517.

28

sentencing guidelines, to a term that exceeded the statutory maximum, based on facts found by the judge at sentencing, violated the Sixth Amendment.  DOJ issued a memo provid[ing] "guidance for federal prosecutors concerning the legal positions and charging practices of the United States in light of the *Blakely* decision."  July 2, 2004 Memorandum from Deputy Attorney General Comey to Federal Prosecutors regarding "Departmental Legal Positions and Policies in Light of *Blakely v. Washington,*" attached as Lye Decl., Ex. 4 at 1.  The memo sets forth DOJ's position that *Blakely* does not apply to the Federal Sentencing Guidelines and the position that prosecutors were to assert if courts disagreed.  *Id.* at 1-2.  Although the memo was clearly intended, like the withheld memos in this case, as an aid to prosecutors in current and future litigation, it provided a neutral, objective analysis of *Blakely* and contained no analysis of any individual matters pending before prosecutors.  *See also* November 9, 2001 Memorandum from Attorney General to United States' Attorneys regarding *United States v. Emerson,* attached as Lye Decl. Ex. 5.

Similarly, DOJ makes public its 2005 Electronic Surveillance Manual, which includes template applications and orders, and the United States Attorneys' Manual, which is "designed as a . . . reference for . . . Department attorneys responsible for the prosecution of violations of federal law."  *See* Lye Decl. ¶¶ 14, 17 & Ex. 7 at 56-62 (sample application), 53-71 (sample affidavit), 72-76 (sample order), Ex. 8 at §1-1.100.  Public DOJ documents, exactly like the withheld template from the Northern District U.S. Attorney's Office and the USA Book excerpts, provide "factual information regarding specific investigative techniques and discuss[] potential legal strategies, defenses, and arguments."  DOJ Br. 9; *see* Lye Decl. ¶¶ 15-16 & Ex. 6 (Electronic Surveillance Issues) at 151, 153 (providing detailed factual description of "electronic devices that allow agents to determine the location of certain cellular phones by the electronic signals that they broadcast"), 155 (discussing legal arguments to support collection by law enforcement of cell phone transmissions "directly using its own devices"), Ex. 7 (Electronic Surveillance Manual) at 42 (recommending legal approach for obtaining historical cell phone location information from providers).

Plaintiffs do not contend that the inapplicability of the work-product exemption to the *Blakely* memo or DOJ's publicly available manuals dictates the result in this case. But these memos and manuals demonstrate that disclosure of DOJ's general policy position on legal issues causes no harm to the adversary process and instead serves the salutary purpose of ensuring that the agency does not create a body of secret law.

### D. The Criminal Division Documents Are Not Covered By Exemption 7(E)

DOJ has not met its burden of establishing that the Criminal Division documents are exempt under FOIA's Exemption 7(E) for law enforcement techniques and procedures, disclosure of which "risk circumvention of the law." 5 U.S.C. §552(b)(7)(E) (2011). First, the agency seeks to withhold information about location tracking techniques that are well known to the public. Second, the agency offers legal boilerplate but no explanation of how disclosure would reasonably give rise to a risk of circumvention. Nor is any such explanation self-evident. To the contrary, the withheld documents pertain to the *legal standards* governing the government's use of location tracking technology. They are not investigative or technical manuals for FBI agents. Disclosure of the government's position regarding its own statutory and constitutional obligations does not give rise to a risk of circumvention; it keeps the government accountable to the public.

#### 1. The Withheld Documents Pertain to Well-Known Location Tracking Techniques

Exemption 7(E) protects only investigative techniques or procedures that are "not generally known to the public." *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). "It would not serve the purposes of FOIA to allow the government to withhold information to keep secret an investigative technique that is routine and generally known." *Id*. DOJ impermissibly seeks to invoke this exemption to withhold documents that discuss well-known techniques.

CRM One discusses GPS devices. Cunningham Decl. ¶ 21. DOJ cannot plausibly argue that the federal government's use of GPS devices is not generally known in light of, among other things, the Supreme Court's decision in *Jones* on GPS devices and countless media articles on the topic, a small sampling of which are attached to Plaintiffs' FOIA request and prompted DOJ to

1    grant this request expedited processing.  *See* news articles attached as tabs 1-48 of FOIA Request,

2    attached as Lye Decl., Ex. 1.

3        CRM Three discusses requests for historical cellular telephone location information

4    (Cunningham Decl. ¶ 23), but this technique too is well known to the public, as evidenced by,

5    among other things, DOJ's Electronic Surveillance Issues publication, and its Electronic

6    Surveillance Manual, which both discuss the issue (*see* Lye Decl., Exh. 6 at 151-52, Ex. 7 at 41-

7    42), and reams of news articles, a small sampling of which are attached to Plaintiffs' FOIA

8    request.  *See* news articles attached as tabs 49-102 of FOIA Request, attached as Lye Decl., Ex. 1.

9        CRM Four discusses a number of techniques – all various forms of tracking someone's

10   location through their cellular phone or vehicle.  The *Vaughn* index identifies the specific location

11   tracking technologies discussed:  "Obtaining Location Information from Wireless Carriers,"

12   "Mobile Tracking Devices," and "Telematics Providers (OnStar, etc.)."  Cunningham Decl. at Ex.

13   2:24.  CRM Five describes "electronic tracking devices – generally and cellular telephone

14   location information."  *Id.* at Ex. 2:31.  As discussed above, the government's technique of

15   obtaining location information from wireless carriers is already well known – both efforts to

16   obtain location information of individual subscribers but also information of all the subscribers

17   who were close to one or more cell towers (through requests known as "cell tower dumps") – as

18   evidenced by, among other things, the news articles discussed above and judicial opinions

19   addressing these techniques.  *See supra* Part II (citing cases).  Also well known to the public is the

20   government's use of "mobile tracking devices," such as GPS (see *supra*), and cell site simulators

21   (also called IMSI catchers (in reference to the unique International Mobile Subscriber Identity

22   number assigned to wireless device), digital analyzers, or triggerfish), which are discussed in

23   DOJ's publicly available guides and manuals, and have been the subject of extensive media

24   coverage.  *See* Electronic Surveillance Issues (Lye Decl., Ex. 6) at 151, 153; Electronic

25   Surveillance Manual (Lye Decl., Ex. 7) at 40, 48; Lye Decl. at ¶ 19 & Ex. 10 (attaching 24 news

26

27

28

1    articles about the government's use of IMSI catchers).  Finally, the public is already well aware

2    that the government can obtain location information from telematics providers such as OnStar.[6]

3           DOJ apparently seeks to avoid the obvious legal consequence of the extensive publicity

4    surrounding these techniques by asserting that each of the documents discusses "[t]he *specific*

5    techniques available to prosecutors" and "the *circumstances* in which such techniques might be

6    employed."  Cunningham Decl. at ¶ 21, 23, 24 (emphasis added).  But DOJ's argument is

7    foreclosed by the Ninth Circuit's decision in *Rosenfeld*, which long ago rejected the FBI's

8    argument that a "more precise" application of a well-known technique falls under Exemption 7(E)

9    simply because the more precise application is not generally known.  *Rosenfeld*, 57 F.3d at 815

10    ("We are not persuaded by the government's argument that the technique at issue is more precise .

11    . . .").  As the Ninth Circuit explained, "[t]his argument proves too much. If we were to follow

12    such reasoning, the government could withhold information under Exemption 7(E) under any

13    circumstances, no matter how obvious the investigative practice at issue, simply by saying that

14    the 'investigative technique' at issue is not the practice but the application of the practice to the

15    particular facts underlying that FOIA request."  *Id.*  Other courts have also rejected agency efforts

16    to focus on whether the particular "circumstances" of a technique's use are well-known.  *See*

17    *Davin v. Dep't of Justice*, 60 F.3d 1043, 1064 (3d Cir. 1995) (rejecting FBI's argument that

18    "despite the fact that certain law enforcement techniques, such as the use of informants, may be

19    well known to the public, disclosure is nevertheless not warranted where the circumstances

20    surrounding the *usefulness* of these techniques is not well known").

21           With respect to CRM Two, it is unclear what investigative techniques are at issue.  But

22    DOJ provides no factual basis to support its conclusory assertion that the techniques discussed are

23

---

24    [6] "Originally coined to mean the convergence of telecommunications and information processing, the term later evolved to refer to automation in automobiles. GPS navigation, integrated hands-

25    free cellphones, wireless communications and automatic driving assistance systems all come under the telematics umbrella. General Motor's OnStar was the first to combine GPS with

26    roadside assistance and remote diagnostics." *Definition of Telematics*, PC Magazine, http://www.pcmag.com/encyclopedia/term/52693/telematics (last visited June 26, 2013).  *See also*

27    Lye Decl. at ¶ 18 & Ex. 9 (attaching news articles on government access to telematics data such as OnStar).

28

not well known.  *See Minier*, 88 F.3d at 800 (government bears burden of proving exemption).

Courts have repeatedly found the recitation of legal boilerplate insufficient to sustain the

government's burden of proving a technique to be not publicly known.  *Compare, e.g.*, *Nat'l Sec.*

*Archive v. FBI*, 759 F.Supp. 872, 885 (D.D.C. 1991) (declaration that techniques are "'lawful and

not generally known to the public'" held "too conclusory"), *Fitzgibbon v. United States Secret*

*Serv.*, 747 F.Supp. 51, 60 (D.D.C. 1990) ("Both agencies assert that these techniques are not

generally known to the public . . . [h]owever, these claims are general and cursory at best"), *with*

Cunningham Decl. ¶ 22 ("CRM Two thus describes law enforcement techniques and procedures,

as well as guidelines for law enforcement investigations and prosecutions that are not publicly

known").   Moreover, the agency's declaration uses the *identical* boilerplate (the document "thus

describes law enforcement techniques, as well as guidelines for law enforcement investigations

that are not publicly known") to describe the unspecified techniques in CRM Two and the well-

publicized techniques discussed in the other four documents, *see id.* at ¶¶ 21, 23, 24, thus further

diminishing the weight that should be attributed to this conclusory assertion.

In short, DOJ has not met its burden of proving that each of the techniques discussed in

the withheld documents is not generally known and the record affirmatively contradicts any such

conclusory assertion.

### 2.  Disclosure of Legal Standards Do Not Raise A Risk Of Circumvention

DOJ has not met its burden for a second and independent reason.  The agency has not

explained why disclosure of these documents would risk circumvention of the law.  Indeed,

documents setting forth legal standards do not risk circumvention; they merely ensure the

government does not create "secret law."

"In order to justify non-disclosure, the [agency] must provide non-conclusory reasons why

disclosure of each category of withheld documents would risk circumvention of the law."

*Feshbach v. SEC*, 5 F.Supp.2d 774, 787 (N.D. Cal. 1997).  DOJ asserts only the legal conclusion

that "disclosure of this information could provide individuals with information that would allow

them to violate the law while evading detection by federal law enforcement."  Cunningham Decl.

¶¶ 21, 22, 23, 24; DOJ Br. 13.  Courts have repeatedly rejected such conclusory assertions of the

1   statutory standard as insufficient to justify withholding documents under Exemption 7(E).  *See,*

2   *e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993) (finding that the

3   government's declaration that manual on law governing obscenity would  provide defendants

4   with "'a crystal ball view of what they will face from the prosecution'" was "too vague and

5   conclusory" because it failed to "provid[e] reasons why releasing each withheld section would

6   create a risk of circumvention"); *Friedman v. United States Secret Serv.*, _F.Supp.2d_, 2013 WL

7   588228, at *21 (D.D.C. Feb. 14, 2013) (agency "fail[ed] to demonstrate" that information exempt

8   under 7(E) where declaration stated only that disclosure of "'guidelines for law enforcement

9   investigations or prosecutions . . . could reasonably be expected to risk the circumvention of the

10  law'"); *Voinche v. FBI*, 412 F.Supp.2d 60, 69 (D.D.C. 2006) (FBI declaration that "merely quotes

11  the statutory language of Exemption 7(E), and states: '[t]his existence of this procedure is not

12  generally known to the public and the release of such may risk circumvention of the law'" held

13  insufficient to support exemption); *Feshbach*, 5 F.Supp.2d at 787 (granting summary judgment

14  for Plaintiffs on (b)(7)(E)).

15          Moreover, the risk of circumvention is hardly self-evident.  DOJ's own submissions make

16  clear that the withheld documents pertain to tracking the location of individuals through their

17  cellular phones or vehicles.  *See, e.g.*, Cunningham Decl. Ex. 2:23 ("GPS Tracking Devices"), Ex.

18  C:24 ("Obtaining Location Information from Wireless Carriers," "Telematics Providers (OnStar,

19  etc.)"); Ex. C 30 ("physical tracking device in or on a vehicle").  Potential violators already know

20  that to evade detection, they must limit or avoid cell phone or vehicular use.  DOJ offers no

21  explanation why disclosure of particular methods of locating cell phones or vehicles would

22  increase the risk of circumvention.

23          More fundamentally, given the nature of these documents, their disclosure simply does not

24  create a risk of circumvention.  The documents discuss the *legal standards* governing the use of

25  location tracking technology.  *PHE*, on which DOJ relies, distinguished between a portion of an

26  *investigatory* manual – which "'detailed'" among other things "'records and sources of

27  information available to Agents investigating obscenity violations, as well as the type of patterns

28  of criminal activity to look for when investigating certain violations'" – and a *legal* manual that

provided "'a step by step analysis of [obscenity] law.'"  983 F.2d at 251.  Disclosure of the

former, the court held, risked circumvention because potential violators could "tamper" with

"sources of information" identified in the document.  *Id*.  But the court went on to hold that

disclosure of the legal manual's discussion of the law "is precisely the type of information

appropriate for release under the FOIA," which "mandates the release of materials that contain

'secret law,'" and thus rejected the agency's claim of exemption under 7(E).  *Id*. at 251-52.

Exactly like the obscenity manual in *PHE,* the documents DOJ seeks to withhold contain

"'advice to prosecutors'" on substantive legal issues.  *Compare id*. at 252, *with* Cunningham

Decl. ¶¶ 15-16.  This is "precisely the type of information appropriate for release under the

FOIA."  *PHE*, 983 F.2d at 251 (rejecting agency's assertion of 7(E)).

### E.     DOJ Has Failed To Demonstrate That It Released All Reasonably Segregable Information

DOJ has withheld CRM Three, Four, and Five in their entirety.  It has also withheld 53

pages of CRM One and 53 pages of CRM Two.  *See* Cunningham Decl. ¶ 10.  Plaintiffs do not

challenge DOJ's withholding of information identifying the attorneys who prepared some of these

documents, but DOJ has not met its burden of showing that it has released all reasonably

segregable non-exempt information.

FOIA requires agencies to provide "[a]ny reasonably segregable portion of a record . . .

after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b) (2011).

Agencies must "provide the reasons behind their conclusions" that a document is not reasonably

segregable "in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977); *see also*

*Wiener*, 943 F.2d at 977 (non-conclusory agency declaration necessary "to 'afford the FOIA

requester a meaningful opportunity to contest, and the district court an adequate foundation to

review, the soundness of the withholding'").  In addition, the agency declaration must also

"describe what proportion of the information in a document is non-exempt and how that material

is dispersed throughout the document."  *Mead*, 566 F.2d at 261.  District courts must "make

specific findings on the issue of segregability" and may not "simply approve the withholding of

1 an entire document without entering a finding on segregability."  *Wiener*, 943 F.2d at 988

2 (internal quotation marks, citation omitted).

3      DOJ's declaration states merely: "The documents withheld in their entirety contain no

4 meaningful portion that could be released without destroying the integrity of the document or

5 without disclosing third-party interests."  Cunningham Decl. ¶ 28.  But third-party privacy can

6 readily be protected without withholding entire documents.  *See, e.g., Gordon v. FBI*, 390

7 F.Supp.2d 897, 901 (N.D. Cal. 2004) ("[I]f the government was merely concerned with protecting

8 the privacy rights of the [third parties,] it could have simply redacted their names and other

9 identifying information.  It did not; instead, it redacted the entire discussion of each incident.").

10 But there is no explanation whatsoever of why any exempt information cannot be segregated.

11      DOJ's declaration is indistinguishable from conclusory recitations of the legal standard

12 that courts have repeatedly found to "fall short of the specificity required . . . to properly

13 determine whether the non-exempt information is, in fact, not reasonably segregable."  *Branch v.*

14 *FBI,* 658 F.Supp. 204, 210 (D.D.C. 1987) (FBI affidavit stated "[e]very effort was made to

15 provide plaintiff with all reasonably segregable non-exempt portions of the material requested");

16 *see also, e.g.*, *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. Dep't of Treasury,*

17 2008 WL 4482855, at *14 (N.D. Cal. Sept. 30, 2008) (statement that agency "determined that

18 there was no reasonably segregable information that could be released" inadequate to justify

19 withholding entire documents because agency required to "*explain*[] why segregation is not

20 possible in this case").

21      Information identifying DOJ attorneys can easily be segregated; that exemption does not

22 justify withholding entire documents or 53-page portions of documents.  And even if DOJ could

23 establish that some additional material is exempt, it has still not met its burden of justifying the

24 wholesale withholding at issue here.

25     **F.**     **FOIA Does Not Permit Agencies to Withhold Non-Exempt Portions Of**
             **Responsive Records**

26

27      Finally, DOJ has stated that portions of CRM Two, Four, and Five are deemed "non-

28 responsive."  Cunningham Decl. Ex. 2:23, 24 & 31.  To the extent it seeks to withhold portions of

*ACLU-NC, et al. v. U.S. DEPARTMENT OF JUSTICE,* CASE No.: 12-cv-4008-MEJ
PLTFS' CROSS-MOTION AND OPPOSITION                          21

1  responsive documents on the ground that certain portions are "non-responsive," FOIA does not

2  permit it to do so.[7]

3       The Ninth Circuit has long held that FOIA's "policy of broad disclosure" means that

4  "[w]hen a request is made, an agency may withhold a document, *or portions thereof*, *only if* the

5  information contained in the document falls within one of nine statutory exemptions to the

6  disclosure requirement contained in § 552(b)." *Church of Scientology v. Dep't of Army*, 611 F.2d

7  738, 741-42 (9th Cir. 1979) (emphasis added).  Thus, the statute authorizes withholding *only* of

8  those portions of responsive documents covered by one of the statutory exemptions; there is no

9  "non-responsive" exemption.  *See* 5 U.S.C. § 552(b)(1)-(9) (2011).

10       The reasoning in the only circuit decision to address the issue supports this view.  In

11  *Dettmann v. U.S. Department of Justice*, 802 F.2d 1472 (D.C. Cir. 1986), the plaintiff, who

12  requested "'all documents'" containing references to her, argued that the language of the request

13  required the FBI "to disclose the entire document(s)" in which responsive information was found.

14  *Id*. at 1475.  The court "acknowledge[ed] the force of [this] argument," and rejected "the

15  Government's parsimonious reading" of the request that led it to disclose only the specific

16  portions of records pertaining to plaintiff.  *Id*. at 1475, 1476.  But it found that she had not

17  administratively exhausted the issue.  *See id*. at 1476-77.  One judge dissented on the procedural

18  issue, but agreed that the redactions were improper.   *See id*. at 1478 (Gesell, D.J., dissenting).

19  Like the request in *Dettmann*, this request seeks complete "documents" and "records."  *See* FOIA

20  Request at page 2 ("We request disclosure of agency records"); page 3 ("Any documents . . .

21  related to the use or policies of utilizing any location tracking technology"), *attached* as Campbell

22  Decl. Ex. 1.  Under the *Dettmann* majority and dissent, the wording of this request precludes DOJ

23  from redacting parts of responsive documents as "non-responsive," because the request was for

24  the "documents" and records themselves.[8]

---

[7] Plaintiffs do not contend that the agency is precluded from withholding non-responsive *documents*; merely that it may not withhold *portions* of responsive documents solely on the ground that they are non-responsive.

[8] The Justice Department issued guidance in 2006 that allows for "scoping" within a single page of a document, but it expressly prohibits the government from making a unilateral decision to

**IV.    CONCLUSION**

Disclosure to the public of the Department of Justice's statement of the legal standards governing use of electronic surveillance does not provide adversaries in litigation an unfair advantage or allow potential violators to circumvent the law.  It simply ensures that the federal government does not make surveillance law in secret.  For the foregoing reasons, the Court should grant Plaintiffs' motion for partial summary judgment and require DOJ to disclose the withheld information.  *See Feshbach*, 5 F.Supp.2d at 787 (where agency "failed to present substantial evidence in opposition to" FOIA requester's motion for summary judgment, court granted summary judgment for requester on exemption).

Dated: June 27, 2013                              Respectfully submitted,

                                                               By:  _____/s/_____
                                                                                    Linda Lye

                                                               Michael T. Risher
                                                               Linda Lye
                                                               AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                                               OF NORTHERN CALIFORNIA

                                                               Attorneys for Plaintiffs

---

withhold parts of documents as non-responsive without giving the requestor an opportunity to request and obtain the entire document. *See FOIA Counselor Q & A*, U.S. Dep't of Justice FOIA Post, http://www.justice.gov/oip/foiapost/2006foiapost3.htm (citing 1995 FOIA Update Vol. XVI, No. 3) (last visited June 26, 2013).  At no time did DOJ give Plaintiffs an opportunity to request and obtain the entire documents, portions of which DOJ now contends are non-responsive. *See* Lye Decl. at ¶ 8.