Michael T. Risher (CA SBN 191627)
mrisher@aclunc.org
Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street, 2nd Floor
San Francisco, California 94111
Telephone:    415-621-2493
Facsimile:    415-255-8437

Attorneys for Plaintiffs
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA and
SAN FRANCISCO BAY GUARDIAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; *SAN FRANCISCO BAY GUARDIAN*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br><br> Defendant. | CASE No.: 12-cv-4008-MEJ <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF CROSS-MOTION AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Hearing Date:  September 5, 2013 <br> Time:             10:00 a.m. <br> Location:       Courtroom B, 15th Floor <br> Judge:           Hon. Maria-Elena James |

## TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT ....................................................................................................2

       A.    DOJ's Policies On How To Handle Location Tracking Issues
             Constitutes The Agency's Working Law…………………………………........2

             1.    The Documents Constitute the Agency's Effective
                   Policy Even Though They Are Not "Binding" ......................................2

             2.    The Documents Constitute the Agency's Effective Policy
                   Even Though Courts Ultimately Decide the Law ..................................5

       B.    The Documents Are Not Exempt Attorney Work Product
             Because They Set Forth General Legal Standards Outside
             The Context Of Any Particular Case……………………………………………..8

             1.    The Work Product Privilege Only Attaches to Documents
                   Prepared in Connection With a Specific Case.........................................8

             2.    The EOUSA Documents Are Not Work Product Because They
                   Are Not Case-Specific.............................................................................11

             3.    The Criminal Division Documents Are Not Work Product
                   Because They Are Not Case-Specific ....................................................11

       C.    DOJ's Has Not Met Its Burden Of Demonstrating That The
             Techniques Are Not Generally Known Or That Disclosure
             Would Risk Circumvention……………………………………………………...13

             1.    The Public Generally Knows About GPS and Cell
                   Phone Tracking.......................................................................................13

             2.    DOJ Has Not Met Its Burden Of Demonstrating a
                   Risk of Circumvention ..........................................................................15

             3.    DOJ Has Not Met Its Burden Of Demonstrating
                   The Documents Are Not Segregable......................................................16

             4.    The Court Should Consider *In Camera* Review ..................................18

III.   CONCLUSION ..............................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*American Civil Liberties Union of Northern California v. FBI,*
  2013 WL 3346845 (N.D. Cal. July 1, 2013) ........................................................ 14

*American Immig. Council v. United States Dep't of Homeland Security,*
  905 F.Supp.2d 206 (D.D.C. 2012) ............................................................. *passim*

*Army Times Pub. Co. v. Dep't of Air Force,*
  998 F.2d 1067 (D.C. Cir. 1993) .................................................................... 16

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
  818 F.Supp. 1291 (N.D. Cal. 1992) ............................................................... 17

*Bowen v. Food & Drug Admin.,*
  925 F.2d 1225 (9th Cir. 1991) ..................................................................... 14

*Brennan Center v. Dep't of Justice,*
  697 F.3d 184 (2d Cir. 2012) .......................................................................... 8

*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) .............................................................. 4, 5, 8

*Davin v. United States Dep't of Justice,*
  60 F.3d 1043 (3d Cir. 1995) ......................................................................... 15

*Delaney, Migdail & Young, Chartered v. IRS,*
  826 F.2d 124 (D.C.Cir.1987) ......................................................................... 9

*Electronic Frontier Foundation v. Office of the Dir. Of Nat'l Intelligence,*
  542 F.Supp.2d 1181 (N.D. Cal. 2008) ........................................................... 19

*Electronic Privacy Information Center v. Dept. of Justice,*
  416 F.Supp.2d 30 (D.D.C. 2006) .................................................................. 19

*Families for Freedom v. U.S. Custom & Border Prot.,*
  797 F.Supp. 2d 375 (S.D.N.Y. 2011) .............................................................. 7

*Feshbach v. SEC,*
  5 F. Supp.2d 774 (N.D. Cal. 1997) ................................................................ 10

*Fox v. California Sierra Fin. Servs.,*
  120 F.R.D. 520 (N.D. Cal. 1988) .................................................................... 8

*Hickman v. Taylor,*
  329 U.S. 495 (1947) ...................................................................................... 8

*Hidalgo v. FBI,*
    541 F.Supp.2d 250 (D.D.C. 2008) ...................................................................15

*Jordan v. United States Dep't of Justice,*
    591 F.2d 753 (D.C. Cir. 1978) ............................................................... *passim*

*Judicial Watch, Inc. v. United States Dep't of Homeland Security,*
    _F. Supp.2d _, 2013 WL 753437 (D.D.C. Feb. 28, 2013).................2, 10, 11, 12

*Marbury v. Madison,*
    1 Cranch 137 (1803) ...........................................................................................7

*Minier v. Central Intelligence Agency,*
    88 F.3d 796 (9th Cir. 1996) ..............................................................................13

*Morley v. CIA,*
    508 F.3d 1109 (D.C. Cir. 2009) ........................................................................15

*Nat'l Council of La Raza v. Dep't of Justice,*
    411 F.3d 350 (2d Cir. 2005)................................................................................7

*Nat'l Immig. Proj. of Nat'l Lawyers Guild v. United States Dep't of Homeland Security,*
    868 F.Supp.2d 284 (S.D.N.Y. 2012)...................................................................4

*National Resources Defense Council v. Dep't of Defense,*
    388 F.Supp. 2d 1086 (C.D. Cal. 2005) .............................................................17

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975)..............................................................................5, 6, 7, 8

*PHE, Inc. v. Dep't of Justice,*
    983 F.2d 248 (D.C. Cir. 1993) ....................................................................16, 18

*QST Energy, Inc. v. Mervyn's,*
    2001 WL 777489 (N.D. Cal. May 14, 2001) ......................................................8

*Raytheon Aircraft Co. v. United States Army Corps. of Eng'rs,*
    183 F.Supp. 2d 1280 (D. Kan. 2001) ...............................................................12

*Rosenfeld v. Dep't of Justice,*
    57 F.3d 803 (9th Cir. 1985) ........................................................................13, 14

*Schiller v. NLRB,*
    964 F.2d 1205 (D.C. Cir. 1992) ....................................................................9, 10

*In re Sealed Case,*
    146 F.3d 881 (D.C. Cir. 1998) ......................................................................9, 10

*Senate of Puerto Rico v. United States Dep't of Justice,*
    823 F.2d 574 (D.C. Cir. 1987) ................................................................................9

*Spirko v. United States Postal Serv.,*
    147 F.3d 992 (D.C. Cir. 1998) ..............................................................................18

*United States v. Jones,*
    132 S.Ct. 945 (2012) ..........................................................................................3, 11

*Wiener v. FBI,*
    943 F.2d 972 (9th Cir. 1991) .........................................................................17, 18

**Statutes**

5 U.S.C. §552(b) ..............................................................................................................16

5 U.S.C. §706(2) ................................................................................................................7

29 U.S.C. §153(d) ..............................................................................................................6

29 U.S.C. §157 ...................................................................................................................6

29 U.S.C. §158 ...................................................................................................................6

29 U.S.C. §160 ...................................................................................................................6

# I.     INTRODUCTION

Congress enacted the Freedom of Information Act to prevent agencies from doing exactly what DOJ seeks to do here – create a body of secret law.  DOJ's justifications for withholding the documents each lack merit.

First, DOJ contends that the documents do not constitute the agency's working law because they are not "binding" on U.S. Attorneys and because courts ultimately decide the law.  This "not binding" argument has been repeatedly rejected by courts and the fact that courts are the final arbiter of the law is irrelevant to the question at issue here, which is whether the documents reflect *the agency's* effective policy.

Second, DOJ's reliance on FOIA Exemption 5, based on the attorney work product privilege, is misplaced.  Documents that constitute an agency's working law are entirely outside the ambit of Exemption 5.  The court thus need not reach DOJ's work product argument.  In any event, the documents are not work product because they set forth only general legal standards and lack any case-specific analysis.  DOJ argues that documents can be work product even where a specific claim has not arisen; but that rule applies in a context not at issue here, where government lawyers are acting as attorneys for an agency client and advising on the agency's potential liability.  Where, as here, government attorneys are instead acting as prosecutors, the specific-claim requirement applies.

Third, DOJ cannot justify withholding the documents under Exemption 7(E) for law enforcement techniques because its conclusory declarations do not sufficiently explain why disclosure would create a risk of circumvention.  The supposedly sensitive discussions involve location tracking technologies, but potential law violators are already aware that minimizing car and cell phone usage would allow them to evade detection.  DOJ nowhere explains why disclosure would alter this pre-existing risk.  But even if the court were to conclude that DOJ can withhold some discussions of location tracking technologies, this would not justify the wholesale withholding of entire documents or 53-page portions of documents.

Finally, because DOJ has suggested that it cannot supplement its affidavit to provide a more specific explanation of risk of circumvention, the Court should consider *in camera* review. Such an approach would allow for a more expeditious resolution of the issues in this case, in which time is of the essence.  The nation and Congress are actively debating surveillance issues. These documents would shed light on that pending debate.

## II.     ARGUMENT

### A.     DOJ's Policies On How To Handle Location Tracking Issues Constitutes The Agency's Working Law

Agency policy – even policy that applies in litigation – constitutes the agency's working law that must be disclosed under FOIA.  *See Jordan v. United States Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978) (U.S. Attorney's manual relating to exercise of prosecutorial discretion); *Judicial Watch, Inc. v. United States Dep't of Homeland Security,* _F. Supp.2d _, 2013 WL 753437 *13 (D.D.C. Feb. 28, 2013) ("agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement"); *American Immig. Council v. United States Dep't of Homeland Security,* 905 F.Supp.2d 206, 211 (D.D.C. 2012) (documents relating to "role of counsel in immigration proceedings").  DOJ contends that the withheld documents are not the agency's working law because they are not binding on prosecutors and do not reflect the agency's "official" position and also because, whatever position federal prosecutors might assert, courts will ultimately "decide the law."  DOJ Reply (ECF No. 33) at 2-4; Second Cunningham Dec. (ECF No. 33-1) at ¶¶20, 21.  Both arguments are wide of the mark.

### 1.     The Documents Constitute the Agency's Effective Policy Even Though They Are Not "Binding"

DOJ's conclusory characterization of the documents as not "official" is contradicted by the factual record; its claim that they are not binding is legally irrelevant.

As a factual matter, Mr. Cunningham's own statements and the record confirm that the Criminal Division documents set forth the agency's effective policy on how prosecutors should

handle location tracking issues.  CRM One through Three are legal memoranda that were "directed to all" federal prosecutors within DOJ.  *See* Second Cunningham Dec. at ¶9 ("CRM One and CRM Two were directed to all federal prosecutors within DOJ" and "analyze the possible implication of the Supreme Court decision in *United States v. Jones*, 132 S.Ct. 945 (2012)"; "CRM Three was directed to all USAO Criminal Chiefs within DOJ, which includes all ninety-four United States Attorney Offices around the country").  CRM Four and Five are excerpts of the USA Book, which is "found on a DOJ intranet site" and "functions as a legal resource book or reference guide for federal prosecutors." *Id.* at ¶10.  Notwithstanding Mr. Cunningham's conclusory assertion that CRM One through Five do not set forth an "official" DOJ position (Second Cunningham Dec. at ¶21), these documents have sufficient agency imprimatur to have been distributed to all federal prosecutors across the country or placed on a DOJ intranet site so that all federal prosecutors across the country can have access to them. These are not documents prepared by a rogue DOJ attorney.

Moreover, a stipulation between the parties forecloses any argument that these documents are not effective DOJ policies.  The parties stipulated that plaintiffs were only seeking and DOJ would only process "final USAO-ND/CA and/or DOJ policies, guidance, procedures, and/or practices."  ECF No. 17, Appendix at ¶5 (emphasis added).  Whatever the significance of DOJ's conclusory assertion that these policies are not "official," DOJ is still bound by the stipulation that these are indeed the agency's policies.  And although these documents "do not require DOJ attorneys to make any particular arguments or follow any particular course of conduct," their purpose, in Mr. Cunningham's own account, is to "provide federal prosecutors with guidelines, recommendations and suggested best practices."  Second Cunningham Dec. at ¶¶19, 20.

Moreover, the evidence demonstrates that DOJ prosecutors implement the "guidance" set forth in these documents.  For example, a brief filed post-*Jones* by the Department of Justice in the United States District Court for the District of Rhode Island in opposition to a motion to

suppress GPS evidence states: "The government has previously argued that even if the Court found the installation and monitoring of the GPS to be a search under the Fourth Amendment, it was a reasonable one if based on reasonable suspicion or probable cause.  *Following guidance from the Department of Justice Criminal Appellate Section, the government no longer presses this argument.*"  Gov.'s Third Supp. Mem ISO Objection to Deft's Mot. to Suppress, filed in *United States v. Oladosu,* D. R.I. Case No. 10-cr-00056 at 2 n.1 (emphasis added) (attached as Second Lye Dec., Exh. 1).

Similarly, the EOUSA documents set forth the effective policy for the US Attorney's Office for the Northern District of California.  The documents are "templates for an application and order for the use of a pen register and trap and trace device," and portions of a PowerPoint presentation on location tracking issues.  Kornmeier Dec. (ECF No. 23-1), Exh. C.  Both documents are described as "the U.S. Attorney's *Office's* legal opinions and recommendations." *Id.* (emphasis added).  DOJ's own affidavit confirms that these are documents of the U.S. Attorney's Office itself, not documents drafted by a low-level employee speaking purely for him or herself.  Like the Criminal Division documents, they have the agency's imprimatur.

In any event, DOJ's "contention that these documents are not 'final opinions,' absolutely binding on the [prosecutors], misses the point."  *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 869 (D.C. Cir. 1980).  As the D.C. Circuit held in *Coastal States,* legal memos that "were routinely used by agency staff as guidance," even if not "binding," must be disclosed to the public; any other approach would allow the agency to "promulgate[] a body of secret law which it is actually applying in its dealings with the public but which it is attempting to protect behind a label."  *Id.*  Similarly, in *Jordan v. United States Dep't of Justice,* 591 F.2d 753 (D.C. Cir. 1978), the court found portions of a manual for U.S. Attorneys to constitute the agency's "effective policy," even though "they may not be absolutely binding on each Assistant."  *Id.* at 774.  In *Nat'l Immig. Proj. of Nat'l Lawyers Guild v. United States Dep't of Homeland Security,* 868 F.Supp.2d 284 (S.D.N.Y. 2012), the court rejected the

government's argument that (b)(5) should apply "because the documents at issue are informal, rather than formal, articulations of policy." *Id.* at 294.  As the court explained, "[t]he Government's proposed distinction, if accepted, would have the absurd effect of giving the agencies greater protection against FOIA disclosure when they expound their working laws haphazardly than when they follow written directives." *Id.*

The documents at issue here are conceptually indistinguishable from the DOJ manuals for federal prosecutors that the court in *Jordan* found to be the agency's "effective policy." *Jordan,* 591 F.2d at 774.  And like the documents in *Coastal States,* they contain guidance which prosecutors follow in their dealings with the public (here, criminal defendants and the courts), but the agency is attempting to keep this guidance secret.  "[W]ithholding them would serve no legitimate policy interest of the government." *Coastal States,* 617 F.2d at 869.

### 2.     The Documents Constitute the Agency's Effective Policy Even Though Courts Ultimately Decide the Law

DOJ also contends that the documents do not constitute the agency's "working law" because "[i]t is ultimately the courts that will decide the law in this area, not the DOJ attorneys who prepared the documents."  DOJ Reply at 2.  This argument takes the word "law" out of context and misapprehends the nature of the "working law" doctrine.  The issue is whether the documents reflect the agency's policy, not whether courts are the final arbiter of the law, which is always the case.  Thus, in *Jordan,* the court found excerpts of a manual for U.S. Attorneys to constitute the agency's working law because they set forth the "policy of the U.S. Attorney's Office."  591 F.2d at 774.  *Jordan* compels the conclusion that "guidelines" for federal prosecutors (*id.*; Second Cunningham Dec. at ¶19) constitute the agency's "effective policy" and thus must be disclosed under the working law doctrine.  591 F.2d at 774.

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975), does not support DOJ's argument and instead holds that documents reflecting an agency's intermediate, non-final position are pre-decisional and thus exempt from disclosure under the deliberative process privilege.  In *Sears,* the Court addressed documents relating to decisions by the General Counsel of the National

Labor Relations Board ("NLRB") whether or not to file unfair labor practice complaints.  The

National Labor Relations Act ("NLRA") provides workers various protections, including the

right to organize or not organize a union, and makes it unlawful for employers or unions to

engage in specified "unfair labor practice[s]."  *See* 29 U.S.C. §§157, 158.  The General Counsel

is charged with investigating unfair labor practice charges, and deciding whether to issue and

prosecute "complaints" based upon charges alleging unfair labor practices.  *See* 29 U.S.C.

§153(d).  A complaint, if filed by the General Counsel, is adjudicated before the National Labor

Relations Board.  *See* 29 U.S.C. §160(a), (c).  And a final order of the Board in an unfair labor

practice case is subject to judicial review.  *See* 29 U.S.C. §160(f).  The Court in *Sears* held that

documents relating to the General Counsel's decision *not* to file a complaint constituted

"precisely the kind of agency law" which "Congress sought to prevent the agency from keeping

secret."  421 U.S. at 156.  The Court so held because decisions not to file "have the effect of

finally denying relief to the charging party," and there is thus no concern that such documents

would "intrude on predecisional processes."  *Id.* at 155.  Because a decision to dismiss a charge

and not issue a complaint constitutes a "final disposition," documents "directing that a charge

be dismissed" "represent the 'law' of the agency," "fall outside of Exemption 5," and "must be

disclosed."  *Id.* at 158.

By contrast, the Court held that documents relating to the decision *to file* a complaint

were exempt because such a decision "does not finally dispose" of the matter within the agency.

*Id.*at 159.  Pursuant to the NLRA, after the General Counsel files a complaint, "[t]he case will

be litigated before and decided by the Board."  *Id.*  In other words, documents relating to the

filing of a complaint represent only an intermediate, non-final position of the agency.   The

ultimate position of the agency will be set forth by the NLRB itself.

*Sears* did not turn on the fact that courts can review NLRB decisions; rather, it turned

on whether the documents pertained to an intermediate or final decision of the agency.  *Sears* is

thus of no assistance to DOJ, which has not asserted the deliberative process privilege.  Indeed,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

any such argument is barred by the parties' stipulation, pursuant to which DOJ processed only "*final* USAO-ND/CA and/or DOJ policies, guidance, procedures, and/or practices."  ECF No. 17, Appendix at ¶5 (emphasis added).  Under *Sears* and the parties' stipulation, these documents are all *final* DOJ policies, and the documents are therefore "precisely the kind of agency law" which "Congress sought to prevent the agency from keeping secret."  421 U.S. at 156.

DOJ cites *Families for Freedom v. U.S. Custom & Border Prot.*, 797 F.Supp. 2d 375 (S.D.N.Y. 2011), in which the court stated "the secret law doctrine in FOIA cases generally arises in contexts in which agencies are *rendering decisions* based on non-public analyses.  I am aware of no precedent for evaluating whether law enforcement *policies* constitute secret law."  *Id.* at 396.  The plaintiff in *Families for Freedom* had apparently failed to bring to the court's attention Second Circuit caselaw, binding on that court, that recognizes that law enforcement policies can constitute the working law of an agency.  *See Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 358, 360 (2d Cir. 2005) (DOJ memos on authority of state and local police to enforce immigration laws reflected "the Department's policy," audience for which was "state and local law enforcement," and thus "'constitute[d] the "working law" of the agency'") (quoting *Sears*).  *Families for Freedom* is inconsistent with *La Raza* and with *Jordan.*  See 591 F.2d at 774 (requiring disclosure of "policy of the U.S. Attorney's Office").

DOJ's position, if accepted, would eviscerate the working law doctrine.  Courts are always the final arbiter of the law.  *Cf. Marbury v. Madison,* 1 Cranch 137, 178 (1803) (it is "the province and the duty of the judicial department to say what the law is"); 5 U.S.C. §706(2) (pursuant to Administrative Procedure Act, "reviewing court shall" set aside final agency actions which are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").  But the availability of judicial review of an agency's legal position does not entitle the agency to cloak its effective policy on that issue in secrecy.  "The Department's

view that it may adopt a legal position while shielding from public view the analysis that yielded that position is offensive to FOIA." *La Raza,* 411 F.3d at 360 (internal quotation marks, citation omitted).

      **B.**    **The Documents Are Not Exempt Attorney Work Product
Because They Set Forth General Legal Standards Outside
The Context Of Any Particular Case**

Because these documents constitute the agency's working law, the court need not address DOJ's argument that the documents are work product. As set forth in Plaintiffs' cross-motion and opposition, working law must affirmatively be disclosed, notwithstanding any assertion of work product, and DOJ does not dispute this point. *See Sears,* 421 U.S. at 152-53; *Brennan Center v. Dep't of Justice,* 697 F.3d 184, 199 (2d Cir. 2012) ("[i]f an agency's memorandum or other documents has become its 'effective law and policy,' it will be subject to disclosure as the 'working law' of the agency"); *id.* at 208 ("what would otherwise be an exempt memorandum becomes non-exempt because of its status as 'working law'" and thus "falls outside of Exemption 5"); Pltfs' Cross-Motion & Opp. (ECF No. 25) at 8-9; DOJ Reply at 2 ("The concept of 'secret law' or 'working law' has developed as an exception to Exemption 5.").

Plaintiffs nevertheless address why DOJ's work product arguments are incorrect. In particular, DOJ erroneously contends that materials need not be case-specific for the work product protection to attach. DOJ Reply at 4.

      **1.**    **The Work Product Privilege Only Attaches to Documents
Prepared in Connection With a Specific Case**

The purpose of the work product privilege is to protect the adversary process by shielding the "mental impressions of an attorney" in the "preparation of a client's case." *Hickman v. Taylor,* 329 U.S. 495, 510, 511 (1947). But "[t]he work-product rule does not extend to every written document generated by an attorney." *Coastal States,* 617 F.2d at 864 (internal quotation marks, citation omitted). "The documents must at least have been prepared with *a specific claim* supported by *concrete facts* which would likely lead to litigation." *Id.* at

865 (emphasis added); *see also QST Energy, Inc. v. Mervyn's,* 2001 WL 777489, *5 (N.D. Cal. May 14, 2001) ("The protection applies 'if the prospect of litigation is identifiable because of specific claims that have already arisen'") (citation omitted); *Fox v. California Sierra Fin. Servs.,* 120 F.R.D. 520, 525 (N.D. Cal. 1988) ("in order for documents to qualify as attorney work-product, there must be an identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared").

"While it may be true that the prospect of future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (citation omitted) (DOJ affidavits too conclusory to justify withholding as work product documents prepared in the course of DOJ investigation into homicide of political activists). As the D.C. Circuit held in *Jordan,* guidelines and manuals for U.S. Attorneys are not work product because they set forth "general standards to guide the Government lawyers." 591 F.2d at 775. They are not "prepared in anticipation of a *particular* trial." *Id.* (emphasis added). Even though documents might be prepared "literally 'in anticipation of litigation,'" "they do not anticipate litigation in the manner that the privilege requires" if they do not "ensu[e] from any 'particular transaction.'" *American Immig. Council,* 905 F.Supp. 2d at 222.

DOJ's contention that documents fall within the privilege "even if no specific claim is contemplated" is correct in some contexts, just not the context of this case. DOJ Reply at 4. As the D.C. Circuit has explained, the cases upon which the government relies – *Schiller v. NLRB,* 964 F.2d 1205 (D.C. Cir. 1992), and *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C.Cir.1987) – involve government lawyers acting "as legal advisors protecting their agency clients from the possibility of future litigation"; under those circumstances, the work product privilege can apply to documents advising the agency as to potential legal challenges

and defenses to various courses of action, "even though no specific claim ha[s] yet arisen." *In re Sealed Case,* 146 F.3d 881, 885 (D.C. Cir. 1998). But when government lawyers are acting as "prosecutors or investigators of suspected wrongdoers," the specific-claim test applies. *Id.* Thus, *Schiller* and *Delaney* are "not in conflict" with cases requiring "a specific claim" to justify the privilege; they simply apply in "very different situations." *Id.*

Here, U.S. Attorneys are clearly acting as prosecutors, and not as attorneys advising an agency client on the agency's potential liability. As a result, the work product privilege only attaches to documents prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party." *Id.* (quoting *Safecard Serv. Inc. v SEC,* 926 F.2d 1197, 1203 (D.C. Cir. 1991)); *see also Judicial Watch,* 2013 WL 753437 at *13-14 (rejecting DHS' argument that *Schiller* extends work product extension to documents providing "guidance on how to handle specific classes of cases").[1]

DOJ attempts to distinguish *Jordan, Judicial Watch,* and *American Immig. Council* by characterizing the records in those cases as "guidance bereft of opinions, legal theories, or legal strategies relevant to any on-going or prospective trial." DOJ Reply at 5. DOJ's description is inconsistent with the facts of those cases. *Jordan* involved documents setting forth legal strategies, in particular, the exercise of prosecutorial discretion. 591 F.2d at 755, 776. And while the documents there applied to ongoing matters before the U.S. Attorney's office, they contained only "general standards," and did not address any "particular trial," which is precisely why the court held them not to be work product. *Id.* at 775. *Judicial Watch* also found

---

[1] DOJ's reliance on *Feshbach v. SEC,* 5 F. Supp.2d 774 (N.D. Cal. 1997), is similarly unavailing. There, Judge Illston held that documents generated in the course of the SEC's examination of a particular company were work product, even though at the time the documents were generated, the agency had not decided to litigate. *Id.* at 782-83. The court's work product conclusion rested on the fact that the documents were generated in the course of an investigation "based upon a suspicion of specific wrongdoing and represent[ed] an effort to obtain evidence and to build a case against the suspected wrongdoer." *Id.* at 782.

documents setting forth legal strategies not to be work product, in particular "agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement," and a "manual distributed to attorneys [with] instructions on steps to take in both cases where prosecutorial discretion is appropriate and cases where prosecutorial discretion is inappropriate." 2013 WL 753437 *15, *16. Distinguishing between general and case-specific legal documents, the court found documents to be work product where they involved the application of the general legal principles in the non-exempt documents to the facts of specific cases. *See id.* at * 16 (documents exempt where reflected "attorneys' reasons for declining to prosecute in specific cases handled by the office"). And *American Immig. Council* held non-exempt a "legal opinion" addressing "whether an INS regulation creates a right to counsel for people seeking admission as refugees." 905 F.Supp. 2d at 222.

### 2. The EOUSA Documents Are Not Work Product Because They Are Not Case-Specific

Like the manual for U.S. Attorneys in *Jordan*, and the memos regarding legal issues arising in agency litigation in *Judicial Watch* and *American Immig. Council*, the template pen register applications and the power point presentation on location tracking issues withheld by EOUSA set forth "general standards." *Jordan,* 591 F.2d at 775. There is no dispute that they do not address any "particular trial." *Id.* DOJ creates a false dichotomy between "routine agency policy" and "legal strategy." DOJ Reply at 5. "The fact that [its] policies happen to apply in agency litigation does not shield [them] from disclosure." *American Immig. Council,* 905 F.Supp. 2d at 222.

### 3. The Criminal Division Documents Are Not Work Product Because They Are Not Case-Specific

The Criminal Division documents are also conceptually indistinguishable from the legal documents in *Jordan*, *Judicial Watch*, and *American Immig. Council*. Mr. Cunningham's supplemental declaration confirms what was previously evident – that these documents provide general guidelines, and do not address the specific facts of any individual proceeding or how the

general legal principles set forth in these documents would apply to the facts of any particular investigation or prosecution.

CRM One and Two, which analyze the impact of *Jones*, pertaining to GPS devices, "acknowledge[] that the facts and considerations of each case will require prosecutors to make their own case-specific judgments" about how to apply the law in the cases before them. Second Cunningham Dec. at ¶20. "While CRM One through CRM Five do suggest potential arguments, practices, and litigating positions that federal prosecutors *may* consider employing, decisions about such employment are left solely to the discretion of the prosecutor." *Id.*

These documents are not attorney work product precisely because they do not involve "case-specific judgments" by U.S. Attorneys, or decisions by U.S. Attorneys about how to employ the arguments, practices, and litigating positions in these memos and manuals in individual cases. *Judicial Watch* is instructive. There, the court found *not* exempt a DHS manual providing "advice and direction" to attorneys on issues of prosecutorial discretion, but found *exempt* documents reflecting the exercise of that discretion in "specific cases." *Judicial Watch,* 2013 WL 753437 at *15, *16. Similarly here, Plaintiffs seek documents setting forth the "advice and direction" DOJ has provided to its attorneys on location tracking issues, but do *not* seek documents reflecting the application of that advice and direction by U.S. Attorneys in any "specific cases." *Id.* While the adversary process would be harmed by disclosure of the latter, disclosure of the former serves FOIA's fundamental purpose of shining the light on government agencies' working law and effective policies. DOJ has made public numerous manuals and legal memos that, exactly like the documents at issue here, provide prosecutors with guidance on legal issues arising in litigation, including the impact of recent court decisions. *See* Pltfs' Cross-Motion & Opp. at 13-15. These public documents illustrate how disclosure of the agency's general policy position on legal issues can easily be disclosed without causing any

harm to the adversary system, where, as here, those documents contain no analysis or discussion of particular prosecutions.[2]

### C.   DOJ's Has Not Met Its Burden Of Demonstrating That The Techniques Are Not Generally Known Or That Disclosure Would Risk Circumvention

As Plaintiffs previously explained, DOJ has not met its burden of invoking Exemption (7)(E) for law enforcement techniques and procedures.  DOJ's supplemental affidavit contains only conclusory assertions that do not alter this conclusion.

### 1.   The Public Generally Knows About GPS and Cell Phone Tracking

GPS and the various forms of cell phone tracking discussed in these documents – are generally known to the public, as evidenced by extensive media publicity and DOJ's own publications that discuss them.  *See* Pltfs' Cross-Motion & Opp at 15-17; Lye Dec. (ECF No. 26) at Exs. 1, 6, 7, 10.  Ninth Circuit caselaw thus bars DOJ's reliance on this exemption.  *See Rosenfeld v. Dep't of Justice,* 57 F.3d 803, 815 (9th Cir. 1985) (Exemption 7(E) only protects investigative techniques or procedures that are "not generally known to the public").

DOJ offers *no* further evidence or argument on this issue with respect to the EOUSA documents; summary judgment should therefore be granted for Plaintiffs on these documents. *See Minier v. Central Intelligence Agency,* 88 F.3d 796, 800 (9th Cir. 1996) (government bears

---

[2] While DOJ correctly notes that *Raytheon Aircraft Co. v. United States Army Corps. of Eng'rs,* 183 F.Supp. 2d 1280, 1289 (D. Kan. 2001), involved factual reports about the use of certain solvents that were used in multiple cases (DOJ Reply at 7), the court emphasized that the government "presented unrebutted evidence that specifically identified the litigation that served as the genesis for the two reports." *Id.* at 1289.  Thus, while a document can still be work product if it is used in more than one case, it must still be prepared in connection with specifically identified litigation.  By contrast here, the government has not identified any cases as functioning as the genesis for the preparation of these documents.  Indeed, DOJ expressly acknowledges that the documents at issue do not "specifically identify" any cases that implicate the general legal issues addressed therein.  Second Cunningham Dec. at ¶9.

1   "burden of proving the applicability of an exemption").

2        With respect to the Criminal Division documents, DOJ offers a supplemental affidavit

3   from Mr. Cunningham who offers the same conclusory assertion as to each of the five withheld

4   documents: "While the public may know that federal investigators use some of these techniques,

5   the details of their use are not publicly known," and the documents "discuss[] such non-public

6   details as where, when, how, and under what circumstances [the technique is] used."  Second

7   Cunningham Dec. at ¶¶12, 13, 14, 15.  It then invokes the principle that agencies are entitled to

8   withhold "technical analysis of the techniques and procedures used to conduct law enforcement

9   investigations."  *Bowen v. Food & Drug Admin.,* 925 F.2d 1225, 1228-29 (9th Cir. 1991); DOJ

10  Reply at 9.

11       Judge Illston recently rejected precisely this argument in a case where the FBI offered an

12  affidavit comparably conclusory to DOJ's affidavit here.  *See American Civil Liberties Union of*

13  *Northern California v. FBI,* 2013 WL 3346845, *9 (N.D. Cal. July 1, 2013) (FBI declarant

14  testified: "[w]hile these techniques may be known by the public in a general sense, the technical

15  analysis of these sensitive law enforcement techniques, to include the specifics of how and in

16  what setting they are employed, is not generally known to the public").  As Judge Illston

17  explained:

18
19          Although the FBI is not entitled to withhold [generally known] investigatory procedures,
            it is entitled to withhold "technical analysis" of the techniques and procedures used to
20          conduct law enforcement investigations that are not generally known.  *See, e.g., Bowen v.*
            *U.S. Food & Drug Admin.,* 925 F.2d 1225, 1228 (9th Cir. 1991).  The FBI's conclusory
21          assertion that, even though the technique is generally known, the specifics on how and
            when the technique is used is not generally known, is not adequate. The Ninth Circuit
22          has rejected a similar argument. *Rosenfeld,* 57 F.3d at 815 (holding that the government
            "simply by saying that the 'investigative technique' at issue is not the practice but the
23          application of the practice to the particular facts underlying that FOIA request" cannot
            be adequate under Exemption 7(E) because otherwise it would prove too much).
24
25  *Id.*  For the reasons set forth by Judge Illston, DOJ's "assertion that the public is unaware of the

26  specifics of how and when a technique is employed is not enough to sustain a withholding under

27  Exemption 7(E)."  *Id.*

28

1
2

### 2.     DOJ Has Not Met Its Burden Of Demonstrating a Risk of Circumvention

3

Nor has DOJ met its burden of demonstrating that disclosure would risk circumvention.

4

Its opening papers offered only the conclusory assertion of circumvention.  *See* Pltfs' Cross-

5

Motion & Opp. at 18-19 (citing cases holding insufficient to withhold documents under

6

Exemption 7(E) affidavits that merely assert statutory standard).  On reply, DOJ does not even

7

attempt to provide an explanation of how disclosure of the EOUSA documents would risk

8

circumvention.  It now offers a supplemental affidavit that offers some speculation as to how

9

disclosure of the Criminal Division documents could risk circumvention, but this too is

10

insufficient.

11

Mr. Cunningham's supplemental declaration opines that information about the specifics

12

of when various investigatory techniques are used could alert law violators to the circumstances

13

under which they are not used.  Second Cunningham Dec. at ¶16.  But DOJ fails to address the

14

fact that the public already knows that minimizing vehicular or cell phone usage will allow

15

them to evade detection.  *See* Pltfs' Cross-Motion & Opp. at 19.  To the extent that potential law

16

violators can evade detection by the government's location tracking technologies, that risk

17

already exists.  The documents at issue here are thus distinguishable from the information

18

pertaining to CIA security clearance procedures at issue in *Morley v. CIA,* 508 F.3d 1109, 1129

19

(D.C. Cir. 2009).  There was no suggestion in *Morley* that information about how to evade CIA

20

security clearance procedures was *already* available; disclosure in that case therefore gave rise

21

to a risk of circumvention that did not pre-exist.[3]

22
23

------------------------

24
25

[3] DOJ's remaining cases addressing the risk of circumvention (DOJ Reply at 11) involve *pro se* litigants.  Moreover, neither case dealt with the issue raised here – that information about how to avoid detection is already available to the public and so disclosure does not increase the risk of circumvention.  *Cf. Hidalgo v. FBI,* 541 F.Supp.2d  250, 254 (D.D.C. 2008) (declining to rely on cases cited by agency in FOIA action where "in both cases the FOIA requests were litigated by inmates appearing pro se, and neither decision gives the issue much attention").

26
27
28

Moreover, DOJ's theory of evasion is pure speculation as to which "[t]he government has not offered any proof." *Davin v. United States Dep't of Justice,* 60 F.3d 1043, 1064 (3d Cir. 1995) (government's assertion that specific information about recruitment of confidential informants in investigations of organizations suspected of illegal activities would "aid the groups in detecting informants currently operating within their ranks" constituted "speculation" and government would be required to provide "additional facts to support" Exemption 7(E) claim); *see also, e.g., Hidalgo v. FBI,* 541 F.Supp.2d 250, 254 (D.D.C. 2008) (rejecting assertion that disclosure of information about payments to confidential informant sufficed to establish Exemption 7(E) where FBI affidavit merely asserted that sophisticated drug traffickers "'could scheme'" to "use . . . information to their advantage").

While *PHE, Inc. v. Dep't of Justice,* 983 F.2d 248 (D.C. Cir. 1993), did not compel disclosure of the FBI's manual on obscenity, it affirmatively noted that portions of the manual – including exactly as here "a discussion of search and seizure law" – qualified as working law and as such "is precisely the type of information appropriate for release under the FOIA." *Id.* at 251-52. The court went on to explain that "[d]espite the indication that at least some of the redacted material should be released, [the affidavit] gave no adequate reason for the [agency's] decision to withhold the material." *Id.* at 252. The court therefore found that the agency's affidavit was too conclusory to justify Exemption 7(E) and thus directed the district court on remand either to require a more detailed affidavit or to review the materials *in camera. See id.* 252-53. As in *PHE*, the materials at issue here constitute the agency's working law and should be disclosed; DOJ cannot justify their withholding based on its conclusory affidavits.

### 3.    DOJ Has Not Met Its Burden Of Demonstrating The Documents Are Not Segregable

Even if the government could withhold discussions of the "where, when, how, and under what circumstances" GPS and cell phone tracking are used (Second Cunningham Dec. at ¶¶12,13, 14, 15), DOJ has not met its burden of demonstrating that the other information in these documents is not reasonably segregable. *See* 5 U.S.C. §552(b); *Army Times Pub. Co. v.*

*Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("the agency bears the burden of showing that no such segregable information exists").  The documents clearly do not consist exclusively of a discussion of the manner in which location tracking technologies are used.  *See, e.g.,* Cunningham Dec. at ¶ 10 (listing "factual information regarding specific types of investigative techniques" as only one of several topics in CRM Four and Five).

But EOUSA has made no effort to engage in a segregability analysis.  *See* Kornmeier Dec., Ex. C ("This information is attorney work product, which contains no non-exempt material.  Therefore, there is nothing to segregate.").  DOJ contends that it is not required to because of the work product exemption.  DOJ Reply at 12-13.  While that exemption would moot a segregability analysis, it is simply inapplicable because of the working law exception to Exemption 5 and, in any event, does not apply to these documents, which set forth general legal standards, void of any case-specific analysis.  *See supra* Part II-B.

DOJ appears to contend that the Criminal Division met its segregability burden by engaging in a "line-by-line" review.  DOJ Reply at 13.  But DOJ has entirely failed to offer any explanation of why it concluded, after engaging in that line-by-line review, that the materials are not reasonably segregable.  Its conclusory recitation of the legal standard is indistinguishable from declarations found insufficient by other courts.  *Compare* Cunningham Dec. at ¶28 ("no meaningful portion … could be released without destroying the integrity of the document or without disclosing third-party interests"), *with, e.g., Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,* 818 F.Supp. 1291, 1300 (N.D. Cal. 1992) (court found "entirely insufficient" declaration that stated "'no segregation of non-exempt, meaningful information can be made for disclosure'"); *National Resources Defense Council v. Dep't of Defense*, 388 F.Supp. 2d 1086, 1105 (C.D. Cal. 2005) (court found insufficient declaration that stated "none of the withheld documents contain reasonably segregable information that is not exempt"); and cases cited at Pltfs' Cross-Motion & Opp. at 21.

The conclusory EOUSA affidavit makes it impossible for the court to "make specific

findings on the issue of segregability." *Wiener v. FBI*, 943 F.2d 972, 988 (9th Cir. 1991)

("reversible error for the district court 'to simply approve the withholding of an entire document

without entering a finding on segregability, or the lack thereof'") (citation omitted).

DOJ cannot justify withholding entire documents or 53-page portions of documents,

even if the Court finds merit to DOJ's Exemption 7(E) argument.

### 4.     The Court Should Consider *In Camera* Review

DOJ appears to contend that it cannot provide a less conclusory affidavit explaining why

disclosure of these documents would risk circumvention without harming the interests it seeks

to protect. *See* DOJ Reply at 10 (agency need not "specify its objections [to disclosure] in such

detail as to compromise the secrecy of the information") (citation omitted).  While *in camera*

review is generally "not an acceptable substitute for an adequate" agency declaration, it is

appropriate if "'the government has submitted as detailed public affidavits and testimony as

possible.'"  *Wiener*, 943 F.2d at 979 (citation omitted).  In *PHE,* the court found the agency's

declaration too vague and conclusory to justify withholding a manual on obscenity prosecutions

pursuant to Exemption 7(E).  983 F.2d at 252.  It then remanded the case to the district court,

with leave to determine whether to require a more detailed affidavit or to conduct *in camera*

review. *Id.* at 253.

The D.C. Circuit has held that it is error not to review documents *in camera* where "the

agency affidavits are insufficiently detailed to permit meaningful review of exemption claims,"

"the number of withheld documents is relatively small," and "the dispute turns on the contents

of the withheld documents, and not the parties' interpretations of those documents."  *Spirko v.*

*United States Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (internal quotation marks,

citation omitted).  All of these factors weigh in favor of *in camera* review.  DOJ's affidavits are

conclusory; only seven documents are at issue; and the dispute turns largely on whether the

documents contain the type of discussion of location tracking technologies that would give rise

to circumvention.  *See also id.* (district court has discretion to conduct an *in camera* inspection

if "the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption") (internal quotation marks, citation omitted).

*In camera* review would also be more expeditious than requiring DOJ to submit another affidavit, which would then likely be followed by another round of summary judgment briefing. Plaintiffs submitted this FOIA in April 2012, were granted expedited processing by DOJ that same month, and filed suit in July 2012. *See* Lye Dec. at ¶¶3-5. Following disclosures by Edward Snowden of widespread dragnet surveillance, the country is currently actively debating government surveillance. *See* Second Lye Dec. at ¶3 and Ex. 2. The documents, which Plaintiffs initially sought over a year ago, would contribute to that ongoing and vital societal and legislative debate. *Cf. Electronic Privacy Information Center v. Dept. of Justice*, 416 F.Supp.2d 30, 41 (D.D.C. 2006) (granting preliminary injunction where agency granted expedited processing but failed to produce records within 20-day deadline applicable to standard FOIA requests, and information sought was "vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Electronic Frontier Foundation v. Office of the Dir. Of Nat'l Intelligence*, 542 F.Supp.2d 1181, 1187 (N.D. Cal. 2008) (granting preliminary injunction where agency had granted expedited processing and where "Congress is considering legislation that would amend the FISA and the records may enable the public to participate meaningfully in the debate over such pending legislation.").[4]

## III.    CONCLUSION

For the foregoing reasons, the Court should deny DOJ's motion for summary judgment and grant Plaintiffs' motion for summary judgment, ordering disclosure of the withheld

---

[4] In light of the parties' stipulation that DOJ would only be required to produce "responsive portions of the USA Book," DOJ Reply at 14 (citing ECF No. 17, Appendix at ¶6), Plaintiffs withdraw their challenge to the withholding of information on the grounds of "non-responsive." *Cf.* Pltfs' Cross-Motion & Opp. at 21-22.

1   materials or, in the alternative, conduct an *in camera* review to determine whether any portions

2   of the documents would, if disclosed, risk circumvention and if so, whether they cannot

3   reasonably be segregated.

4

5   DATED:  August 8, 2013                    Respectfully Submitted,

6                                       By:   /s/  *Linda Lye*

7                                              Linda Lye

8                                       Michael T. Risher
                                        Linda Lye
9                                       AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION OF NORTHERN CALIFORNIA
10

11                                      Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28