Michael T. Risher (CA SBN 191627)
mrisher@aclunc.org
Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street, 2nd Floor
San Francisco, California 94111
Telephone:    415-621-2493
Facsimile:    415-255-8437

Attorneys for Plaintiffs
AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA and
SAN FRANCISCO BAY GUARDIAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA; *SAN FRANCISCO BAY GUARDIAN*,<br><br>             Plaintiffs,<br><br>  v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>           Defendant. | CASE No.: 12-cv-4008-MEJ<br><br>**PLAINTIFFS' OPPOSITION AND NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM IN SUPPORT**<br><br>Hearing Date:   January 9, 2014<br>Time:          10:00 a.m.<br>Location:     Courtroom B – 15th Floor<br>Judge:        Hon. Maria-Elena James |

**NOTICE OF CROSS-MOTION AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT:** TO DEFENDANT AND ITS COUNSEL OF RECORD:  PLEASE TAKE NOTICE THAT on January 9, 2014 at 10 am, or as soon thereafter as the parties may be heard, Plaintiffs American Civil Liberties Union of Northern California and San Francisco Bay Guardian will bring for hearing a cross-motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 in this Freedom of Information Act ("FOIA") action on the ground that Defendant is unlawfully refusing to conduct a search and unlawfully withholding agency documents.  The hearing will take place before the Honorable Maria-Elena James, in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.  This motion is based on this notice, the attached memorandum of points and authorities, the accompanying Declaration of Linda Lye and attached exhibits, all pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

 Dated:  October 25, 2013                     Respectfully submitted,


                                             By:  _____ /s/ *Linda Lye* _____
                                                          Linda Lye

                                             Michael T. Risher
                                             Linda Lye
                                             AMERICAN CIVIL LIBERTIES UNION
                                             FOUNDATION OF NORTHERN CALIFORNIA
                                             39 Drumm Street
                                             San Francisco, CA 94111
                                             Tel:    (415) 621-2493
                                             Fax:    (415) 255-8437

                                             Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

II.   FACTUAL BACKGROUND.......................................................................2

      A.    The Government Shrouds Its Location Tracking Practices In Secrecy .........2

      B.    The Importance Of Public Access To Location Tracking Orders ................5

      C.    Sealed Dockets Make It Difficult For The Public To Learn
            About Or To Challenge The Government Surveillance Practice..................6

      D.    The DOJ Has Been Able To Search For Records In Response
            To A Similar FOIA Request ......................................................8

III.  ARGUMENT .........................................................................................8

      A.    Legal Framework ..............................................................................8

            1.    The Public Has A Right To Search Warrant
                  Materials From Closed Investigations ..................................9

            2.    Agency Obligations Under FOIA ...........................................10

      B.    DOJ Must Process This Request Because There Are Feasible
            Search Methods That Do Not Pose An Undue Burden................................11

      C.    The Existence Of Sealing Orders Does Not Justify DOJ's Refusal
            To Process Or Produce Location Tracking Materials Related
            To Closed Investigations.....................................................................15

            1.    The Sealing Orders Do Not Prohibit DOJ From
                  Disclosing Information And Documents ...............................15

                  (a)   The Sealing Orders Only Seal Documents
                        But Do Not Seal Docket Information....................................18

                  (b)   The Sealing Orders Limit Public Access to
                        Court Records But Impose No Gag Order
                        On DOJ .................................................................18

            2.    The Pen Register Statute Does Not Justify Withholding
                  The Materials ...............................................................20

            3.    DOJ Must Identify And Produce Responsive Records
                  Or Information ...............................................................23

      D.    DOJ's Redactions Of Unsealed Court Records ............................................23

IV.   CONCLUSION........................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Dep't of Justice*,
  655 F.3d 1 (D.C. Cir. 2011) ...............................................................................8, 10

*ACLU v. DOJ*,
  08-cv-01157-JR...................................................................................................8

*American Fed. of Gov. Employees v. Dep't of Commerce*,
  907 F.2d 203 (D.C. Cir. 1990) ......................................................................11, 14

*In re Application Directing Providers to Provide Historical Cell Site Locations
  Records*, 930 F. Supp 2d 698 (SD Tex 2012) .......................................................5

*In re Application for an Order Directing a Provider of Elec. Commc'n Serv.
  to Disclose Records to Gov't (In re Cell Provider Disclosure)*,
  620 F.3d 304 (3d Cir. 2010)..................................................................................3

*Armstrong v. Exec. Ofc. of Pres.*,
  830 F. Supp. 19 (D.D.C. 1993) ...............................................................18, 19, 20

*Cal-Almond, Inc. v. Dep't. of Agriculture*,
  960 F.2d 105 (9th Cir. 1992) ...............................................................................20

*Carlson v. United States Postal Serv.*,
  504 F.3d 1123 (9th Cir. 2007) .............................................................................21

*Church of Scientology of California v. U.S. Postal Service*,
  633 F.2d 1327 (9th Cir. 1980) .......................................................................20, 22

*CIA v. Sims*,
  471 U.S. 159 (1985)..............................................................................................10

*Dale v. IRS*,
  238 F. Supp. 2d 99 (D.D.C. 2002) .......................................................................11

*Department of the Air Force v. Rose*,
  425 U.S. 352 (1976)..............................................................................................10

*In re Digital Analyzer*,
  885 F. Supp. 197 (C.D. Cal. 1995) ........................................................................5

*Favish v. Office of Indep. Counsel*,
  217 F.3d 1168 (9th Cir. 2000) .............................................................................10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ...............................................................................9

*GTE Sylvania, Inc. v. Consumers Union*,
    445 U.S. 375 (1980) ............................................................................................15

*Irons v. Schuyler*,
    465 F.2d 608 (D.C. Cir. 1972) ............................................................................14

*Jennings v. FBI*,
    No. 03-cv-01651-JDB (D.D.C. May 6, 2004) ...................................................22

*Kamakana v. City and County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ..............................................................................9

*Manna v. Dep't of Justice*,
    815 F. Supp. 798 (D.N.J. 1993) .........................................................................22

*Morgan v. Dep't of Justice*,
    923 F.2d 195 (D.C. Cir. 1991) ..................................................................... *passim*

*Nixon v. Warner Comm., Inc.*,
    435 U.S. 589 (1978) ..............................................................................................9

*Press-Enter. Co. v. Superior Court*,
    478 U.S. 1 (1986) ..................................................................................................9

*Public Citizen, Inc. v. Dep't of Educ.*,
    292 F. Supp. 2d 1 (D.D.C. 2003) .......................................................................13

*Riley v. FBI*,
    2002 U.S. Dist. LEXIS 2632 (D.D.C. Feb. 11, 2002) ......................................22

*Ruotolo v. Dep't of Justice*,
    53 F.3d 4 (2d Cir. 1995) ......................................................................................13

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*,
    562 F. Supp. 2d 876 (S.D. Tex. 2008) ......................................................... *passim*

*Senate of Com. of Puerto Rico v. Dep't of Justice*,
    1993 WL 364696 (D.D.C. Aug. 24, 1993) ...................................................16, 18

*Times Mirror Co. v. United States*,
    873 F.2d 1210 (9th Cir. 1989) ..........................................................................9, 12

*United States v. Bus. of the Custer Battlefield Museum & Store Located*
    *at Interstate 90, Exit 514*, 658 F.3d 1188 (9th Cir. 2011)...................2, 9, 10, 12

*United States v. Jones*,
  _ U.S. _, 132 S.Ct. 945 (2012) ...........................................................................3

*United States v. Rigmaiden*,
  2013 WL 1932800 (D. Ariz. May 8, 2013) ....................................................3, 7

*United States v. Skinner*,
  690 F.3d 772 (6th Cir. 2012) ...........................................................................3

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ...................................................................10, 15

*Weisberg v. United States Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) ......................................................................10

*Wiener v. FBI*,
  943 F.2d 972 (9th Cir. 1991) ...........................................................................10

*Zemansky v. United States EPA*,
  767 F.2d 569 (9th Cir. 1985) ...........................................................................10

**Statutes**

5 U.S.C. § 552 ............................................................................................10, 11, 12

18 U.S.C. § 2705 .................................................................................................17

18 U.S.C. § 3123 .............................................................................17, 20, 21, 22, 23

**Rules**

Fed. R. Crim. P. 41 .............................................................................................21

**Legislation**

Geolocational Privacy and Surveillance Act,
  H.R. 1312, 113th Cong. (2013-14) .................................................................3

Geolocational Privacy and Surveillance Act,
  S.639, 113th Cong. (2013-14) ........................................................................3

**Other Authorities**

Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECP's Secret Docket*,
  6 Harv. L. & Pol'y Rev. 313, 322 (2012) .......................................................5

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The government's use of location tracking technology is the subject of widespread legal, legislative, and public debate.  Plaintiffs in this FOIA lawsuit seek information that would shed light on these debates by providing the public with access to information pertaining to the extent to which the government deploys location tracking technology in its investigations and the legal prerequisites it satisfies before using intrusive investigative techniques.  Under FOIA, an agency has a statutory duty to conduct a search reasonably calculated to lead to the discovery of responsive documents.  After identifying responsive documents, it must then produce the documents unless it can meet its burden of showing that the documents fall under one or more of FOIA's nine statutory exemptions from disclosure.  Defendant Department of Justice ("DOJ") not only asserts that all of these materials are exempt from disclosure, but it takes the more extreme position that it should not even be required to conduct a search for them.

The consequence of DOJ's position is significant:  By completely shrouding its location tracking practices in secrecy, Defendant is depriving the public of information necessary for an informed public debate and effectively foreclosing legal or legislative challenges to its surveillance practices.

The legal basis for DOJ's position is also lacking.  In support of its position that it need not even process Plaintiffs' FOIA request, it contends that review of the files necessary to complete the search would be unduly burdensome and that many of the documents are under seal.  But Defendant's own declarations make clear that there are feasible methods for identifying responsive documents and that the burden on Defendant is not undue, given the strong public interest in the information.  Moreover, although DOJ invokes "sealing orders," it has not met its burden of proving that the sealing orders at issue actually "*prohibit[]* the agency from disclosing the records."  *Morgan v. Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991).  They do not, as evidenced by the language of sealing orders contained in the record.  The sealing orders at issue here are intended to accord DOJ flexibility to keep ongoing investigations confidential, by limiting access to what would otherwise be publicly accessible

court records, not to gag DOJ from ever discussing the matter.  The sealing orders thus do not justify withholding the information from Plaintiffs and they certainly do not justify DOJ's refusal to complete the search for responsive records.

In one regard, however, DOJ is correct.  It contends that it need not produce any documents relating to open investigations.  Plaintiffs agree, but the caselaw is also clear that the public has a right to access court records such as search warrants after the close of an investigation.  *See United States v. Bus. of the Custer Battlefield Museum & Store Located at Interstate 90, Exit 514*, 658 F.3d 1188, 1192 (9th Cir. 2011) (search warrant materials subject to qualified common law right of access after close of investigation).  Plaintiffs therefore seek an order requiring Defendant to search for and produce location tracking orders and applications where the investigation has been closed, or at a minimum docket numbers pertaining to such cases so that Plaintiffs can move to unseal them.

If Defendant prevails – and is permitted to withhold all information, including docket numbers, about all location tracking orders sought by the United States' Attorney's Office for the Northern District of California, even where the investigation is closed – then Defendant will succeed in ensuring that court records authorizing electronic surveillance will remain permanently sealed and forever inaccessible to the public.  The principles underlying FOIA, the First Amendment, and the common law right of access to court records do not tolerate the creation of a permanently secret surveillance docket.

## II.     FACTUAL BACKGROUND

### A.     The Government Shrouds Its Location Tracking Practices In Secrecy

The federal government has asserted an expansive view of its powers to engage in location tracking without a warrant based on probable cause.  Privacy advocates, by contrast, argue that location tracking technology enables the government to obtain intimate details of an individual's life – information about visits to the abortion clinic, psychiatrist, and mosque – and that warrants are therefore necessary to guard against unreasonable privacy invasions.  But privacy advocates and the public at large face a threshold barrier to even engaging in a

meaningful debate over these issues:  The government shrouds its location tracking practices in tremendous secrecy.

Resolving a split among the courts of appeals, the Supreme Court last year held in *United States v. Jones*, _ U.S. _, 132 S.Ct. 945 (2012), that installing a Global Positioning Service (GPS) device on an individual's car and using it to track an individual over a 28-day period constitutes a "search" within the meaning of the Fourth Amendment.  But *Jones* by no means definitely resolved the location tracking debate.

The government also uses other forms of location tracking that, while as informationally intrusive as GPS, do not necessarily involve a physical occupation of private property.  Cellular carriers, for example, have a wealth of information about the location of their subscribers because cell phone towers collect location information.  The applicable legal standard for the government to obtain cell phone location information from cellular carriers is still percolating in the courts, which are divided on whether the government must show probable cause.  *Compare In re Application for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't* (*In re Cell Provider Disclosure*), 620 F.3d 304 (3d Cir. 2010) (judge may require government to obtain search warrant for cell site records), *with, e.g.*, *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012) (no search warrant needed).

Courts are also beginning to grapple with the constitutional issues arising out of other location tracking technologies, such as so-called "stingray" devices, which mimic a cell tower and thereby trick wireless devices into revealing their location and other information.  *See, e.g.*, *United States v. Rigmaiden*, 2013 WL 1932800, at * 15 (D. Ariz. May 8, 2013).

While the courts are grappling with Fourth Amendment issues, legislators, too, have waded into the debate.  Legislation is pending in Congress that would require law enforcement to obtain warrants based on probable cause before accessing location information and regulate the use of location information by private businesses.  *See* Geolocational Privacy and Surveillance Act, H.R. 1312, 113th Cong. (2013-14) and Geolocational Privacy and Surveillance Act, S.639, 113th Cong. (2013-14).

Although information about the government's actual practices when it comes to location tracking would shed light on these pending legal and legislative debates, the government has shrouded its location tracking practices in secrecy.[1]  Judge Smith of the Southern District of Texas succinctly described the problem:  Government applications for electronic surveillance orders are typically filed under seal, with a request that the order and underlying documents remain under seal "until further order of the court."  *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 877-78 (S.D. Tex. 2008).  "The result has been a kudzu of sealed manila envelopes overflowing the clerk's office vault" that effectively remain sealed "for an indefinite period beyond the underlying criminal investigation." *Id.* at 877-78. After conducting a survey of electronic surveillance orders issued by the Southern District of Texas over a 13-year period, Judge Smith found that "out of 3886 orders sealed 'until further order of the court,' 99.7% remain under seal today, many years after issuance. These numbers confirm, beyond reasonable doubt, that when it comes to shielding electronic surveillance orders from the public, indefinitely sealed means permanently sealed." *Id.* at 878.  Based on the First Amendment and common law right of access to judicial records, Judge Smith therefore announced a new protocol, governing the applications for electronic surveillance before him and future applications, that court sealing orders would remain in effect for only six months, after which they would automatically expire absent a showing of need by the government for continued sealing. *Id.* at 895.

Even five years after Judge Smith drew attention to the problem, electronic surveillance orders are routinely filed – and then remain – under seal long after any need for secrecy has passed.  Judge Smith has published a law review article in which he estimates that federal magistrate judges issued more than 30,000 orders for electronic surveillance under seal in 2006,

---

[1] In addition to seeking information about the government's practices, Plaintiffs have also sought information about its policies.  But DOJ has taken the position that its policies and procedures regarding location tracking are exempt from disclosure, a contention that is the subject of the cross-motions for summary judgment previously briefed by the parties and heard by the Court on September 5, 2013.  *See* ECF Nos. 23, 25, 33, 38 (parties cross-motions for summary judgment); ECF No. 42 (minute order re: motion hearing).

"more than thirty times the annual number of [Foreign Intelligence Surveillance Act] cases." Stephen Wm. Smith, *Gagged, Sealed & Delivered: Reforming ECP's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313, 322 (2012). The same is undoubtedly true in this district: Indeed, the government admits that it does not review and unseal surveillance applications after it closes an investigation – or ever. *See* Kenney Decl. ¶ 9. Only six of the 760 files it identified through an electronic records search are public. *See id.* at ¶ 19.

### B.    The Importance Of Public Access To Location Tracking Orders

As Judge Smith explained, access to electronic surveillance orders issued by the courts is important for democratic governance. "It may very well be that, given full disclosure of the frequency and extent of these [electronic surveillance] orders, the people and their elected representatives would heartily approve without a second thought. But then again, they might not." *In re Sealing*, 562 F. Supp. 2d at 886.

While access to court records is fundamental to our open system of government in general, it is particularly important where the government seeks to use new technology to engage in surveillance. This is so because new forms of technology often raise novel statutory and constitutional questions. *Cf., e.g*, *In re Application Directing Providers to Provide Historical Cell Site Locations Records*, 930 F. Supp. 2d 698, 702 (S.D. Tex. 2012) (understanding of "the technology involved in the requested applications" is necessary to "appreciate the constitutional implications of" the request for authorization to obtain all historical cell site records from four providers for specified cell towers, for example, the impact on "innocent people who are not the target of the criminal investigation" but whose data would be obtained); *In re Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (concluding that "digital analyzer" did not fall within statutory definition of "pen register" or "trap and trace" device). Because the government seeks court authorization – either statutory orders or probable cause warrants – to engage in location tracking in *ex parte* proceedings, magistrates reviewing such applications lack the benefit of the adversarial process in deciding these complex legal issues. This has the potential to create distortions in the development of surveillance law.

Public access to these records would increase the likelihood that courts will receive multiple perspectives on these issues.

### C. Sealed Dockets Make It Difficult For The Public To Learn About Or To Challenge The Government Surveillance Practices

DOJ notes that of the 760 matters it identified as potentially involving location information, it found only six files that were not sealed; one of the six files contained responsive applications and orders that had (separate from this FOIA litigation) been unsealed at the request of the Deputy Criminal Chief and provided to Plaintiff ACLU of Northern California ("ACLU-NC"). *See* Kenney Decl. (ECF No. 43-1) at ¶¶ 19, 22 & DOJ Br. at 8-9.

The materials previously provided to the ACLU-NC underscore why a sealed surveillance docket is problematic. These records were not spontaneously unsealed by the U.S. Attorney's Office. Rather, the ACLU-NC learned from public pleadings in a *pro se* criminal case pending in the District of Arizona that the government had used a surveillance tool known as a stingray or cell-site emulator to track the suspect's location and that the orders authorizing use of the stingray had been issued in the Northern District of California but were under seal and unavailable on this Court's docket. Seeking to review the orders, the ACLU-NC proceeded to send four letters to the U.S. Attorney's Offices in the Northern District of California and the District of Arizona over the course of 11 months requesting that those offices agree to unseal the orders. When no substantive response to those requests was forthcoming, the ACLU-NC filed a noticed-motion to unseal in this District. Only then did the U.S. Attorney's Office file its own motion to unseal; it obtained an unsealing order the same day, and then provided the orders to the ACLU-NC. *See* Third Lye Decl. at ¶¶ 2-5 & Exhs. 1-5.

The previously sealed orders and applications revealed that although the government was purportedly requesting court authorization to use a stingray to track a suspect's location, it never explicitly informed the magistrate that it sought to use stingray technology or provided any information about how the technology works. After reviewing the previously sealed orders, the ACLU-NC and other civil liberties organizations filed an *amici* brief in the Arizona criminal

case in support of the *pro se* defendant's motion to suppress, providing information about stingray technology (in particular, that stingrays scoop up information from third parties as to whom there is no probable cause), and arguing that the government's omission of this material in its warrant application rendered the order constitutionally defective.  The arguments in the *amici* brief could not have been made without access to the underlying location tracking orders. *See* Third Lye Decl. at ¶¶ 6-8.[2]

The record is thus clear.  Location tracking orders in this District remain under seal long after the need for sealing has evaporated.  Indeed, as DOJ acknowledges, it has no process for systematically reviewing "whether the conditions requiring sealing continue."  Kenney Decl. at ¶ 9.  Judge Smith's observation about the Southern District of Texas is thus equally apt in this District:  "indefinitely sealed means permanently sealed."  *In re Sealing*, 562 F. Supp. 2d at 878. Members of the public must therefore take affirmative steps to request the unsealing of particular orders, but of course, will lack the information necessary to request unsealing unless alerted to a particular order, which occurs only in very unusual circumstances.  A FOIA action such as this is therefore one of the few mechanisms to obtain access to court records which involve intrusive surveillance techniques.

Moreover, these records, if made available to the public, would let the public understand what the government's surveillance practices actually are.  This information is necessary so that the public can determine whether it supports these practices (or wishes to push for legislative reform), and whether they suffer from legal infirmities.  But by keeping these court records secret, the government, whether intentionally or not, minimizes legislative and legal challenges to its location tracking practices.

---

[2] The district court in that case ordered the government to respond to the ACLU-NC's arguments and, although it ultimately denied the motion to suppress, addressed the ACLU-NC's arguments in its opinion.  *See Rigmaiden*, ECF No. 981 (attached as Lye Decl., Exh. 6); *Rigmaiden*, 2013 WL 1932800 at *14-21.

### D.   The DOJ Has Been Able To Search For Records In Response To A Similar FOIA Request

This is not the only FOIA action that has sought information about the government's use of location tracking technology in specific cases.  In *ACLU v. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011), the national office of the ACLU requested, *inter alia*, "case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data." *Id.* at 4.  The information was sought from nine U.S. Attorney's Offices and the Drug Enforcement Agency.  *See ACLU v. DOJ*, 08-cv-01157-JR (ECF No. 20) at 2, (attached as Third Lye Decl., Exh. 7).

DOJ's search protocol in that case involved sending an email to each Assistant United States Attorney employed in the Criminal Division of the subject U.S. Attorney's Offices and requesting that they identify responsive case names and docket numbers.  *See id.* at 5-6.  DOJ identified 255 responsive case names and docket numbers, but withheld them all on the grounds of FOIA's privacy exemptions.  *See id.* at 6.  The D.C. Circuit held that cases where the defendants were convicted or entered public guilty pleas should be disclosed because the public interest in the information outweighed any privacy interests at stake, and remanded for further factual development to ascertain whether any of the matters involved acquittals or dismissals, where the privacy balance may differ.  *See ACLU v. Dep't of Justice*, 655 F.3d at 16-17.

Plaintiffs in this case raised the possibility of using a similar approach, even though any staff departures would likely result in an underinclusive search.  *See* Third Lye Decl. at 10.  DOJ apparently declined to pursue this possibility.

## III.   ARGUMENT

### A.   Legal Framework

Before turning to DOJ's obligations under FOIA, we first address the public's right to search warrant and analogous materials.

1

2

          **1.      The Public Has A Right To Search Warrant Materials From Closed Investigations**

3

       The Supreme Court has recognized two qualified rights of access to judicial proceedings

4

and records, one grounded in the common law and the other in the First Amendment. *See Nixon*

5

*v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978) (common law right "to inspect and copy

6

public records and documents, including judicial records and documents"); *Press-Enter. Co. v.*

7

*Superior Court*, 478 U.S. 1, 8 (1986) ("First Amendment right of access to criminal proceedings"

8

and documents).  In the Ninth Circuit, "we start with a strong presumption in favor of access to

9

court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003);

10

*see also Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (only

11

"two categories of documents" to which the common law right of access does not apply: "grand

12

jury transcripts and warrant materials in the midst of a pre-indictment investigation").

13

       The Ninth Circuit has expressly held that the common law right of access attaches to

14

search warrant materials once the investigation has concluded.  *Custer Battlefield*, 658 F.3d at

15

1196.  While "warrant materials have not historically been accessible to the public during the

16

*early stages* of criminal proceedings," "[p]ost-investigation … warrant materials 'have

17

historically been available to the public.'"  *Id.* at 1193 (emphasis in original, citation omitted);

18

*cf. Times Mirror Co. v. United States*, 873 F.2d 1210, 1215 (9th Cir. 1989) (concerns that

19

suspects would destroy evidence, flee the jurisdiction, or coordinate stories before testifying

20

justified denial of access while an investigation was on-going and before any indictments had

21

been returned).

22

       The Southern District of Texas has analogized electronic surveillance orders to search

23

warrants and held, *inter alia*, that the common law right of access precludes such materials from

24

being "sealed indefinitely after the investigation comes to a close."  *See In re Sealing*, 562 F.

25

Supp. 2d at 892, 895 (authorizing sealing only for 180 days after issuance of order, after which

26

orders will be unsealed absent government showing of need for continued secrecy).

27

28

As explained above, *see supra* Part II-B&C, there is a particularly strong public interest in disclosure here – to shed light on the government's location tracking practices so that the public can learn what they are, whether they are intrusive, and whether to press for change before the courts or legislatures.  *See Kamakana,* 447 F.3d at 1179 ("public's understanding of the judicial process" lies at heart of "strong presumption of access to judicial records"); *see also ACLU v. Dep't of Justice*, 655 F.3d at 12 (finding "significant public interest in disclosure" of information about warrantless cell phone tracking).

The materials at issue here involve applications for court orders authorizing the government to engage in location tracking and are, or are akin to, search warrant materials. Under *Custer Battlefield* and *In re Sealing*, location tracking materials in matters where the investigation has closed are materials that should be available to the public pursuant to the common law right of access to court records.[3]

### 2.        Agency Obligations Under FOIA

"The mandate of the FOIA calls for broad disclosure of Government records."  *CIA v. Sims*, 471 U.S. 159, 166 (1985).  In responding to a FOIA request, an agency has the duty to "conduct[] a search reasonably calculated to uncover all relevant documents."  *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (adopting *Weisberg* standard).

The agency "shall make available to the public" the requested records, 5 U.S.C. § 552(a)(3), unless one or more of FOIA's nine statutory exemptions from disclosure applies.  *See* 5 U.S.C. § 552(b).  "[G]overnment agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a '*Vaughn* index' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interested protected by the claimed exemption."  *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (citing *Vaughn v.*

---

[3] Plaintiffs contend that the First Amendment also provides a right of access to these materials, but do not address this issue further given the clarity of the contours of the common law right.

*Rosen*, 484 F.2d 820 (D.C. Cir. 1973)).  The government "has the burden of proving the applicability of any FOIA exemption claimed."  *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1175 (9th Cir. 2000) (citation omitted).  Because "disclosure, not secrecy, is the dominant objective of the Act," FOIA's exemptions "must be narrowly construed." *Department of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).

### B.      DOJ Must Process This Request Because There Are Feasible Search Methods That Do Not Pose An Undue Burden

DOJ contends that it need not process this request because it would be unduly burdensome.  But DOJ's own search process and the existence of at least one alternative used by DOJ in another similar FOIA suit demonstrate this contention to be without merit.

Plaintiffs seek the following discrete category of documents:

All requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008.

Kenney Decl., Exh. A.[4]  FOIA requires that an agency respond to "any request for records which," *inter alia*, "reasonably describes such records."  5 U.S.C. § 552(a)(3)(A)(i).  Courts have interpreted this to mean that an agency need not undertake searches that would be unreasonably burdensome.  *See, e.g.*, *American Fed. of Gov. Employees v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990).

There can be no real dispute that Plaintiffs' request satisfies the literal requirements of the statute – by reasonably describing the records sought.[5]  But DOJ contends that "the request

---

[4] The three other categories of documents sought in Plaintiffs' FOIA request were addressed in the cross-motions for summary judgment previously briefed by the parties and heard by this Court on September 5, 2013.  *See supra* note 1.

[5] *Dale v. IRS*, 238 F. Supp. 2d 99 (D.D.C. 2002), cited by DOJ, held a FOIA request for "any and all documents" relating to the requester Billy Ray Dale not to reasonably describe the documents sought because it did "not specify what [type of] records he seeks, for what years, and located at which office of the IRS" and four letters from the IRS requesting further information in order to conduct the search yielded no clarifying information from the requester.  *Id.* at 103- 04.  Here, DOJ has never argued that it needed further information from Plaintiffs to conduct the search. And unlike the FOIA request in *Dale*, Plaintiffs' FOIA request specified the type of records sought (requests, subpoenas, and applications for court orders or warrants), the years at issue (2008 to present), and the specific office at issue (U.S. Attorney for the Northern District of California).

is invalid because there is no method for the USAO-NDCA to identify and locate the specific records that plaintiffs seek (absent an unduly burdensome hand-search of all files the office has opened since 2008)."  DOJ Br. (ECF No. 43) at 14.

It is plainly not the case that DOJ has "no method" to search for responsive records. Plaintiffs have never requested that DOJ hand search all files the office has opened since 2008 and agree it would be unduly burdensome.  But that methodology is not the only option.

On the contrary, DOJ in another similar but far broader FOIA matter – where plaintiffs sought records pertaining to the use of location tracking by not one but *nine* U.S. Attorney's Offices *and* the DEA – adopted a search protocol that entailed sending an email to Assistant United States Attorneys and asking them to identify cases.  *See* Third Lye Decl., Exh. 7.  While DOJ is not bound by its decision to use that methodology in another case, it certainly could have, but simply chose not to, undermining any contention that a hand search of all files opened since 2008 is its only option.

In addition, the very search commenced (though not completed) by DOJ demonstrates that a search reasonably calculated to yield responsive records is entirely feasible and would not impose an undue burden within the meaning of FOIA.  Ms. Kenney's declaration explains that DOJ developed a list of search terms in consultation with Plaintiffs and queried its electronic case management system, known as LIONS.  The search returned 1,184 matters.  Review by the Criminal Section Chief eliminated 424 matters as unlikely to have responsive records.  The Chief of the OCDEFT/Narcotics reviewed the list of 760 remaining matters and determined that 386 matters are assigned to open, ongoing investigations.  The remaining 374 matters comprising the 760 have not yet been reviewed by other Section Chiefs to determine whether they pertain to open, ongoing investigations.  *See* Kenney Decl. at ¶¶ 15-17.

The Ninth Circuit has held that the qualified First Amendment and common law rights of access to court records do not extend to search warrant materials during the pendency of a preindictment investigation.  *See Times Mirror*, 873 F.2d at 1215 (though, as discussed above, the public does have a right to access search warrant materials *after* the close of an investigation,

*see Custer Battlefield*, 658 F.3d at 1192; *supra* at Part II-A).  Relatedly, FOIA exempts records which were "compiled for law enforcement purposes" and which, if disclosed, "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A). Based on this FOIA exemption, DOJ contends in the alternative that it "should not be required to retrieve files that it can determine involve open investigations."  DOJ Br. at 19 (capitalization altered).  For the purposes of this motion, Plaintiffs agree.[6]

That being so, what remains is for DOJ to review the 374 matters, exclude those that it can determine to pertain to open investigations, and then review the balance.  This would require *at most* a search of 374 files.  But because at least some of the 374 files are likely to pertain to open investigations, the universe to be reviewed is likely smaller.

As a threshold matter, DOJ cannot argue that a search of at most 374 files creates an undue burden.  In *Ruotolo v. Dep't of Justice*, 53 F.3d 4 (2d Cir. 1995), the Second Circuit rejected the argument that the search would be unreasonably burdensome where "there were only 803 files to be searched.  Certainly, the Tax Division should not be relieved from all duty to search under the circumstances."  *Id.* at 9.

In any event, to establish undue burden, an agency must do more than cite a large number of files that would have to be searched; it must also demonstrate that the search is likely to be fruitless.  In order words, burden must be evaluated in light of the likelihood that the search will yield responsive records.  In *Public Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1 (D.D.C. 2003), the court held that "[w]ithout more specification as to why a search certain to turn up responsive documents would be unduly burdensome, defendants' claim must be

---

[6] The contours of the public right of access to search warrant materials and FOIA's Exemption 7A support the argument that DOJ should be permitted to *withhold* materials pertaining to open investigations, not that it should be alleviated even of its threshold obligation *to search for* responsive records.  But in light of the good faith efforts DOJ has expended on conducting the search to date, and the further effort necessary to complete the search, Plaintiffs are willing to agree that under the circumstances, it is reasonable for DOJ to retrieve only those files that it has determined pertain to closed investigations.  Plaintiffs thus do not argue that DOJ's duty to conduct a reasonable search requires it to retrieve files from matters that it has determined pertain to an open investigation.

rejected." *Id.* at 6.   The court was not persuaded by the fact that a very large number of files would have to be searched, and with considerable logistical complication:  "defendants merely claim that searching these 25,000 paper files would be 'costly and take many hours to complete,' indicating that the DOE would need to send the files from Texas to California, or employees from California to Texas, to complete the search." *Id.*  Here, the search would entail a review of at most 374 files (a far cry from 25,000; no transport of people or files between Texas and California is required) and there is no dispute that it would yield responsive materials. *See* Kenney Decl. at ¶¶ 17-22.  Under the reasoning of *Public Citizen*, DOJ's claim of undue burden must be rejected.

DOJ's cases are entirely distinguishable. *American Fed. of Gov. Employees*, involved a union's request for records that would have required the agency "to search virtually every file contained in over 356 branch and division offices, up to and including the director's office." 907 F.2d at 206.  Moreover, the D.C. Circuit found the burden especially unreasonable because the union requested a "vast quantity of material," rather than documents that were actually "tied to [the FOIA requester's] expressed concern with promotion-related materials." *Id.* at 209. Similarly, *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), entailed a review of 3.5 million files accumulated over 100 years. *Id.* at 611-12.  In contrast, the search here involves 374 files in a single office, far short of every file in 356 offices or 3.5 million files.  Further, Plaintiffs – unlike the requesters in *Irons* – do not seek thousands of records unrelated to any discernible purpose.  This FOIA focuses on a category of documents – requests, subpoenas and applications for court orders or warrants seeking location tracking information since January 1, 2008 – that directly relates to the purpose of Plaintiffs' FOIA request – to learn about the government's location tracking practices.  By contrast, the request in *Irons* would have entailed a search of millions of papers files that, wholly apart from the burden, would have required the office to produce "many thousands" of documents to no apparent purpose. *Id.* at 608-11, 614-15.

**C.     The Existence Of Sealing Orders Does Not Justify DOJ's Refusal To Process Or Produce Location Tracking Materials Related To Closed Investigations**

Nor does the fact that sealing orders have been entered in connection with some of these matters preclude further processing of this request or production of materials related to closed investigations.  In *Morgan*, the D.C. Circuit held that "the mere existence of a court seal is, without more, insufficient to justify nondisclosure under FOIA."  923 F.2d at 199.  To justify withholding information under FOIA based on a sealing order, the agency must prove that the order "*prohibits* [it] from disclosing the records."  *Id.* at 197 (emphasis in original).  DOJ has not met its burden of proving that the sealing orders prohibit disclosure and thus justify withholding the information sought, let alone that they justify the agency's refusal even to process and identify on a *Vaughn* index responsive documents.

**1.     The Sealing Orders Do Not Prohibit DOJ From Disclosing Information And Documents**

DOJ correctly notes that the Supreme Court held in *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375 (1980), that an agency had not improperly withheld records under FOIA where it had previously been enjoined from disclosing them.  But after *GTE Sylvania*, the D.C. Circuit in *Morgan* confronted the question now before this Court – whether an agency improperly withholds records under FOIA, where the records have previously been ordered sealed.  *Morgan* involved an FBI agent's notes about a bank robbery investigation; the notes had been placed under seal by the court in the criminal bank robbery prosecution.  *Id.* at 195-96.  In a subsequent FOIA suit for the FBI notes, the district court held that the agency could withhold the notes.  But the D.C. Circuit reversed.

Applying the *GTE Sylvania* framework, it held that the question was "whether the seal, like an injunction, *prohibits* the agency from disclosing the records.  If it does, the FOIA does not compel the agency to release the information.  Because the district court in this case relied on the mere existence of the seal, without inquiring into its intended effect, it is not clear that *GTE Sylvania* governs, and a remand is necessary."  *Id.* at 197 (emphasis in original).  In evaluating the intended effect of the sealing order, it is necessary to determine if the order actually prohibits the agency from releasing the document.  In other words, was the sealing

order merely intended to limit public access and thereby keep the document confidential for the benefit of the filing party, or was it intended to sweep more broadly and act as an affirmative gag order on the agency? Thus, in *Morgan*, the court noted that the sealing order at issue may have been "designed only to prohibit Morgan from obtaining the notes from the court record of his criminal trial," but may not have been "intended to prohibit the DOJ from releasing the notes"; under those circumstances, the "FOIA complaint is a valid attempt to obtain the notes" and "DOJ shows no lack of respect for the judicial process or the [court that entered the sealing order]" by releasing the notes in the FOIA action.  923 F.2d at 198.  In short, a sealing order is not a protective or gag order:  The former simply prohibits public access to the court's files, while only the latter prohibits parties from disclosing information or documents.  *See id*. at 197 n.2.; *see generally United States v. Brown*, 218 F.3d 415 (5th Cir. 2000) (discussing gag order prohibiting attorneys, witness, and parties from communicating with media anything about case that could interfere with fair trial).

Agencies seeking to withhold sealed records in a FOIA action therefore "have the burden of demonstrating that the court issued the seal with the intent to prohibit the [agency] from disclosing the notes as long as the seal remains in effect.  The [agency] may do this by referring to, *inter alia*: … the sealing order itself" or "sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals."  *Morgan*, 923 F.2d at 198.

In this case, DOJ asserts that "the general practice at the USAO is … to apply to seal the application [for an order seeking location tracking information] (if any), affidavit (if any) and order."  Kenney Decl. at ¶ 7.  While the agency goes on to explain the importance of keeping information confidential during an on-going investigation, *see id.*, it has not provided any evidence that the intended scope or effect of the specific sealing orders at issue here was to impose a gag order on DOJ.  In *Senate of Com. of Puerto Rico v. Dep't of Justice*, 1993 WL 364696 (D.D.C. Aug. 24, 1993), the court rejected DOJ's argument that it was justified in withholding "sealed court records" because the agency failed to disclose "the case in which the documents were sealed, the date or contents of the court order placing the documents under seal,

the number of documents affected, or any other information by which this Court could determine whether the documents were properly withheld." *Id.* at *6 (citing *Morgan*).  As in *Puerto Rico*, DOJ has talismanically invoked the phrase "sealed court records," but not provided the additional information necessary to carry its burden of proving that any sealing orders prohibit disclosure.

On the contrary, the only sealing orders in the record do not prohibit DOJ from ever disclosing any information about location tracking orders.

DOJ has produced to Plaintiffs various responsive records that were unsealed.  *See* Second Kornmeier Decl. (ECF No. 43-2) at ¶ 5.  One such location tracking order contains the following sealing language:

> Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2705(b) and 3123(b), that this Order and the Application be SEALED until otherwise ordered by the Court, that the identity of any targets of the investigation and the possible violations thereof may be redacted from any copy of the Order served on any service provider or other person, and that the Target Devices' Telephone Service Providers and any other Telephone Service Provider which provides service to a telephone number that either places telephone calls to, or receives telephone calls from, the Target Devices, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this Order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, to the listed subscribers for the Target Devices, or to any other person unless otherwise ordered by this Court.

*Id.*, Exh. F at ACLU-PT1-ReRls-000098.  Although the practice in the United States' Attorney's Office is not uniform in all respects (*e.g.*, no uniform practice for opening USAO numbers or opening or closing matters),  *see* Kenney Decl. at ¶¶ 6, 8, it does appear to be somewhat uniform with respect to the practice of obtaining sealing orders (describing "general practice").  *See id.* at ¶ 7.  Another location tracking order produced to Plaintiffs contains identical sealing language.  *See* Second Kornmeier Decl., Exh. G at ACLU-PT1-ReRls-000120. It is thus reasonable to infer that the language in the sealing order quoted above is similar to the other sealing orders at issue.  *See Morgan*, 923 F.2d at 198 (intended effect of sealing order can be established by, *inter alia*, "sealing orders of the same court in similar cases").  But critically, this language does not prohibit DOJ from disclosing any information about location tracking

orders.  This is so for two separate and independent reasons.

### (a)   The Sealing Orders Only Seal Documents But Do Not Seal Docket Information

It is important to note the limited scope of what has been sealed.  The plain language of the order seals particular *documents*, but not entire *dockets*.  *See* Second Kornmeier Decl. at ACLU-PT1-ReRls-000098 (sealing "this Order and the Application").  Thus, contrary to DOJ's assertion, the Court has not sealed any *dockets*, and nothing in the order "precludes the disclosure of information relating to those dockets."  DOJ Br. at 17.  Thus, DOJ is not prohibited from releasing docket information of location tracking applications and orders (*i.e.*, information about cases in which such orders have been requested).  Indeed, DOJ has previously been ordered to provide case information so that the court could evaluate the agency's claim that "documents allegedly under seal were properly withheld by the Defendants." *Puerto Rico*, 1993 WL 364696 at *7 (directing DOJ to "inform the Court as to how many documents are under court seal, whey they were placed under seal *and in what case*, and any and all further information necessary for the Court to" evaluate DOJ's justification for withholding the documents) (emphasis added).

### (b)   The Sealing Orders Limit Public Access to Court Records But Impose No Gag Order On DOJ

Of equal importance, the plain language of the sealing order merely seals the location tracking order and application, but does not prohibit DOJ from disclosing these documents.  In other words, the sealing order limits public access to documents on the court's otherwise public docket; it does not impose a gag order on DOJ.

As discussed above, *Morgan* requires an inquiry into whether a sealing order "prohibits the agency from disclosing the records."  923 F.2d at 197.  An order that is "designed only to prohibit [a party or the public] from obtaining [the records] from the court" is not a prohibition on the agency's disclosure of those same records.  *Id.* at 198.  Similarly, in *Armstrong v. Exec. Ofc. of Pres.*, 830 F. Supp. 19 (D.D.C. 1993), FOIA requesters sought information that had been released to Caspar Weinberger in his criminal prosecution pursuant to a protective order.  The

court held that the protective order did not justify withholding the information in the FOIA action.  *Id.* at 22-23.  The protective order had been issued pursuant to the Classified Information Procedures Act, the purpose of which is "to harmonize a criminal defendant's right to exculpatory material with the Government's right to protect classified information."  *Id.* at 22. Thus, the protective order in that case protected the government's interest in keeping information confidential, but did not restrict the government's future ability to release the information.  *Id.* at 23.

The record evidence here supports the conclusion that the applicable sealing orders do not prohibit DOJ from disclosing location tracking orders.  Instead, they limit public access to what would otherwise be publicly accessible court records, in order to allow DOJ to protect the integrity of on-going investigations.

First, while the sample sealing in the record does contain an express prohibition on disclosure, that prohibition applies only to telephone service providers, and not DOJ.  The sealing order expressly prohibits "the Target Devices' Telephone Service Providers and [certain] other Telephone Service Provider[s]" from "disclos[ing] in any manner, directly or indirectly, by any action or inaction, the existence of this Order."  Second Kornmeier Decl. at ACLU-PT1-ReRls-000098.  However, it contains no prohibition against the government doing the same.  Had the Court intended to prohibit the government from doing something it expressly prohibited Telephone Service Providers from doing, the Court knew how to say so.

Second, other language gives the government discretion as to the parties with whom it may share the location tracking order and application.  The sample sealing order states that "the identity of any targets of the investigation and the possible violations thereof *may* be redacted from any copy of the Order served on any service provider *or other person*."  *Id.* (emphasis added).  In other words, DOJ has discretion, but is not required, to redact portions of the Order, and can share the order with the "service provider" or indeed with "any other person."  *Id.*  If the sealing order were intended to act as a gag on DOJ, it would not leave so much flexibility. Instead, it would prohibit DOJ from disclosing the order or at a minimum state that DOJ is only

authorized to serve the order on the telephone service provider and such other parties as are necessary to effectuate the order.

Finally, the sealing order must be construed in light of the purpose for which it was sought. *See Morgan*, 923 F.2d at 198 (factors relevant to question whether seal issued "with the intent to prohibit [agency] from disclosing" records include "the purpose for the imposition of the seals"). DOJ's stated purpose in seeking to "[s]eal[] applications and orders" is to "avoid[] jeopardizing the investigation by its premature disclosure." Kenney Decl. at ¶ 7. By sealing these documents, DOJ can limit third-party access to what would otherwise be public court records. If these records were publicly accessible through the court, either the target of a pending investigation or her associates could learn of these location tracking orders. *Id.* In other words, the sealing order is intended to benefit DOJ so that it can keep an on-going investigation confidential, not to silence DOJ so that it is forever prohibited from disclosing any information about investigations that have long since closed and that it no longer has a need to keep confidential. "A limitation on the method of access to certain records is not synonymous with a prohibition on their future releases." *Armstrong*, 830 F. Supp. at 23.

In sum, the sealing orders do not prohibit DOJ from disclosing either docket information or the underlying location tracking orders and applications. As a result, they cannot serve as a justification for withholding documents under FOIA. And they certainly cannot serve as a justification for DOJ's refusal to engage in any further processing of Plaintiffs' FOIA request.

### 2. The Pen Register Statute Does Not Justify Withholding The Materials

DOJ makes the related argument that the pen register statute, 18 U.S.C. § 3123(d), and FOIA's Exemption 3 justify the withholding. They do not, for reasons similar to DOJ's sealing order argument.

Exemption 3 in its current form was amended by Congress with the express goal of legislatively overruling caselaw that "had given an expansive reading to the version of Exemption 3 [previously] in force." *Church of Scientology of California v. U.S. Postal Service*,

633 F.2d 1327, 1329 (9th Cir. 1980) (citation omitted).  To withhold materials pursuant to this

exemption, the government must show two things:  "that the statute on which it relies qualifies

as an exempting statute and that the material being withheld falls within the exempting statute's

coverage."  *Cal-Almond, Inc. v. Dep't. of Agriculture*, 960 F.2d 105, 108 (9th Cir. 1992).

DOJ contends that the pen register statute serves as an exempting statute.  *See* DOJ Br.

at 17.  Even if it qualified as such, which it does not, the materials requested by Plaintiffs do not

fall within the statute's coverage.  The pen register statute on which DOJ relies provides:

> An order authorizing or approving the installation and use of a pen register or a
> trap and trace device shall direct that—
> (1) the *order* be sealed until otherwise ordered by the court; and
> (2) the person owning or leasing the line or other facility to which the pen
> register or a trap and trace device is attached or applied, or who is obligated
> by the order to provide assistance to the applicant, not disclose the existence
> of the pen register or trap and trace device or the existence of the
> investigation to the listed subscriber, or to any other person, unless or until
> otherwise ordered by the court.

18 U.S.C. § 3123(d) (emphasis added).  While the sealing orders discussed above seal both

orders and applications, the underlying pen register statute has a narrower scope and provides

for sealing only of the pen register *order*, not of the pen register *application*.

Notably, Plaintiffs seek "requests, subpoenas, and applications for court orders or

warrants seeking location information."  *See* FOIA Request at 3 (attached as Kenney Decl., Exh.

A).  Because the records sought by Plaintiffs (*applications* for pen register orders) fall outside

the scope of 18 U.S.C. § 3123(d) (which covers only *orders*), the statute provides no basis for

withholding the requested materials.  Moreover, to the extent DOJ has obtained location

tracking information through requests, subpoenas, applications for court orders pursuant to

some statute other than 18 U.S.C. § 3123(d), or applications for warrants,[7] all of these

responsive materials are also outside the scope of the pen register statute.  *See Carlson v. United

States Postal Serv.*, 504 F.3d 1123, 1130 (9th Cir. 2007) (rejecting agency's Exemption 3 claim

---

[7] Some of the responsive location tracking materials provided to Plaintiffs include warrants.  *See*
Second Kornmeier Decl., Exh. H at ACLU-PT1-ReRls-000134-137 (warrant and application for
warrant pursuant to Fed. R. Crim. P. 41).

where information about post offices was not "within the scope" of exempting statute); *Cal-Almond*, 960 F.2d at 108 (rejecting agency's Exemption 3 claim where list of almond growers did not fall within purported exempting statute's coverage).  In addition, Section 3123(d) nowhere requires the sealing of entire dockets, and thus in no way limits DOJ's ability to disclose docket information of matters involving location.

Moreover, the pen register statute does not constitute an exempting statute under Exemption 3.  Congress "did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public."  *Church of Scientology*, 633 F.2d at 1329 (citation omitted).  "[A] court must analyze," among other things, "the amount of discretion left to the agency" to disclose the records.  *Id.* at 1330.  Only those statutes that limit the agency's discretion to disclose documents qualify as exempting statutes. *Id.* at 1329-30.  In this regard, the inquiry is analogous to that with respect to sealing orders: Does the statute limit DOJ's discretion to disclose the materials sought here?  Like the sealing orders, the pen register statute does not impose a gag order on DOJ.  Instead, it gives DOJ the flexibility it needs to keep an investigation confidential by expressly imposing a gag order on the telephone service provider (but not DOJ) and preventing the public from obtaining the order through the court's public docket.

DOJ cites *Manna v. Dep't of Justice*, 815 F. Supp. 798 (D.N.J. 1993), which held that two sealed pen register applications and two pen register orders fell under Exemption 3 and Section 3123(d).  *Id.* at 812.  Assuming the portion of the decision relating to pen register orders is correct, it is nonetheless distinguishable because Plaintiffs seek pen register applications. *Manna* offered no reasoning in support of the portion of its holding relating to applications, and Plaintiffs respectfully submit that this portion of the opinion was erroneously decided.  As discussed above, the plain language of Section 3123(d) encompasses only orders and does not extend to applications.  *Riley v. FBI*, 2002 U.S. Dist. LEXIS 2632 (D.D.C. Feb. 11, 2002), is unpersuasive because it merely cites *Manna*, but offers no reasoning.  And *Jennings v. FBI*, No. 03-cv-01651-JDB (D.D.C. May 6, 2004) (attached as ECF No. 43-3), rests on the erroneous

premise that Section 3123(d) broadly "prohibits disclosure of the existence of the pen register or trap and trace device." *See* Slip Op. at 11.  On the contrary, the statute only prohibits "the person owning or leasing the line or facility" or "who is obligated … to provide assistance to the applicant" from disclosing "the existence of the pen register or trap and trace device."  18 U.S.C. § 3123(d).  Under the principle of *expressio unius*, neither DOJ nor any other entity is prohibited from making such a disclosure.

### 3.   DOJ Must Identify And Produce Responsive Records Or Information

For the foregoing reasons, DOJ cannot rely on the existence of sealing orders to justify its refusal to complete the search or to produce responsive documents.  As noted above, Plaintiffs agree that the relevant universe of documents is location tracking materials where the investigation is closed.

If the court concludes that neither the sealing orders nor Section 3123(d) prohibit DOJ from producing the underlying documents, then it should order DOJ to complete the search and produce the materials.

If the court, however, concludes that DOJ may withhold the *documents*, it should still conclude that neither the sealing orders nor Section 3123(d) prohibits DOJ from revealing the *docket numbers* associated with location tracking applications in closed investigations.  In other words, even if DOJ may permissibly withhold the documents, it still has a duty under FOIA to identify them with docket numbers on a *Vaughn* index.  Plaintiffs can then separately move to unseal the identified matters.

### D.   DOJ's Redactions Of Unsealed Court Records

DOJ has provided to Plaintiffs location tracking applications and orders that it determined not to be under seal.  *See* Second Kornmeier Decl. at ¶ 5.  DOJ has redacted information from these unsealed court records pursuant to FOIA Exemption 7(C), which exempts law enforcement records that, if disclosed, could reasonably be expected to constitute an unwarranted invasion of privacy.  While Plaintiffs do not contest for the purpose of this

motion the 7(C) redactions from the materials it has produced to date, Plaintiffs do not agree that docket information, dates of filings, and the identity of judges who have entered orders can be withheld pursuant to Exemption 7(C) from the remaining materials that DOJ has not yet reviewed and produced.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny DOJ's motion for partial summary judgment and grant Plaintiffs' cross-motion.  The Court should order DOJ to: (1) complete the search as described in Part III-B, and (2) produce location tracking materials in cases where the investigation is closed, or in the alternative produce a *Vaughn* index identifying docket numbers associated with such matters.

Dated:  October 25, 2013                              Respectfully submitted,


By:  _____/s/ *Linda Lye*_____
                    Linda Lye

Michael T. Risher
Linda Lye
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Tel:    (415) 621-2493
Fax:    (415) 255-8437

Attorneys for Plaintiffs