1
2
3
4            UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6
7    AMERICAN CIVIL LIBERTIES UNION
     OF NORTHERN CALIFORNIA, et al.,        Case No.  12-cv-04008-MEJ
8                    Plaintiffs,
                                            **ORDER ON CROSS MOTIONS FOR**
9            v.                             **PARTIAL SUMMARY JUDGMENT**

10   DEPARTMENT OF JUSTICE,                 Re: Dkt. Nos. 23, 25

11                   Defendant.

12

13                         **INTRODUCTION**

14        On July 31, 2012, Plaintiffs American Civil Liberties Union and San Francisco Bay

15   Guardian filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

16   seeking to compel the release of documents of the United State Attorney's Office for the Northern

17   District of California regarding use of location tracking technology in Northern California.

18   Compl., Dkt. No. 1 at ¶ 1.  Pending before the Court are Plaintiffs' and Defendant United States

19   Department of Justice's (the "DOJ" or the "Government") cross-motions for partial summary

20   judgment.  Dkt. Nos. 23 (Gov. Mot.), 25 (Pl. Mot.).  On September 5, 2013, the Court held a

21   hearing on the motions.  Having considered the parties' positions, relevant legal authority, and the

22   record in this case, the Court GRANTS IN PART and DENIES IN PART the DOJ's Motion for

23   Partial Summary Judgment, and GRANTS IN PART and DENIES IN PART Plaintiffs' Cross-

24   Motion for Partial Summary Judgment for the reasons set forth below.

25                         **BACKGROUND**

26        On April 13, 2012, Plaintiffs submitted to the DOJ a FOIA request seeking information

27   about the federal government's use of location tracking technology to monitor and surveil

28   suspects.  Compl. ¶ 3 & Ex. 1; Decl. of John W. Kornmeier ("Kornmeier Decl.") ¶ 4 & Ex. A,

*United States District Court*
*Northern District of California*

Dkt. No. 23-1.  Specifically, Plaintiffs' FOIA request sought the following materials:

> 1) All requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008.
>
> 2) Any template applications or orders that have been utilized by United States Attorneys in the Northern District to seek or acquire location information since January 1, 2008.
>
> 3) Any documents since January 1, 2008, related to the use or policies of utilizing any location tracking technology, including but not limited to cellsite simulators or digital analyzers such as devices known as Stingray, Triggerfish, AmberJack, KingFish or Loggerhead.
>
> 4) Any records related to the Supreme Court's holding in *United States v. Jones*, excluding pleadings or court opinions filed in the matter in the Supreme Court or courts below.

Kornmeier Decl., Ex. A.

Plaintiffs requested expedited processing pursuant to 5 U.S.C. § 522(a)(6)(E), on the grounds that there is an "urgency to inform the public about actual or alleged federal government activity," and also that this is "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." Compl. ¶ 3 (quoting 28 C.F.R. §16.5(d)(l)(ii) & (iv)). On April 23, 2012, the DOJ granted Plaintiffs' request for expedited processing.  Compl. ¶ 24 & Ex. 3.  However, after the DOJ failed to produce responsive documents and did not respond to Plaintiffs' inquiry regarding the status of the FOIA request, Plaintiffs initiated this lawsuit. Compl. ¶¶ 25-28.  In their Complaint, Plaintiffs assert a claim for wrongful withholding of agency records under FOIA, and seek injunctive relief ordering the DOJ to immediately process the requested records and make them available to Plaintiffs.  *Id*. ¶¶ 32-24.

Subsequently, after this lawsuit was filed, counsel for the Government and Plaintiffs conferred numerous times regarding the scope and processing of Plaintiffs' FOIA request.  As a result of those discussions, on January 3, 2013, the parties negotiated a Stipulation regarding the processing of Parts 2-4 of Plaintiffs' FOIA request.  *See* Dkt. No. 17, Ex. 1 (Appendix); Kornmeier Decl. ¶ 4.  That Stipulation clarified the scope of Parts 2-4 of Plaintiffs' FOIA request and defined the steps that DOJ would take to search for records responsive to those parts of the

United States District Court
Northern District of California

FOIA request.  Dkt. No. 17.  There is no dispute that DOJ complied with the requirements of the Stipulation regarding the adequacy of its search for responsive records.  *Id.*

In processing the FOIA request, the Executive Office for United States Attorneys ("EOUSA") identified some potentially responsive records that it referred to the DOJ's FOIA/Privacy Act ("FOIA/PA") Unit of the Office of Enforcement Operations in the Criminal Division, as those records were authored and maintained by that Division.  Kornmeier Decl. ¶ 4; Declaration of John E. Cunningham III ("First Cunningham Decl.") ¶ 8, Dkt. No. 23-2.  EOUSA processed the remaining records.  Kornmeier Decl. ¶ 5.  With respect to the records referred, on February 27, 2013, the EOUSA, in a two-part referral, referred a total of 535 pages of records to the Criminal Division.  First Cunningham Decl. ¶ 8.  Part one of EOUSA's referral to the Criminal Division consisted of three documents: the Memo of February 27, 2012 ("CRM One"), the Memo of July 5, 2012 ("CRM Two"), and an Electronic Communication ("EC"), including the Memo of September 12, 2008, as an attachment thereto ("CRM Three").  *Id.* & Ex. 2.  Part two of EOUSA's referral to the Criminal Division consisted of records maintained at USABook, a DOJ intranet site ("CRM Four" and "CRM Five").  *Id.*  EOUSA requested that the Criminal Division review the documents referred and directly respond to the Northern California ACLU ("ACLU-NC").  *Id.* ¶ 8. EOUSA further advised the Criminal Division that a response to ACLU-NC was required by March 23, 2013.  *Id.*

The FOIA/PA Unit received EOUSA's referral and began processing the three memoranda and the sections of USABook that had been referred to it.  *Id.*  FOIA/PA Unit personnel conducted a line by line review of the CRM One, CRM Two, CRM Three, and the sections of USABook (CRM Four and CRM Five), to determine whether any FOIA exemptions were applicable to the information contained therein and, if so, whether any nonexempt information could be segregated and released to the requester.  *Id.* ¶ 9.

Based on the FOIA/PA Unit's review, it determined that CRM One could be released in part, with 2 pages released in full, 2 pages released with certain redactions pursuant to FOIA

1  Exemptions 5 and 7(E)[1], and 53 pages withheld in full pursuant to FOIA Exemptions 5 and 7(E).

2  *Id.* ¶ 10.

3       The FOIA/PA Unit determined that CRM Two could be released in part, with 1 page

4  released with certain redactions pursuant to FOIA Exemptions 5 and 7(E), and 53 pages withheld

5  in full pursuant to Exemptions 5 and 7(E).  *Id.*

6       The FOIA/PA Unit concluded that one-hundred and sixteen pages of records comprising

7  CRM Three, CRM Four, and CRM Five needed to be withheld in full pursuant to FOIA

8  Exemptions 5, (b) 6, 7(C) and 7(E).  *Id.*  Finally, it determined that 304 pages of records are non-

9  responsive, because they relate to such matters as electronic surveillance, pen register, and trap

10  and trace applications generally.  *Id.*

11      On March 22, 2013, EOUSA and the Criminal Division separately released what they

12  characterized as responsive, non-exempt records to Plaintiffs.  Kornmeier Decl. ¶ 5 & Ex. B; First

13  Cunningham Decl. ¶ 11 & Ex. 3.  Specifically, EOUSA indicated that 41 pages were being

14  released in full, and 18 pages were being withheld in full pursuant to FOIA Exemption 5.

15  Kornmeier Decl. Ex. B.

16      By letter dated March 22, 2013, the Criminal Division notified Plaintiffs of the Criminal

17  Division's disclosure determinations.  First Cunningham Decl. ¶ 11 & Ex. 3.  Specifically, it

18  notified Plaintiffs that 2 pages were released in full, 3 pages were released in part, and 530 pages

19  were withheld in full pursuant to FOIA exemptions 5, 6, 7(C), and 7(E).  *Id.* ¶ 11 & Ex. 3.

20  Concomitantly, it provided Plaintiffs with copies of the redacted CRM One and the redacted CRM

21  Two.  *Id.*

22      The parties have now filed motions for partial summary judgment with respect to the

23  documents produced and withheld in response to Parts 2, 3, and 4 of Plaintiffs' FOIA request. Dkt.

24

25  [1] FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters" protected by the

26  deliberative process and attorney work product/attorney-client privileges.  5 U.S.C. § 552(b)(5).  FOIA
    Exemption 7(E) exempts law enforcement techniques and procedures, disclosure of which "risk

27  circumvention of the law."  5 U.S.C. §552(b)(7)(E).

28

United States District Court
Northern District of California

Nos. 23, 25.  In their Motion, Plaintiffs assert that the DOJ has unlawfully withheld documents and challenge its assertion of privileges as to the documents withheld.  The Government, however, maintains that in processing Plaintiffs' FOIA request, the DOJ properly withheld, in whole or in part, records except from disclosure under FOIA.

### LEGAL STANDARD

**A.      The FOIA Statutory Scheme**

Congress enacted FOIA to "clos[e] the loopholes which allow agencies to deny legitimate information to the public."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989) (citations and quotations omitted).  The FOIA's "core purpose" is to inform citizens about "what their government is up to."  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. at 775 (citation omitted)).  "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."  *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

**B.      Summary Judgment Standard in FOIA Cases**

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."  *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (quoting *Mace v. EEOC*, 37 F. Supp. 2d 1144, 1146 (E.D. Mo. 1999)) (internal quotations omitted).  The underlying facts and possible inferences are construed in favor of the FOIA requester.  *Id.* at 1095 (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  Because the facts are rarely in dispute in a FOIA case, the Court need not ask whether there is a genuine issue of material fact.  *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  The standard for summary judgment in a FOIA case generally requires a two-stage inquiry.  *See Animal Legal Def. Fund. v. U.S. Food & Drug Admin.*, 2013 WL 4511936, at *3 (N.D. Cal. Aug. 23, 2013).

To carry their burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA

exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'" *Yonemoto*, 686 F.3d at 688 (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004)) (modification in original).  These submissions—commonly referred to as a *Vaughn* index —must be from "affiants [who] are knowledgeable about the information sought" and "detailed enough to allow court to make an independent assessment of the government's claim [of exemption]." *Id.* (citing *Lion Raisins*, 354 F.3d at 1079; 5 U.S.C. § 552(a)(4)(B)).

Under the first step of the inquiry, the Court must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA.  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citing *Weisberg*, 705 F.2d at 1350-51).  In the second stage of the inquiry, the Court examines whether the agency has proven that the information that it withheld falls within one of the nine FOIA exemptions.  5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."); *Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).

The government may submit affidavits to satisfy its burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'"  *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980)).  The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'"  *Id.* (quoting *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987)).

Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption."  *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119–20 (9th Cir.1992)).

Here, the parties do not dispute that the DOJ has fully discharged its search obligations under FOIA, and the Government has submitted testimony from John Kornmeier from the Executive Office for United States Attorneys ("EOUSA"), and John Cunningham, a trial attorney in the FOIA/Privacy Act Unit of the Office of Enforcement Operations in the Criminal Division of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the DOJ, attesting that the agencies conducted searches that were reasonably calculated to uncover

2   all relevant documents.  The issue in this case is whether the EOUSA properly withheld templates

3   and certain pages of a power point presentation as attorney work product under Exemption (b)(5),

4   and whether the Criminal Division properly withheld memoranda and records maintained on a

5   DOJ intranet site pursuant to Exemption 5, (attorney work product) and 7(E) (release would risk

6   circumvention of the law).  The Government argues that it has properly withheld the documents

7   under these Exemptions, and that there are no non-segregable portions to release.  Gov. Mot. at 4-

8   13.

9           Plaintiffs' position is that the documents withheld by the DOJ are not exempt from

10  disclosure.  Pl. Mot. at 1.  Plaintiffs first argue that the deliberative process privilege does not

11  apply because the documents set forth the Government's policy on location tracking.  Pl. Mot. at

12  4-11.  Further, Exemption 5 does not apply because none of the documents are attorney work

13  product, but rather set forth general legal standards and are conceptually indistinguishable from

14  legal manuals and guidelines not entitled to work product protection.  *Id*. at 11-15.  Plaintiffs also

15  contend that the materials withheld by the Criminal Division are not protected under Exemption

16  7(E), which permits the withholding of investigative techniques which would risk circumvention if

17  disclosed, is inapplicable because the documents pertain to well-known technologies used to track

18  individuals through cell phones and vehicles.  *Id*. at 15-20.

19                                  **DISCUSSION**

20  **A.      Overview of FOIA and Exemptions**

21          FOIA's "core purpose" is to inform citizens about "what their government is up to."  *Dep't*

22  *of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989) (citation

23  omitted).  This purpose is accomplished by "permit[ting] access to official information long

24  shielded unnecessarily from public view and attempt[ing] to create a judicially enforceable public

25  right to secure such information from possibly unwilling official hands."  *EPA v. Mink*, 410 U.S.

26  73, 80 (1973).  Such access will "ensure an informed citizenry, vital to the functioning of a

27  democratic society, needed to check against corruption and to hold the governors accountable to

28  the governed."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).

United States District Court
Northern District of California

1    At the same time, FOIA contemplates that some information can legitimately be kept from

2    the public through the invocation of nine exemptions to disclosure.  *See* 5 U.S.C. § 552(b)(1)-(9).

3    Use of the exemptions is within the agency's discretion, *see Chrysler Corp. v. Brown*, 441 U.S.

4    281, 293 (1979); "'exclusive,'" *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1262 (2011) (quoting

5    *Mink*, 410 U.S. at 79) i.e., information not falling within the scope of an exemption must be

6    disclosed; and "'narrowly construed.'"  *Id*. (quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982)).

7    "These limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the

8    dominant objective of the Act."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532

9    U.S. 1, 7-8 (2001) (citation omitted).  When an agency chooses to invoke an exemption to shield

10   information from disclosure, it bears the burden of proving the applicability of the exemption.  *See*

11   *Reporters Comm.*, 489 U.S. at 755.  An agency may withhold only that information to which the

12   exemption applies, and must provide all "reasonably segregable" portions of that record to the

13   requester.  5 U.S.C. § 552(b)(9); *see Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242,

14   260 (D.C. Cir. 1977).

15   **B.    Deliberative Process Privilege**

16   Federal courts have recognized an exception to Exemption 5 of FOIA for documents which

17   constitute an agency's "secret law" or "working law."  *See New York Times Co. v. Dep't of*

18   *Justice*, 872 F. Supp. 2d 309, 317 (S.D.N.Y. 2012).  Under this principle, "[i]f an agency's

19   memorandum or other document has become its 'effective law and policy,' it will be subject to

20   disclosure as the 'working law' of the agency . . . ."  *Brennan Ctr. for Justice at N.Y. Univ. Sch. of*

21   *Law v. U.S. Dep't of Justice*, 697 F.3d 184, 199 (2d Cir. 2012) (quoting *NLRB v. Sears, Roebuck*

22   *& Co.,* 421 U.S. 132, 153 (1975)).  Documents may be properly characterized as working law

23   when they resemble "final opinions, statements of policy and interpretations which have been

24   adopted by the agency, and instructions to staff that affect a member of the public."  *Id*. at 201

25   (internal quotation marks omitted).

26   Plaintiffs argue that each of the documents the DOJ seeks to withhold constitutes the

27   agency's working law on location tracking technology.  Pl. Mot. at 9.  Particularly, Plaintiffs

28   maintain that all of the documents are instructions or guidelines issued by the U.S. Attorney and

8

directed at his subordinates which express the settled and established policy of the U.S. Attorney's Office with respect to the legal prerequisites for obtaining location tracking orders.  Pl. Mot. at 9.[2] The Government, however, contends that Plaintiffs attempt to characterize the documents as working law is misplaced because the documents are not final decisions or policy statements: they discuss or otherwise reflect strategies, defenses, risks, and arguments that may arise in litigation. Gov. Reply at 2, Dkt. No. 33.  The Government points out that "any final decisions or law with respect to the issues addressed in the documents will be generated in the course of the adjudicative process, not by an agency decision."  *Id.*

In *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978), the D.C. Circuit rejected the DOJ's effort to withhold documents "relating to the exercise of prosecutorial discretion by the United States Attorney for the District of Columbia and his assistants" on Exemption 5 deliberative process and attorney work product grounds.[3]  *Id.* at 755, 772.  The court found the documents were "instructions or guidelines issued by the U.S. Attorney and directed at his subordinates" and thus "constitute[d] [the agency's] 'effective policy.'"  *Id.* at 774.  These documents consisted of charging manuals which set forth "rules, and guidelines used by the Office of the United States Attorney for the District of Columbia in deciding whether to exercise prosecutorial discretion.  *Id.* at 757.

---

[2] Plaintiffs cite to *Jordan*, in which charging manuals that set forth "rules, and guidelines used by the Office of the United States Attorney for the District of Columbia in deciding (1) 'which persons should be prosecuted for suspected violations of criminal laws in the District of Columbia, and/or the manner in which prosecutorial discretion will be exercised', and (2) "which persons suspected of violations of criminal laws will be eligible for rehabilitation programs which divert such individuals from criminal prosecution'" were considered to be policy documents that were not exempt from disclosure. 591 F.2d at 757.  In other words, these manuals set forth the agency's policy on who would be prosecuted and who would be eligible for diversion.  In contrast, the DOJ manuals here provide legal strategy or guidelines for obtaining location tracking orders from a court.  They do not set forth the DOJ's policy on who prosecutors should target for location tracking.

[3] *Jordan* also held that the disputed documents were not exempt under Exemption 2, for "personnel rules and practices."  *Id.* at 763 (quoting 5 U.S.C. § 552(b)(2)).  The D.C. Circuit subsequently rejected *Jordan's* analysis of Exemption 2.  *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (finding exempt Bureau of Alcohol, Tobacco and Firearms training manual prescribing investigative techniques).  But *Crooker* left undisturbed *Jordan's* Exemption 5 analysis.  Moreover, *Crooker* was subsequently abrogated by the Supreme Court's decision in *Milner*, 131 S.Ct. 1259.

United States District Court
Northern District of California

1    In contrast, the materials here provide legal strategy or guidelines for obtaining location

2    tracking orders from a court, or discuss strategies, defenses, risks, and arguments that may arise in

3    litigation.  *See* Kornmeier Decl. Ex. C; First Cunningham Decl. ¶¶ 15, 16; Second. Declaration of

4    John E. Cunningham III ("Second Cunningham Decl.") ¶ 19, Dkt. No. 33-1.  They do not set forth

5    the DOJ's policy on which members of the public prosecutors should target to obtain location

6    tracking information.  *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 137-38 (1975) (one of

7    the purposes of FOIA is the avoidance of undisclosed written rules of decision for administrative

8    action); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 869 (D.C. Cir. 1980)

9    (memoranda used "routinely" by DOE agency staff "as guidance in conducting their audits," and

10   "retained and referred to as precedent" in its dealings with the public constituted official agency

11   policy).  "[T]he secret law doctrine in FOIA cases generally arises in which agencies are *rendering*

12   *decisions* based on non-public analyses." (emphasis in original).  *Families for Freedom v. U.S.*

13   *Customs & Border Prot.*, 797 F. Supp. 2d 375, 396 (S.D.N.Y. 2011)

14   The Court agrees with the Government that both of the documents here do not represent

15   final agency opinions or statements of policy and interpretations that have been adopted by the

16   DOJ which have the "force and effect of law."  *Jordan*, 591 F.2d at 787.  They involve legal issues

17   that will ultimately be decided by the Court, not the DOJ.  For instance, the 16-page template

18   document (EOUSA No. 1), provides the format for AUSAs in the Northern District to use when

19   filing applications for use of a pen register and trap and trace devices.  The two slides withheld

20   from the PowerPoint presentation (EOUSA No. 2) analyze legal issues that may arise in

21   connection with the use of location tracking devices.  Unlike the precedential effect of the DOE

22   memoranda in *Coastal States*, 617 F.2d at 869, which interpreted the agency's own regulations

23   and how to apply them while conducting audits, the DOJ's interpretation of recent case law affects

24   only the strategies government lawyers will use to obtain permission from the court to use location

25   tracking techniques by law enforcement officers in criminal prosecutions.  *See Families for*

26   *Freedom*, 797 F. Supp. 2d at 396[4] ("[T]he secret law doctrine in FOIA cases generally arises in

27

28   [4] Plaintiffs' attempt to distinguish this case with *Nat'l Council of La Raza v. Dep't of Justice*, 411
     F.3d 350 (2nd Cir. 2005) is unavailing.  There, a memo on the authority of state and local police to

10

which agencies are *rendering decisions* based on non-public analyses." (emphasis in original)).

As to the Criminal Division documents, CRM One through Five discuss potential legal strategies, defenses, and arguments that might be considered by federal prosecutors.  First Cunningham Decl. ¶¶ 15-16.  They are not directives, not interpretations of any of the DOJ's regulations, and are not part of a body of law promulgated by the DOJ.  Rather, they present arguments and litigating positions that federal prosecutors may pursue on a case-by-case basis. CRM One through CRM Five provide federal prosecutors with guidelines, recommendations and suggested best practices, not directives, to consider in litigating their cases.  Second Cunningham Decl. ¶ 19.  CRM One through CRM Five also do not require DOJ attorneys to make any particular arguments or follow any particular course of conduct.  *Id*. ¶ 20.  CRM One through CRM Five do not contain reasoning or conclusions that have been adopted as official DOJ policy or opinions and do not provide any official interpretation of DOJ's Fourth Amendment obligations.  *Id*. ¶ 21.

For these reasons, the Court rejects Plaintiffs' argument that the documents at issue constitute the DOJ's working law.  The Court therefore turns to the specific FOIA exemptions asserted.

## C.    Exemption 5

Exemption 5 protects documents which "would not be available by law to a party ... in litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision essentially grants an agency the same power to withhold documents as it would have in the civil discovery context.  *NLRB*, 421 U.S. at 149.  To be withheld under attorney work-product, a document must have been prepared by an attorney or his or her agent in anticipation of litigation.  *Delaney, Migdail & Young,*

---

enforce immigration laws was being "used by the DOJ in its dealings with the public, as the sole legal authority for the agency's claim that its new policy had a basis in the law."  *Id*. at 358.  The DOJ repeatedly invoked the memo to "assure those outside of the agency that its policy was lawful and to encourage states and localities to take actions that the Department desired."  *Id*.  The court found that the DOJ relied on the memo not only to justify what the DOJ, would do as a result of its deliberations, but also to justify what a third party-"state and local law enforcement"- should and could lawfully do.  *Id*.  It was this latter use of the memo by agency personnel that served as "powerful evidence that the Department explicitly adopted the OLC Memorandum as part of its policy."  *Id*.at 360.

United States District Court
Northern District of California

*Chartered v. I.R.S.*, 826 F.2d 124, 126 (D.C. Cir. 1987).  Attorney work-product protects

documents prepared in anticipation of litigation, specifically memoranda, letters, and e-mails.

Fed. R. Civ. P. 26(b)(3).  The purpose of this protection is to "protect the attorney's thought

processes and legal recommendations from the prying eyes of his or her opponent."  *In re*

*EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006); *see also Hickman v. Taylor*,

329 U.S. 495, 508 (1947).  The phrase "in anticipation of litigation" extends beyond an attorney's

preparation for a case in existing litigation, and includes "documents prepared in anticipation of

foreseeable litigation, even if no specific claim is contemplated."  *Feshback v. Sec. and Exch.*

*Comm'n*, 5 F. Supp. 2d 774, 782 (N.D. Cal. 1997) (citing *Shiller v. NLRB*, 964 F.2d 1205, 1208

(D.C. Cir. 1992)), *abrogated on other grounds by Milner*, 131 S.Ct. at 1259.

**D.      Documents Withheld by the EOUSA**

The Government asserts that the two sets of documents being withheld by EOUSA

constitute protected work product that are exempt from disclosure pursuant to FOIA Exemption 5.

Gov. Mot. at 6.  Plaintiffs argue that the documents the DOJ seeks to withhold are not exempt

work-product, but are neutral, objective analyses of the law and they do not analyze any particular

matter.  Pl. Mot. at 11.

1.      EOUSA *Vaughn* Index Document No. 1

The Government's *Vaughn* Index of EOUSA Records identifies document number 1 as

being 16 pages in length and describes it as follows:

> These 16 pages were created by the U.S. Attorney's Office for the
> Northern District of California.  The 16 pages are templates for an
> application and order for the use of a pen register and trap and trace
> device.  The templates incorporate the interpretation of the law by
> the U.S. Attorney's Office and give advice on what information to
> include in particular situations.  These templates represent the
> opinions of attorneys for the U.S. Attorney's Office on the
> applicable law and are prepared to provide legal advice and in
> anticipation of litigation.

Kornmeier Decl., Ex. C, EOUSA *Vaughn* Index ("Index"), p. 1.  The Index indicates that the

templates are withheld in full pursuant to FOIA Exemption (b)(5) as Attorney Work Product and

provides the following justification:

United States District Court
Northern District of California

> Exemption b(5) protects the U.S. Attorney's Office legal opinions and recommendations for action under the attorney work product privilege.  This document was prepared in anticipation of litigation involving the use of location tracking devices.
>
> This information is attorney work product, which contains no non-exempt material.  Therefore, there is nothing to segregate.

*Id*.

The Government argues that the template is work product because it was prepared in anticipation of litigation.  Gov. Mot. at 6.  Plaintiffs argue that the template does not qualify as attorney work product because it is not case-specific and merely sets forth general agency policies and instructions regarding how attorneys should apply for location tracking orders.  Pl. Mot. at 12-13.  (citing *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 143-44 (D.D.C. 2013).  As in *Jordan*, Plaintiffs argue, these documents set forth "general standards to guide the Government lawyers" in applying for orders seeking location tracking information and do not contain "factual information, mental impressions," or "legal theories" relating to any "particular" matter.  Pl. Mot. 11-12 (citing *Jordan*, 591 F.2d at 775-76).

In *Jordan*, the D.C. Circuit rejected the DOJ's effort to withhold documents "relating to the exercise of prosecutorial discretion by the United States Attorney for the District of Columbia and his assistants" on Exemption 5 deliberative process and attorney work product grounds.  591 F.2d at 755, 772.  The court found the documents were "instructions or guidelines issued by the U.S. Attorney and directed at his subordinates" and thus "constitute[d] [the agency's] 'effective policy.'"  *Id*. at 774.  The *Jordan* court also found that the documents were not protected work product because they were "promulgated as general standards to guide the Government lawyers" in the exercise of prosecutorial discretion; they did not contain the type of "factual information, mental impressions" and "legal strategies relevant" to a "particular trial" or even "prepared in anticipation of trials in general."  *Id*. at 775-76.

In *Judicial Watch*, the court found that a memorandum that was authored to "convey agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement" was not protected work product because its purpose was to provide "general standards" to "instruct ICE staff attorneys in determining whether to exercise

13

prosecutorial discretion in specific categories of cases."  926 F. Supp. 2d at 143.  As in *Jordan*, the court found the documents were promulgated as "general standards" to instruct ICE staff attorneys in determining whether to exercise prosecutorial discretion in specific categories of cases.  *Id*. at 142.  The evident purpose of the memorandum was to convey agency policies and instructions regarding the exercise of prosecutorial discretion in civil immigration enforcement.  *Id*. at 143.  Thus, the court found that it "simply [did] not anticipate litigation in the way the work-product doctrine demands, as there [was] no indication that the document include[d] the mental impressions, conclusions, opinions, or legal theories of … any … agency attorney, relevant to any specific, ongoing or prospective case or cases."  *Id*. (citing *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221-23 (D.D.C. 2012) (finding that PowerPoint slides that the Office of the Chief Counsel used to teach United States Citizenship and Immigration Services employees about interacting with private attorneys during proceedings before adjudicators did not merit work-product protection because the "lawyers prepared the slides to convey routine agency policies.").

In both *Jordan* and *Judicial Watch*, the purpose of the memorandum was "to convey agency policies and instructions," not to provide legal theories or strategies for use in agency litigation.  *Judicial Watch*, 926 F. Supp. 2d at 143.  Here, by contrast, the template does not provide legal theories or strategies for use in criminal litigation.  Rather, they instruct government attorneys on how to apply for an order for location tracking information.

Moreover, "[t]he work-product rule does not extend to every written document generated by an attorney."  *Coastal States*, 617 F.2d at 864 (internal quotation marks, citation omitted).  "The documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation."  *Id*. at 865; *see also QST Energy, Inc. v. Mervyn's*, 2001 WL 777489, at *5 (N.D. Cal. May 14, 2001) ("The protection applies 'if the prospect of litigation is identifiable because of specific claims that have already arisen'") (citation omitted); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 525 (N.D. Cal. 1988) ("in order for documents to qualify as attorney work-product, there must be an identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared").

"While it may be true that the prospect of future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (citation omitted) (affidavits too conclusory to justify withholding as work product documents prepared in the course of investigation into homicide of political activists). As the D.C. Circuit held in *Jordan*, guidelines and manuals for U.S. Attorneys are not work product because they set forth "general standards to guide the Government lawyers." 591 F.2d at 775. They are not "prepared in anticipation of a particular trial." *Id.* Even though documents might be prepared "literally 'in anticipation of litigation,'" "they do not anticipate litigation in the manner that the privilege requires" if they do not "ensu[e] from any 'particular transaction.'" *Am. Immig. Council*, 905 F. Supp. 2d at 222.

The DOJ argues that the template falls within the privilege "even if no specific claim is contemplated." Gov. Reply at 4. This assertion is correct in some contexts, but not the context of this case. Where government lawyers act "as legal advisors protecting their agency clients from the possibility of future litigation," the work product privilege can apply to documents advising the agency as to potential legal challenges. *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998) (citing *Schiller*, 964 F.2d at 1208, and *Delaney, Migdail & Young,* 826 F.2d at 127). But when government lawyers are acting as "prosecutors or investigators of suspected wrongdoers," the specific-claim test applies. *Id.* (citing *Coastal States*, 617 F.2d at 864-66, and *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1202-03 (D.C. Cir. 1991)). Thus, *Schiller* and *Delaney* are "not in conflict" with cases requiring "a specific claim" to justify the privilege; they simply apply in "very different situations." *Id.*

Here, with respect to the template, the U.S. Attorneys are clearly acting as prosecutors, and not as attorneys advising an agency client on the agency's potential liability. As a result, the work product privilege only attaches to documents prepared "in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party." *Id.* (quoting *Safecard Serv. Inc.*, 926 F.2d at 1203); *see also Judicial Watch*, 926 F.Supp.2d, at *139-142

15

(rejecting DHS' argument that *Schiller* extends work product extension to documents providing "guidance on how to handle specific classes of cases").[5]  The DOJ has failed to establish that the template pertains to a specific claim or consists of more than general instructions to its attorneys with regard to applying for location tracking orders.  Accordingly, the template is not work product.

>        2.        EOUSA *Vaughn* Index Document No. 2: Power Point Presentation

The *Vaughn* Index identifies document number 2 as being two pages in length and proffers the following description:

> These two pages are the last part of a power point presentation by attorneys in the U.S. Attorney's Office for the Northern District of California of which the first part has been released to the ACLU. The two pages are a legal analysis of issues that may arise in connection with the use of location tracking devices. This analysis represents the opinions of attorneys for U.S. Attorneys Office on the interpretation of the law and was prepared to provide legal advice and in anticipation of litigation.

*Id*.  The EOUSA asserts that the two pages are withheld in full pursuant to FOIA Exemption (b)(5) as Attorney Work Product, and provides the same justification as that offered for document no 1. Kornmeier Decl. ¶¶ 7-9.  The Court agrees that these pages constitute the USAO's legal analysis of issues that may arise in connection with the use of location tracking devices.  *See, id*.  The withheld pages do not convey general agency policy regarding the use of location tracking devices, nor do they provide instructions for how the DOJ desires its attorneys to apply for orders

---

[5] The DOJ relies on a number of inapposite cases. *Feshbach v. SEC*, 5 F. Supp. 2d 774, 782-83 (N.D. Cal. 1997), is distinguishable.  There, Judge Illston held that documents generated in the course of the SEC's examination of a particular company were work product, even though at the time the documents were generated, the agency had not decided to litigate.  The court's work product conclusion rested on the fact that the documents were generated in the course of an investigation "based upon a suspicion of specific wrongdoing and represent[ed] an effort to obtain evidence and to build a case against the suspected wrongdoer." *Id*. at 782.  Similarly, *Heggestad v. United Dep't of Justice*, 182 F. Supp. 2d 1, 8 (D.D.C. 2000), involved memos prepared by prosecutors about the decision to prosecute in particular criminal investigations. *Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 2d 1280, 1289 (D. Kan. 2001) is also distinguishable as there, the court held that certain reports discussing the production, use and disposal of certain chemical compounds were created in anticipation of specific and pending litigation.  The documents DOJ seeks to withhold, by contrast, set forth general legal standards, not an analysis of issues arising in "identified litigation" or strategic decisions regarding any particular investigation. *Id*..

authorizing their use.  *See, id*.  Here, the legal strategies and issues addressed in the withheld documents are protected because they relate to foreseeable litigation arising out of the government's criminal investigations.  The Index thus provides sufficient information from which the Court may conclude that the withheld pages are attorney work product.  Accordingly, the attorney work product privilege applies to this document.

*Am. Immig. Council*, on which Plaintiffs rely, is distinguishable.  There, the court held non-exempt a "legal opinion" addressing "whether an INS regulation create[d] a right to counsel for people seeking admission as refugees."  905 F. Supp. 2d at 222.  The court found that the memo, as described in the *Vaughn* index, provided a "neutral, objective analysis of agency regulations."  *Id.* (citing *Delaney, Migdail & Young*, 826 F.2d at 127).  The court distinguished this memo, which sought "the best interpretation of a regulation," and was not entitled to work product protection, with one "considering whether a court is likely to uphold a proposed agency interpretation of a statute," which was influenced by litigation.  *Id.*(citing *In re Sealed Case*, 146 F.3d at 884).  Here, the withheld portions of the power point presentation offer the DOJ's legal opinion on issues that may arise in connection with the use of location tracking devices in current litigation.

**E.      Documents Withheld By the Criminal Division**

The Government asserts that the five sets of documents being withheld by the Criminal Division constitute protected work product that are exempt from disclosure pursuant to FOIA Exemption 5.  Gov. Mot. at 13.  Plaintiffs argue that none of these documents qualify as work product because: (1) the memoranda (CRM 1-3) provide neutral analysis of the implications of recent case law; and (2) the portions of the USA Book (CRM 4-5) function as an agency manual rather than provide case-specific litigation strategy.  Pl. Mot. at 12-13.  The Court will discuss each in turn.

**1.      Criminal Division *Vaughn* Index Nos 1-3: CRM Memoranda**

The Government's *Vaughn* Index of EOUSA Records identifies document number 1 ("CRM One") as being pages 57 in length and describes it as follows: "Guidance Regarding the Application of *United States v. Jones*, 132 S. Ct. 945 (2012) to GPS Tracking."  Cunningham

Decl., Ex. 2 (DOJ *Vaughn* Index).

The Index identifies document number 2 ("CRM Two") as being 54 pages and describes it as follows: "Guidance Regarding the Application of *United States v. Jones*, 132 S. Ct. 945 (2012) to Additional Investigative Techniques." *Id*.

The Index identifies document number 3 ("CRM Three") as a two-page memorandum, and describes it as follows: a final memorandum of law from DOJ-OEO to all USAO Criminal Chiefs re: "guidance concerning requests for historical cellular telephone location equipment." *Id*.

"CRM One and CRM Two discuss potential legal strategies, defenses, and arguments that might be considered by federal prosecutors in light of the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012) ("*Jones*")." Second Cunningham Decl. ¶ 8, Ex. 1. "CRM Three discusses potential legal strategies, defenses, and arguments that might be considered by federal prosecutors in light of a Western District of Pennsylvania decision entitled *In re Application*, 534 F. Supp. 2d 585 (W.D. Pa. 2008) ("*In re Application*")." *Id*.

"CRM One, CRM Two and CRM Three are intended to outline possible arguments or litigation risks that prosecutors could encounter following the *Jones* and the *In re Application* decisions in the context of defendants' motions to exclude or suppress evidence in cases involving GPS tracking devices, historical cellular telephone location information and other investigative techniques." *Id*. "CRM One, CRM Two and CRM Three assess the strengths and weaknesses of alternative litigating positions and offer prosecutors guidance, recommendations and best practices going forward." *Id*.

Here, the DOJ properly withheld these memoranda as attorney work product. The Second Cunningham Declaration states that CRM One, Two, and Three "are intended to outline possible arguments and or litigation risks prosecutors could encounter" and "assess the strengths and weaknesses of alternative litigating positions." Second Cunningham Decl. ¶ 8. Moreover, these documents were "prepared because of ongoing litigation and the prospect of future litigation." *Id*. ¶ 9. Plaintiffs' argument that the memoranda are not case-specific, and are thus "conceptually indistinguishable from the legal documents in *Jordan*, *Judicial Watch*, and *Am. Immig. Council* is unpersuasive. Pl. Reply at 11-12. There is no indication that these memoranda were intended to

United States District Court
Northern District of California

function as an agency manual, or that they offer neutral analysis of the law.  Rather, they appear to be the "more pointed" documents referred to by the *Delaney* court, which were prepared in anticipation of litigation.  *See Delaney, Migdail & Young*, 826 F.2d at 127.  The memoranda at issue here were created to assist AUSAs with recurring litigation issues related to the *Jones* and the *In re Application* decisions that have arisen in current litigation, and thus are protected as work product.  *See* Kornmeier Decl. Ex. C; First Cunningham Decl. ¶¶ 15, 16; Second Cunningham Decl. ¶¶ 8-10.  Where, as here, the purpose of the documents is to convey litigation strategy, rather than convey routine agency policy, they are entitled to work product protection.  *Am. Immigration Council*, 905 F. Supp. 2d at 221.

> 2.      Criminal Division *Vaughn* Index Nos. 4-5: Portions of USA Book

CRM Four and Five constitute relevant portions of the USABook, which functions as a legal resource book and reference guide for federal prosecutors.  *See* Cunningham Decl. ¶ 16.  The Index identifies document number 4 ("CRM Four") as portions of the USABook Manual titled "Electronic Surveillance and Tracking Devices," and describes it as follows: "Provides guidance to federal prosecutors/case agents re: electronic surveillance and tracking devices.  Text covers the following: Preface; Roadmap/FAQs; Part I - Obtaining Location Information from Wireless Carriers; Part II - Mobile Tracking Devices; Part III - Telematics Providers (OnStar, etc…" Cunningham Decl., Ex. 2 (DOJ *Vaughn* Index).  CRM 4 also contains sample warrants, affidavits, and letters offering guidance on applications for authorization to obtain location data concerning the targeted wireless phone; two model sealed warrants.  *Id*.

The Index identifies document number 5 ("CRM Five") as portions of the USABook Federal Narcotics Manual titled "Electronic Surveillance Non-Wiretap," and describes it as follows: "Provides guidance to federal prosecutors/case agents re: electronic surveillance and tracking devices.  Text discusses electronic tracking devices generally and cellular telephone location information."  *Id*..

These documents present a more difficult question.  After careful consideration of the Index and the parties' arguments, the Court disagrees with the Government's characterization of CRM Four and Five as work product.  The DOJ asserts that CRM Four and Five "discuss[]

19

potential legal strategies, defenses, and arguments that might be considered by federal prosecutors." Gov. Reply at 5-6 (citing Cunningham Dec. ¶ 10). However, the general description of the materials as guidance, coupled with the templates for use in obtaining location tracking information or devices, strongly suggest that these documents function like an agency manual, providing instructions to prosecutors on how to obtain location tracking information. *See* Cunningham Decl. ¶ 16 (these documents function as a legal resource book and reference guide for federal prosecutors). For this reason, the Court does not find the DOJ's argument that these documents are litigation-specific to be persuasive, and thus does not agree that they function like the documents in *Delaney, Migdail & Young*, to advise the agency of the "legal vulnerabilities" or a particular program. 826 F.2d at 127.

**F.      Exemption 6 and 7(C)**

Exemption 6 concerns documents whose disclosure could result in the "unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). The Court is thus required "to protect, in the proper degree, the personal privacy of citizens against the uncontrolled release of information." *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008). Under this test, "the usual rule that the citizen need not offer a reason for requesting the information must be inapplicable." *Id.* (*citing Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Instead, the Court must "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989); *Forest Servs. Emps. for Envtl. Ethics v. U.S. Forest Serv*., 524 F.3d 1021, 1025 n. 2 (9th Cir. 2008). Here, Exemptions 6 and 7(C) were applied to the names and identifying information of DOJ attorneys involved in the creation of CRM Three, CRM Four, and CRM Five. Gov. Mot. at 11. Plaintiffs do not oppose the application of these exemptions.

**G.      Exemption 7(E)**

Exemption 7 under FOIA permits the government to withhold "records or information compiled for law enforcement purposes" under certain enumerated conditions. 5 U.S.C. § 552(b)(7). Particularly, Exemption 7(E) provides that "records or information compiled for law enforcement purposes" may be withheld if they "would disclose techniques and procedures for

law enforcement investigations or prosecutions."  *Id*.  However, "Exemption 7(E) only exempts investigative techniques not generally known to the public."  *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995).  The government may also withhold detailed information regarding a publicly known technique where the public disclosure did not provide "a technical analysis of the techniques and procedures used to conduct law enforcement investigations."  *See Bowen v. U.S. Food & Drug Admin*., 925 F.2d 1225, 1228-29 (9th Cir 1991); *see also Elec. Frontier Found. v. Dep't of Defense*, 2012 WL 4364532, at \*4 (N.D. Cal., Sep. 24, 2012).

The Government asserts Exemption 7(E) for its investigative techniques and procedures, as well as guidelines for law enforcement investigations and prosecutions that are not publicly known.  Cunningham Decl. ¶ 21-24.  CRM One discusses how GPS tracking devices are used in federal criminal investigations, including "[t]he specific techniques available to prosecutors, the circumstances in which such techniques might be employed, and the legal considerations related to such techniques." *Id*. ¶ 21.  CRM Two is similar to CRM One, except that it involves investigative techniques apart from GPS tracking devices.  *Id*. ¶ 22.  CRM Two "discloses techniques and procedures related to approximately a dozen investigative techniques apart from GPS tracking devices that are employed in federal criminal investigations."  Second Cunningham Decl. ¶ 13. CRM Three discusses these same topics as they relate to historical cellular telephone location information.  First Cunningham Decl. ¶ 23.  Moreover, "[a]ll three memoranda discuss techniques and procedures that are not publicly known, and disclosure of this information could provide individuals with information that would allow them to violate the law while evading law enforcement."  *Id*. ¶¶ 21-23.

The responsive portions of USABook contained in CRM Four and CRM Five address specific issues relating to electronic surveillance, tracking devices, and non-wiretap electronic surveillance in the context of prospective federal criminal prosecutions and investigations.  *Id*.¶ 24.  "The specific techniques available to prosecutors, the circumstances in which such techniques might be employed, and the legal considerations related to such techniques are reflected through the documents."  Second. Cunningham Decl. ¶ 15.

The Government asserts that these portions "are not publicly known, and disclosure of this

1   information could provide individuals with information that would allow them to violate the law

2   while evading law enforcement."  *Id.*.  Specifically

> 3   If would-be wrongdoers have access to the information contained in
> 4   CRM One through CRM Five regarding where, when, how, and under what circumstances GPS tracking devices, historical cellular
> 5   telephone location information, electronic surveillance, nonwiretap electronic surveillance and other investigative techniques are used
> 6   by federal investigators, they will also learn when and where certain investigatory techniques are not employed, and would be able to
> 7   conform their activities to times, places, and situations where they know that unlawful conduct will not be detected.

8   *Id.* ¶ 16

9       Plaintiffs argue that the DOJ has not met its burden of establishing that the Criminal

10  Division documents are covered under FOIA's Exemption 7(E) because they provide only a more

11  specific application of techniques that are well known to the public.  Opp'n at 17.  Plaintiffs

12  maintain that the Government's rationale for withholding the documents is also too conclusory,

13  and should not be accorded much weight.  *Id.* at 18.

14      With respect to CRM Four, this document discusses a number of techniques for tracking a

15  person's location by cellular phone or vehicle.  Plaintiffs point to the Government's *Vaughn*

16  Index, which identifies the specific location tracking technologies discussed: "Obtaining Location

17  Information from Wireless Carriers," "Mobile Tracking Devices," and "Telematics Providers

18  (OnStar, etc.)."  Cunningham Decl., Ex. 2.  Plaintiffs contend that the Government's technique of

19  obtaining location information from wireless carriers is already well known, including efforts to

20  obtain location information of individual subscribers, as well as all subscribers who were close to

21  one or more targeted cell towers ("cell tower dumps").  Pl. Mot. at 15-16.  This is also evidenced

22  by a number of news articles and judicial opinions addressing these techniques.  Pl. Mot. at 16.

23      Plaintiffs next assert that CRM Five, which describes "electronic tracking devices -

24  generally and cellular telephone information," also covers well-known techniques.  *Id.*  The

25  Government's use of mobile tracking devices such as GPS and cell site simulators (also called

26  "IMSI catchers," "digital analyzers," or "triggerfish") is well known to the public, and is discussed

27  in the DOJ's own publicly available guides and manuals, as well as having been the subject of

28  extensive media coverage.  *Id.* (citing "Electronic Surveillance Issues" (Lye Decl., Ex. 6, p. 151,

United States District Court
Northern District of California

22

153, Dkt. No. 26); "Electronic Surveillance Manual" (Lye Decl., Ex. 7, p. 40; Lye Decl. ¶ 19; and

Lye Decl. Ex. 10 (24 news articles about the Government's use of IMSI catchers)).  Plaintiffs also

note that the public is already well aware that the Government can obtain location information

from telematics providers such as OnStar.  Lye Decl. ¶ 18 and Ex. 9 (collecting news articles on

Government access to telematics data such as OnStar).

The Government argues that the documents discuss "the specific techniques available to

prosecutors," and "the circumstances in which such techniques might be employed."  Cunningham

Decl. ¶¶ 21, 23, 24.  Plaintiffs contend that this argument is foreclosed by the Ninth Circuit's

decision in *Rosenfield,* which rejected the claim that a "more precise" application of a well-known

technique falls under Exemption 7(E) simply because the more precise application is not generally

known. *Rosenfeld v. U.S. Dept. of Justice,* 57 F.3d 803, 815 (9th Cir. 1995)  Moreover, Plaintiffs

argue, the DOJ has not met its burden by providing non-conclusory reasons establishing that

disclosure of the documents would risk circumvention of the law.  Pl. Mot. at 18 (citing *Am. Civil

Liberties Union of N. Cal. v. FBI*, 2013 WL 3346845, *9 (N.D. Cal. July 1, 2013)).  Plaintiff

points out that these are essentially memoranda discussing the legal standards governing the use of

location tracking technology.  *Id.* (citing *PHE, Inc. v. Dep't of Justice,* 983 F.2d 248, 251 (D.C.

Cir. 1993)).  The Government counters that it may withhold detailed information regarding a

publicly known technique where the public disclosure did not provide technical analysis of the

techniques and procedures used to conduct law enforcement investigations.  Gov. Reply at 11-12.

The Court finds inadequate the Government's assertion that, even though the techniques

described in CRM Four and CRM Five are generally known, the specifics on how and when the

technique is used is not generally known.  The Government's attempt to distinguish *Rosenfeld* on

the grounds that the non-public details regarding the circumstances in which the location tracking

techniques are used is not merely a more precise application is not persuasive.  Further, the

Government's reliance on *Soghoian v. Dep't of Justice*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) is

also not persuasive based on applicable Ninth Circuit authority.  *See Rosenfeld*, 57 F.3d at 815

(holding the government cannot simply say that the investigative technique at issue "is not the

practice, but the application of the practice to the particular facts underlying that FOIA request"

23

1    cannot be adequate under Exemption 7(E) because otherwise it would prove too much).

2          Here, the DOJ's declaration asserts that information about the specifics of when various

3    investigatory techniques are used could alert law violators to the circumstances under which they

4    are not used without addressing the fact that the public is already aware that minimizing vehicular

5    or cell phone usage will allow them to evade detection.  Second Cunningham Decl. ¶ 16.  To the

6    extent that potential law violators can evade detection by the government's location tracking

7    technologies, that risk already exists.  The documents at issue here are thus distinguishable from

8    *Morley v. CIA*, 508 F.3d 1109, 1129 (D.C. Cir. 2009), in which the court found that information

9    pertaining to CIA security clearance procedures should be withheld under Exemption 7(E) because

10   disclosure could render those procedures vulnerable and weaken their effectiveness at uncovering

11   background information on potential candidates.  There was no suggestion in *Morley* that

12   information about how to evade CIA security clearance procedures was already available;

13   disclosure in that case therefore gave rise to a risk of circumvention that did not pre-exist.

14         Recently, in *Am. Civil Liberties Union of N. Cal. v. FBI*, 2013 WL 3346845, at *9 (N.D.

15   Cal. July 1, 2013), Judge Illston rejected the same argument advanced by the Government in a

16   case where the FBI offered an affidavit that used similar conclusory language to support its

17   entitlement to withhold documents pursuant to Exemption 7(E).  There, in response to a FOIA

18   request seeking information regarding the FBI's investigation of the Occupy movement, the FBI

19   submitted a declaration stating that "[d]isclosure of this information could enable subjects to

20   circumvent similar currently used techniques and procedures by law enforcement," and explained

21   that "[w]hile these techniques may be known by the public in a general sense, the technical

22   analysis of these sensitive law enforcement techniques, to include the specifics of how and in what

23   setting they are employed, is not generally known to the public."  *Id.*

24         Judge Ilston held that while the FBI is entitled to withhold technical analysis" of the

25   techniques and procedures used to conduct law enforcement investigations that are not generally

26   known, it cannot withhold investigatory procedures.  *Id.* (citing *Bowen*, 925 F.2d at 1228).  Similar

27   to the declaration in this case, the court found the FBI's conclusory assertion that, "even though

28   the technique is generally known, the specifics on how and when the technique is used is not

United States District Court
Northern District of California

24

generally known," to be in adequate. *Id.* (citing *Rosenfeld*, 57 F.3d at 815). The Court concluded that the FBI's assertion that "the public is unaware of the specifics of how and when a technique is employed is not enough to sustain a withholding under Exemption 7(E)." *Id*. The same is true in this case. The declarations here set forth only conclusory statements that the public is not aware of the specifics of how or when the techniques are used, but do not state that the techniques are not generally known to the public  *See* Second Cunningham Decl. ¶¶ 12-15.

For these reasons, the Court finds that the Government's assertion that the public is unaware of the specifics of how and when the techniques listed in CRM Four and CRM Five are employed is not enough to sustain a withholding under Exemption 7(E).

## H.    Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

Plaintiffs argue that FOIA does not permit agencies to withhold non-exempt portions of responsive records (although they may withhold non-responsive documents). At issue are portions of CRM Two, Four, and Five, withheld by the Criminal Division. (*See* Cunningham Decl. Ex. 2:23, 24 & 31.) The Ninth Circuit only permits withholding if documents, or portions thereof, fall within the enumerated exceptions. Pl. Mot. at 22 (citing *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 741-42 (9th Cir. 1979)). Plaintiffs further argue that *Dettmann v. U.S. Department of Justice* mandates that the DOJ not narrowly read the FOIA request so as to excise information to which Plaintiffs are entitled. 802 F.2d 1472 (D.C. Cir. 1986.

The DOJ counters that it has produced all reasonably segregable documents responsive to the request. Specifically, it maintains that FOIA does not require disclosure of records in which the non-exempt information that remains is meaningless. Gov. Mot. at 13. (citing *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005), in which the court concluded that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words.") Moreover, segregability is not required if a document is fully protected as

United States District Court
Northern District of California

work product.  Gov. Mot. at 13 (citing *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 370-72 (D.C. Cir. 2005)).

As discussed above, the DOJ properly withheld EOUSA No. Two and CRM Nos. One - Three. However, the DOJ must release EOUSA One, and CRM Four and Five in full, as they have not established that they are work product, or that redactions pursuant to Exemption 7(E) are warranted.

### CONCLUSION

For the foregoing reasons, the Government's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  The Government properly withheld EOUSA 2 and CRM 1-3 under Exemption 5.  The Government must produce EOUSA 1 and CRM 4 and 5, as these documents were not properly withheld under Exemption 5 or 7(E).  Plaintiffs' Cross-Motion for Partial Summary Judgment is GRANTED in part and DENIED in Part.  Exemption 5 applies to EOUSA 2 and CRM 1-3.  The Government did not meet its burden to establish that the remaining documents were properly withheld pursuant to Exemption 7(E).

**IT IS SO ORDERED.**

Dated: September 30, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge