United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, et al., | Case No.  12-cv-04008-MEJ |
| Plaintiffs, | **ORDER ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| v. | Re: Dkt. Nos. 43, 48 |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

## INTRODUCTION

On July 31, 2012, Plaintiffs American Civil Liberties Union and San Francisco Bay Guardian ("Plaintiffs") filed this lawsuit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel the release of documents from the United State Attorney's Office for the Northern District of California regarding use of location tracking technology in this District.  Compl. ¶ 1, Dkt. No. 1.  Pending before the Court are Plaintiffs' and Defendant United States Department of Justice's (the "DOJ" or the "Government") cross-motions for partial summary judgment.  Dkt. Nos. 43 (Gov. Mot.), 48 (Pl. Mot.).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court DENIES the Government's Motion, and GRANTS in part and DENIES in part Plaintiffs' Cross-Motion.

## BACKGROUND

### A.    Plaintiffs' FOIA Request

On April 13, 2012, Plaintiffs submitted a FOIA request to the Government for four categories of records relating to location tracking technology.  Compl. ¶ 3.  The FOIA request sought, in relevant part, "all requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008."  *Id*., Ex. 1 at 3.  The FOIA request defined

"location information" as:

> [A]ny information that helps to ascertain the location of an individual or particular electronic device that, in whole or in part, is generated or derived from the operation of an electronic device, including but not limited to a cell phone, smartphone, cell site, global positioning system, cell-site simulator, digital analyzer, stingray, triggerfish, amberjack, kingfish, loggerhead, or other electronic device, including both historical and real-time information.

*Id.*

After Plaintiffs filed this FOIA action, the parties met and conferred extensively about search protocols.  Third Decl. of Linda Lye ("Lye Decl.") ¶ 10, Dkt. No. 49.  Plaintiffs provided counsel for the DOJ a copy of the search protocol used in a similar FOIA case[1], and indicated that they would be amenable to adopting a similar approach even though it would be underinclusive by omitting cases involving Assistant United States Attorneys ("AUSAs") who had handled responsive matters but departed the agency.  *Id.*

**B.       The Government's Use of Location Information and its Recordkeeping System**

The United States Attorney's Office for the Northern District of California ("USAO-NDCA") does not maintain searchable, central electronic records.  Decl. of Patricia Kenney ("Kenney Decl.") ¶ 4, Dkt. No. 43-1.  The USAO-NDCA uses an electronic case management system known as the Legal Information Office Network System ("LIONS"), which tracks cases but does not maintain substantive records.  *Id.*.  The USAO-NDCA maintains paper records, organized by internal file numbers (known as a "USAO numbers"), for matters, investigations, and cases opened by the office.  *Id.* ¶ 2.  Closed matters, investigations or cases are stored at the USAO-NDCA for approximately six months before being sent to the Federal Records Center.  *Id.* ¶¶ 2, 5.

Search warrants and pen registers to obtain location-tracking information ("applications for court orders seeking location information") are not indexed in LIONS or filed separately, but are preserved in the USAO-NDCA paper file specific to that investigation.  *Id.*  As a result, the DOJ

---

[1] *Am. Civil Liberties Union v. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011).

United States District Court
Northern District of California

originally asserted that the only way to definitively identify and retrieve all records responsive to Part 1 of Plaintiffs' FOIA request is to manually retrieve and review all the paper files for all matters, investigations, and cases that have been opened by the USAO-NDCA since January 1, 2008. *Id.* ¶ 5.2.

Between January 1, 2008 and September 1, 2013, the USAO-NDCA assigned new USAO numbers to 12,699 matters, investigations, and cases. *Id.* ¶ 5. While some matters that were opened since 2008 may consist of a simple folder, many matters turn into long term investigations. *Id.* Cases which are ongoing for a number of years, and the paper files associated with them, are voluminous, filling multiple bankers boxes, and in some cases entire storage rooms. *Id.*

According to the DOJ, there is no uniform office practice by which files are maintained by the USAO-NDCA. *Id.* ¶ 6. The methods vary significantly from section to section, and even attorney to attorney. *Id.* ¶ 8. Some attorneys obtain a new USAO number when filing applications for location tracking information, whereas others use a USAO number already assigned to an investigation. *Id.* For example, the general practice in the Organized Crime Drug Task Force/Narcotics section is to open a new USAO number with each application, and to close the matter when the order is obtained – even though the related investigation under a separate USAO number may be ongoing. *Id.* In other sections, such as the Special Prosecutions/National Security section, the general practice is to apply for an order using the same USAO number as the underlying investigation, with the investigation continuing after the sealed order is obtained. *Id.* The applications for court orders seeking location information are typically filed under seal, with the general practice being that both the application and order are sealed. *Id.* ¶¶ 2, 7, 18. The Government's position is that the USAO-NDCA is precluded from disclosing these sealed applications to the general public. *Id.* ¶¶ 2, 7.

The DOJ asserts that the materials are sealed because they seek location information to develop evidence of criminal activities of targets who are usually unaware of the investigation. *Id.* ¶ 7. Premature disclosure of applications and orders would jeopardize those investigations. *Id.* Moreover, even after the indictment of one target, the USAO often has an interest in preventing any associates of the target who are still under investigation from learning of specific investigative

United States District Court
Northern District of California

techniques which the USAO may continue to use to develop evidence of criminal activities.  *Id.*  The DOJ also asserts that disclosure of the information contained within the sealed applications and orders can have violent adverse consequences:

> In a complex, multi-year[ ] investigation, there are often multiple defendants who could include fugitives from whom the AUSA wants to withhold the investigative techniques used. The sealed applications for location tracking information may be supported by affidavits which identify confidential informants ("CIs") or confidential sources ("CSs"), or include information which could lead to the identification of those CIs or CSs. Disclosure could endanger the CIs or CSs, particularly in investigations involving street gangs, violent crimes and drug trafficking.

*Id.*

The DOJ also explains that "[t]here is no systematic review on an ongoing basis of the sealed applications to determine whether the conditions requiring sealing continue, and such a review would be impractical."  *Id.* ¶ 9.  Among other things, there has been a turn-over of both AUSAs and agents, thus making it difficult (if not impossible) to determine the potential harm of unsealing the documents.  *Id.*  In light of the types of crimes prosecuted by the USAO-NDCA, the Government asserts that the passage of time would not necessarily lessen the need to keep information under seal, even though the USAO's ability to evaluate that need diminishes with time.  *Id.*

**C.     The Government's Search Attempts**

In processing Plaintiffs' request, the USAO-NDCA used its electronic case management system, LIONS, to attempt to identify non-sealed files in which there might be responsive records.  *Id.* ¶ 11.  As a result of those efforts, the Government recently disclosed 148 pages of responsive records.  *Id.* ¶ 23; *see also* Second Declaration of John W. Kornmeier ("Second Kornmeier Decl."), Dkt. No. 43-2.  Specifically, the USAO-NDCA developed a list of search terms that it believed were most likely to have been used when opening matters in LIONS.  Kenney Decl. ¶¶ 11-13.  Those terms were shared with Plaintiffs, which also provided input.  *Id.* ¶ 12.

Initially, the USAO-NDCA searched only the "caption" field in LIONS (which is a required field for all AUSAs to fill out on a matter/case opening form to obtain a USAO number), but added a search of the "comment" field at Plaintiffs' request.  *Id.* ¶¶ 11-12, 14.  The "comment"

4

field, unlike the "caption" field, is not a required field, but may be used at an AUSA's individual discretion. *Id*. ¶ 14. The USAO-NDCA's IT staff then spent a considerable amount of time de-duplicating these results. *Id*. ¶ 12.

As a result of these searches, 1184 matters were identified by USAO number. *Id*. ¶ 15. For each of those matters, the USAO-NDCA obtained, among other things, caption information, the court docket number (when available), the Criminal Section in which the matter was opened, the AUSA assigned to the matter, and the comments (if any) that the AUSA inputted regarding the matter. *Id*. While 1184 matters were identified by USAO number, the search actually produced key words in only 3692 lines of data, due to multiple "hits" for many USAO numbers. *Id*. The USAO-NDCA's Criminal Section Chief reviewed the LIONS data and determined that 424 of the approximately 1184 USAO matters were unlikely to have responsive records.[2] *Id*. ¶¶ 15-16.

The USAO-NDCA, with assistance from the DOJ Civil Division, then compared the remaining 760 docket numbers identified by LIONS with the district court's electronic case filing system ("ECF") to ascertain whether any of those dockets were under seal. *Id*. ¶ 19. Of these matters, 566 were confirmed to be under seal. *Id*. In 115 of these files, ECF returned the message "Cannot find case." *Id*. In 73 of the matters, LIONS did not contain a court docket number to check against the Court's records. *Id*. The USAO-NDCA then retrieved a random, 10% sample of files in the "cannot find case" category and the category in which LIONS did not contain a docket number in order to determine whether these matters contained applications for court orders seeking location information and, if so, to confirm whether the information was sought under seal. *Id*. ¶¶ 20-21. Of the seven records with no associated docket number, four of the matters retrieved did not involve an application for an order seeking location tracking information, and three of the matters included a total of 19 applications and orders for location tracking information for which a sealing order was obtained, and which remain under seal. *Id*. ¶ 21.

---

[2] The search was substantially over-inclusive and resulted in the identification of many matters that were unlikely to contain responsive records based on the search terms used, such as "monitor." *Id*. ¶ 16.3. As a result, the USAO-NDCA's Criminal Section Chief personally reviewed the LIONS data. *Id*. ¶ 16.

United States District Court
Northern District of California

**D.      The Release of Responsive Records**

Based on its search of LIONS, the USAO-NDCA was able to determine that six matters that appeared in ECF were not sealed. *Id.* ¶ 22.  The USAO-NDCA retrieved the files associated with these matters: One file had two responsive applications and orders under seal along with an unsealing order; one file had one responsive application and order, as well as an unsealing order; one file had no court documents in it; one file had a single page of a sealed order for location tracking information; and the last two files had responsive applications and orders which were never sealed (as the target was aware of the investigation).  *Id.* ¶¶ 10, 22.

In the file with two sealed responsive applications and orders, the USAO-NDCA determined that the Court had unsealed the file three years later, in August 2012, at the request of the then Deputy Criminal Chief J. Douglas Wilson in connection with an Arizona criminal case. *Id.* ¶ 22.  Although the USAO-NDCA determined that these matters were no longer sealed, the face of the documents disclosed indicated a contrary result, as AUSAs typically file the sealed documents in the file at the time a sealing order is obtained.  *Id.* ¶ 23.  There was no indication on the face of the disclosed documents that they had been unsealed.  *Id.*

Before applying to unseal the documents, the Deputy Criminal Chief consulted with the agency involved, which acquiesced in unsealing the matter.  *Id.* ¶ 22.  These materials were provided to the ACLU at about the same time.  *Id.*  As for the two USAO files lacking documents (i.e., the file with no court documents and the file with the single page of a sealed order), the USAO-NDCA retrieved copies of the physical documents from this Court's divisional office in San Jose.  *Id.*

On September 13, 2013, the DOJ released all of these materials, totaling 148 pages, to Plaintiffs.  *Id.* ¶ 23; Second Kornmeier Decl. ¶ 5.  The first two sets of applications relating to the Arizona criminal case were released in their entirety, as they had already been disclosed to the ACLU.  Kenney Decl. ¶ 23; Second Kornmeier Decl. ¶ 5.  The remaining materials were released with minor redactions pursuant to Exemption 7(C)[3], in order to protect

---

[3] The Government invoked Exemptions 7(C) which exempts records that would, if disclosed, constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 522(b)(7)(C).

United States District Court
Northern District of California

against an unwarranted invasion of personal privacy.  Kenney Decl. ¶ 23; Second

Kornmeier Decl. ¶ 5.  Specifically, the Department redacted the names of defendants, cell phone

numbers of targeted individuals, docket numbers, names of third parties, magistrate judge names,

the dates of use of location devices, and the filing dates.  Second Kornmeier Decl. ¶ 5.

Shortly after the release, Plaintiffs expressed concern regarding those redactions and, in

particular, indicated their belief that there is a strong public interest in the disclosure of dates

defining the period during which location-tracking information was sought.  Gov. Mot. at 10.  The

DOJ re-released these records to Plaintiffs on September 13, 2013, removing the redactions for the

dates of use of location devices, and removing the redactions for the year in which documents

were filed with the court.  Second Kornmeier Decl. ¶ 5.  The DOJ continues to assert Exemption

7(C) over the remaining information that has been redacted in order to protect the privacy of the

individuals identified in, or affected by, these records.  *Id*. ¶¶ 5-6.

**E.     Responsive Records Remaining and Cross-Motions**

After further review, the DOJ believes there are now 349 remaining matters that may

contain responsive records and which are not believed to be open, but remain under court seal, or

were sealed pursuant to the pen register statute.  Supp'l Decl. of Patricia Kenney ("Supp'l Kenney

Decl.") ¶ 6, Dkt. No. 55-1; Gov. Reply at 4.  These remaining records are the focus of the parties'

motions.

The DOJ moves for summary judgment on all of the claims in Plaintiffs' Complaint

relating to Part 1 of Plaintiffs' FOIA request.  Dkt. No. 43.  The DOJ argues that any further

processing of the request is unnecessary because: (1) the search would pose an undue burden; (2)

the search would be futile because the matters are under seal and cannot be disclosed; and (3)

applications and orders for pen registers issued pursuant to 18 U.S.C. § 3123(d) cannot be

disclosed under Exemption 3.[4]  Gov. Mot. at 15-17.

In their Cross-Motion for Summary Judgment, Plaintiffs argue that the Government has

---

[4] Under this exemption, the Government may withhold matters disclosing information specifically exempted from disclosure by other federal statutes if the statute establishes particular criteria for withholding or refers to the particular types of material to be withheld. (Exemption 3, 5 U.S.C. § 552(b)(3));

not met its burden under FOIA of justifying the withholding of these documents.  As a threshold

matter, Plaintiffs argue that the DOJ must continue to process the request because there are

feasible search methods that do not pose an undue burden.  Pl. Mot. at 11.  Plaintiffs argue that the

documents the DOJ has withheld are not exempt from disclosure, either because: (1) the DOJ has

not established that the seals were intended to function as protective orders[5]; or (2) 18 U.S.C. §

3123(d) is not an exempting statute under Exemption 3.  *Id*. at 15-22.  Plaintiffs request that the

Court deny the Government's motion and order the DOJ to (1) complete the search for responsive

records, and (2) produce location tracking materials in cases where the investigation is closed, or

in the alternative, produce a *Vaughn* index identifying docket numbers associated with such

matters.  *Id*. at 24.

## LEGAL STANDARD

### A.        The FOIA Statutory Scheme

Congress enacted FOIA to "clos[e] the loopholes which allow agencies to deny legitimate

information to the public."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989)

(citations and quotations omitted).  The FOIA's "core purpose" is to inform citizens about "what

their government is up to."  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir.

2012) (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773,

775 (1989) (citation omitted)).  "Consistently with this purpose, as well as the plain language of

the Act, the strong presumption in favor of disclosure places the burden on the agency to justify

the withholding of any requested documents."  *United States Dep't of State v. Ray*, 502 U.S. 164,

173 (1991).

### B.        Summary Judgment Standard in FOIA Cases

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are

resolved."  *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal.

2005) (quoting *Mace v. EEOC*, 37 F. Supp. 2d 1144, 1146 (E.D. Mo. 1999)) (internal quotations

omitted).  The underlying facts and possible inferences are construed in favor of the FOIA

United States District Court
Northern District of California

---

[5] Plaintiffs assert that for the purposes of this Motion, the DOJ should not be required to retrieve files involving open investigations.  Pl. Mot. at 1.

8

United States District Court
Northern District of California

requester.  *Id.* at 1095 (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).  Because the facts are rarely in dispute in a FOIA case, the Court need not ask whether there is a genuine issue of material fact.  *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  The standard for summary judgment in a FOIA case generally requires a two-stage inquiry.  *See Animal Legal Def. Fund. v. U.S. Food & Drug Admin.*, 2013 WL 4511936, at *3 (N.D. Cal. Aug. 23, 2013).

To carry their burden on summary judgment, "agencies are typically required to submit an index and 'detailed public affidavits' that, together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption.'"  *Yonemoto*, 686 F.3d at 688 (quoting *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004)) (modification in original).  These submissions—commonly referred to as a *Vaughn* index —must be from "affiants [who] are knowledgeable about the information sought" and "detailed enough to allow court to make an independent assessment of the government's claim [of exemption]."  *Id.* (citing *Lion Raisins*, 354 F.3d at 1079; 5 U.S.C. § 552(a)(4)(B)).

Under the first step of the inquiry, the Court must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA.  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (citing *Weisberg*, 705 F.2d at 1350-51).  In the second stage of the inquiry, the Court examines whether the agency has proven that the information that it withheld falls within one of the nine FOIA exemptions.  5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) ("The burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document."); *Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994).

The government may submit affidavits to satisfy its burden, but "the government 'may not rely upon conclusory and generalized allegations of exemptions.'"  *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980)).  The government's "affidavits must contain 'reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption.'"  *Id.* (quoting *Lewis v. IRS*, 823

F.2d 375, 378 (9th Cir. 1987)).

Courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012) (citing *Hunt v. CIA*, 981 F.2d 1116, 1119–20 (9th Cir.1992)).

## DISCUSSION

**A.     Whether Plaintiffs' Request Reasonably Describes the Records Sought**

The DOJ argues that Plaintiffs' request did not reasonably describe the records sought, because the USAO-NDCA's paper records are not organized and managed in a way that would allow its employees to locate the records with a "reasonable amount of effort." Gov. Mot. at 13. Plaintiffs argue that the DOJ's own search process and the existence of at least one alternative method used by the DOJ in a similar FOIA suit demonstrate this contention to be without merit. Pl. Mot. at 11.

It is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome and to enable the searching agency "to determine 'precisely what records [are] being requested.'" *Assassination Archives and Research Ctr., Inc. v. C.I.A.*, 720 F. Supp. 217, 219 (D.C. Cir. 1989) (quoting *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (alteration in original)).  When the request demands all agency records on a given subject, the agency is obliged to pursue any "clear and certain" lead it cannot in good faith ignore. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).  Records are reasonably described "if a professional employee of the agency familiar with the subject matter can locate the records with a 'reasonable amount of effort.'" *Marks v. U.S. (Dep't. of Justice)*, 578 F.2d 261, 263 (9th Cir. 1978); *Freedom Watch, Inc. v. C.I.A.*, 895 F. Supp. 2d 221, 228 (D.C. Cir. 2012).

Here, there is no dispute that Plaintiffs' request satisfies the literal requirements of the statute by reasonably describing the records sought.  Part 1 of Plaintiffs' FOIA request describes a discrete category of documents: "All requests, subpoenas, and applications for court orders or warrants seeking location information since January 1, 2008." Compl., Ex. 1.  This request is phrased with "sufficient particularity … to enable the searching agency to determine precisely what records are being requested." *Freedom Watch,* 895 F. Supp. 2d at 229 (citation and internal

1    quotations omitted).  This is evidenced by the fact that the DOJ did, in fact, craft a search that

2    enabled it to locate 349 of 12,699 matters that it now believes are likely to have responsive

3    records.  *See* Supp'l Kenney Decl. ¶ 6.  For this reason, *Am. Fed'n of Gov't Emps. v. U.S. Dep't of*

4    *Commerce*, 907 F.2d 203 (D.C. Cir. 1990), on which the DOJ relies, is not on point. (record

5    request that would have required the agency "to search virtually every file contained in over 356

6    branch and division offices, up to and including the director's office" unreasonable).

7    Accordingly, the Court finds that Plaintiffs' request reasonably describes the records sought.

8    **B.    Whether the DOJ Must Complete the Search**

9          The DOJ argues that it conducted a reasonable search for responsive records and that any

10   further processing of the remaining 349 matters is unnecessary because the records at issue are

11   sealed and are exempt from disclosure.  Gov. Mot. at 15; Gov. Reply at 4.  In light of this, the DOJ

12   argues that requiring further processing of Plaintiffs' FOIA request would not only be unduly

13   burdensome, but would constitute a waste of the USAO-NDCA's very limited resources.  Gov.

14   Mot. at 16 (citing *Solar Sources, Inc.*, 142 F.3d 1033, 1039 (7th Cir. 1998) (citation and internal

15   quotations omitted) (noting that courts have taken a "'practical approach' . . . in interpreting"

16   FOIA).  The DOJ maintains that even if not fruitless, the search would be unduly burdensome

17   based on the vast number of files it would have to retrieve and review.  Gov. Reply at 11-12

18   (citing Kenney Decl. ¶ 5).  The DOJ argues that the review process would require: (1) physical

19   search of the materials to find responsive documents; (2) line-by-line review of each application to

20   determine whether it seeks location tracking information; and (3) contacting AUSAs and agents

21   associated with the application(s) to ascertain the sensitivity of the information.  *See* Kenney Decl.

22   ¶¶ 6-9.

23         Plaintiffs counter that the DOJ has not established that the burden of the search would

24   preclude it from discharging its statutory obligation to continue processing the request with respect

25   to the remaining 349 matters it has identified.  Plaintiffs' Reply ("Pl. Reply") at 10, Dkt. No. 56.

26         The Government has a statutory obligation under FOIA to "conduct[] a search reasonably

27   calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351; *see also Zemansky*,

28   767 F.2d 569, 571 (9th Cir. 1985) (adopting *Weisberg* standard).  "If [ ] the record leaves

United States District Court
Northern District of California

11

substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The Court finds that the DOJ has not met its burden under FOIA because it has not completed the search of the remaining 349 matters, and thus cannot state that no responsive materials exist. *See Public Citizen v. Dep't of Educ.*, 292 F. Supp. 2d 1, 7 (D.C. Cir. 2003) (a search is inadequate where it could not have been expected to produce the information requested). In so holding, the Court is cognizant that "[a]n agency need not honor a [FOIA] request that requires 'an unreasonably burdensome search.'" *Am. Fed. of Gov't Emp. v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir.1978)). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requestors." *Assassination Archives*, 720 F. Supp. at 219. Here, the affidavits supplied by the DOJ do not establish that it would be unreasonably burdensome to complete the search.

First, the fact that a FOIA request is very broad or "burdensome" in its magnitude does not, in and of itself, entitle an agency to deny that request on the basis that it does not "reasonably describe" the records sought. *See Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (search of 813 files not burdensome); *Public Citizen*, 292 F. Supp. 2d at 7 (search of 25,000 paper files not burdensome where responsive information certain to exist). Here, the DOJ contends that the search would be unduly burdensome as it would be required to search a potentially vast number of materials, all of which would be exempt from disclosure. Gov. Reply at 12.

As an initial matter, the Court is not persuaded that the magnitude of the search would preclude further processing, given that the DOJ has significantly narrowed the number of matters to be searched, and that these matters are likely to contain information responsive to Plaintiffs' request. Supp'l Kenney Decl. ¶ 6. The DOJ relies on its affidavit in which it avers that the search of 12,699 matters would be a "gargantuan task" that might require review of a large number of files, some of which may take up an entire storage room. Kenney Decl. ¶ 5. The Court agrees that a manual search of this magnitude could be unduly burdensome. *See Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352-53 (D.C. Cir. 1978) ("page-by-page search through 84,000 cubic feet

United States District Court
Northern District of California

of documents" in the CIA's record center for responsive documents that might not exist was unduly burdensome. But here, the number of matters to be searched has been narrowed to 349. In this regard, the DOJ's affidavit fails to specifically address whether the search of the remaining matters would require as much effort.[6] In addition, as discussed below, because 18 U.S.C. § 3123(d) is an exempting statute under Exemption 3, the number of matters the DOJ must search will shrink further, as they need not conduct a line-by-line review of any of these materials to determine whether they are responsive to Plaintiffs' request.

Second, the DOJ avers that the search will be futile because any responsive records are likely to be exempt, either under the Pen Register Statute or because they are sealed. Gov. Reply at 4. The DOJ argues that FOIA was not designed to turn government agencies into research services, and that the considerable effort required to identify responsive documents and determine whether exemptions apply would do just that. Gov. Reply at 12 (citing *Assassination Archives*, 720 F. Supp. at 219 (plaintiff was not entitled to additional searches under FOIA to the extent that the breadth of his request was not compatible with Central Intelligence Agency's document retrieval system[7]) and *Freedom Watch, Inc.*, 895 F. Supp. 2d at 229)(FOIA requests that were "virtually incomprehensible" and extremely broad would impose an unreasonable burden upon the agency[8]). However, neither of these cases address whether the DOJ can decline to complete a

---

[6] *See* Kenney Decl. ¶ 5: Manually reviewing the 12,699 matters, investigations, and cases opened between January 1, 2008 and September 1, 2013 would entail the review of voluminous paper files, some of which fill entire storage rooms. The Court notes that there is considerable variation in the size of a storage room. Requiring a physical search of every file in a 84,000 cubic foot storage room would be unreasonable. *See Goland*, 607 F.2d at 352-53. A physical search of a smaller storage room containing 25,000 paper files with responsive records would not be. *See Public Citizen, Inc.*, 292 F. Supp. 2d at 1. The Court thus cannot determine whether it would be unduly burdensome for the DOJ to complete the task of processing the remaining 349 matters based on the prospect that it would involve a search of one or more hypothetical storage rooms.

[7] Plaintiff's FOIA request sought "all Central Intelligence Agency ("CIA") information on George Herbert Walker Bush which reflects any relationship between Mr. Bush and the CIA prior to his term as Director of Central Intelligence, as well as any documents regarding the assassination of President Kennedy that were reviewed by Mr. Bush while he was Director of Central Intelligence." *Assassination Archives*, 720 F. Supp. at 218.

[8] The FOIA requests sought "records about leaked information" that was obtained ... by the New York Times in their two articles of March 17 and March 19, 2012," including "... all correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs,

13

search for which responsive records are likely to exist.  Nor has the DOJ cited any case that holds that the fact that responsive records may be subject to various exemptions under FOIA relieves an agency of completing its search in the first instance.  *See* 5 U.S.C. § 552(a)(4)(B); *Carney*, 19 F.3d at 812 (agency has the burden of showing that its search for the requested material was adequate and that any withheld material is exempt from disclosure).

Plaintiffs cite *Public Citizen* as particularly on point.  The Court agrees.  In *Public Citizen*, the plaintiff made two FOIA requests to the Department of Education ("DOE") for information relating to student loan borrowers who had been improperly denied discharges between 1992 and 2000.  292 F. Supp. 2d at 3.  The DOE performed a search for the records within its electronic database, despite the fact that the database was not designed to record the reasons discharge applications were denied.  *Id*. at 7.  This information could only be accessed via physical review of 25,000 paper files.  *Id.*  The court found that this "more cumbersome procedure" of searching the files manually was not unduly burdensome in light of the fact that the search was "certain to turn up responsive documents."  *Id.* at 8.

Here, the effort at issue does not appear to exceed the considerable effort involved in reviewing the 25,000 paper files in *Public Citizen*.  Further, as in *Public Citizen,* the search is "certain to turn up responsive documents."  *Id*.; *see also* Kenney Decl. ¶¶ 17-22; Supp'l Kenney Decl. ¶ 5 (describing files which "may contain possibly responsive documents").  While the DOJ contends that the records that would be found as a result of this search would be exempt from disclosure (Gov. Reply at 11), this does not discharge the Government's duty to first undertake its search.  *See* 5 U.S.C. § 552(a)(4) (B) (the agency must conduct an adequate search *and* justify any exemptions ).

Based on this analysis, the Court DENIES the DOJ's motion for summary judgment WITHOUT PREJUDICE.  The DOJ may file a renewed motion after it has completed the search and processed responsive documents for release.

---

telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things (hereinafter, "information") that refer or relate to the following in any way…" *Freedom Watch*, 895 F. Supp. 2d at 223.

United States District Court
Northern District of California

**C.     Whether the Sealed Documents Are Exempt from Disclosure**

The DOJ argues that all of the 349 matters it has retrieved are sealed, and thus it has no discretion to disclose these records.  Gov. Mot. at 15-16.  Plaintiffs contend that the DOJ has failed to meet its burden of establishing that the court that imposed the sealing orders intended that the documents not be disclosed to the public.  Pl. Mot. at 15-16.  Plaintiffs argue that the sealing orders do not prohibit the DOJ from disclosing information and documents, but merely limit public access to court records during the pendency of ongoing investigations.  *Id*. at 15.  Plaintiffs also maintain that the sealing orders do not seal docket information, thus the DOJ is not precluded from releasing docket information for cases in which such orders have been requested.  *Id*. at 18.

With respect to sealing orders in the FOIA context, courts have held that

> the mere existence of a court seal is, without more, insufficient to justify nondisclosure under the FOIA. Instead, only those sealing orders intended to operate as the functional equivalent of an injunction prohibiting disclosure can justify an agency's decision to withhold records that do not fall within one of the specific FOIA exemptions.

*Concepcion v. F.B.I.*, 699 F. Supp. 2d 106, 111 (D.D.C. 2010) (citing *Morgan v. United States*, 923 F.2d 195, 199 (D.C. Cir. 1991); *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 387 (1980)).  The agency bears "the burden of demonstrating that the court issued the seal with the intent to prohibit the [agency] from disclosing the [document] as long as the seal remains in effect." *Id.*  (citing *Morgan*, 923 F.2d at 198).

The DOJ may do this by referring to: "(1) the sealing order itself; (2) extrinsic evidence, such as transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal; (3) sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals; or (4) the court's general rules or procedures governing the imposition of seals." *Morgan*, 923 F.2d at 198.  If the court concludes that the sealing order does not prohibit disclosure, "the [agency] should have the opportunity to show that one of the FOIA exemptions authorizes it to withhold the [information.]" *Concepcion*, 699 F. Supp. 2d at 111 (citing *Morgan*, 923 F.2d at 199 n. 5; *Odle v. Dep't of Justice*, 2006 WL 1344813, at *14 (N.D. Cal. May 17, 2006)).

15

As to the first *Morgan* factor, the DOJ argues that the language of the sealing orders establishes that the Court intended that the information be kept from public inspection until it ordered otherwise.  Gov. Reply at 6.  The DOJ further asserts that the Court's sealing of the dockets in which these sealed orders were entered is dispositive because it constitutes evidence of the Court's intent to preclude the disclosure of sealed information to the public at large.  *Id.* at 8.  As to the second factor, the DOJ points to extrinsic evidence that the "sealed applications for location tracking information may be supported by affidavits which identify confidential informants ("CIs") or confidential sources ("CSs"), or include information which could lead to the identification of those CIs or CSs."  Kenney Decl. ¶ 7.  "Sealing the applications and orders avoids jeopardizing the investigation by its premature disclosure."  *Id.*  The seal also maintains the integrity of related investigation of the target's associates, even after closure of the original matter, and protects specific information tracking techniques from disclosure to those targets as well.  *Id.*

As to the third factor, the DOJ argues that the function of the sealing orders can be inferred by comparing them to sealing orders issued pursuant to 18 U.S.C. § 3123(d) (the "Pen Register Statute").  Gov. Reply at 6.  Because courts universally hold that § 3123(d) is an exempting statute under FOIA Exemption 3, the DOJ argues that all of the sealing orders at issue here act to preclude the USAO-NDCA from disclosing these records to the public.  Gov. Reply at 6 (citing *Morgan*, 198 F.2d at 923 (courts should consider "sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals.")).  Exemption 3 only applies to statutes that either "(A) require[ ] that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establish[ ] particular criteria for withholding or refer[ ] to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The DOJ argues that courts which have held that the pen register statute is an Exemption 3 statute have in effect concluded that the sealing orders leave no discretion on the issue.  Gov. Reply at 6.  Thus, the DOJ concludes that any non-pen register applications for location-tracking information (such as warrants) certainly involve "similar cases" and raise the exact same law enforcement concerns as do those applications that have been filed pursuant to the Pen Register Statute.  *Id.*

With regard to the final factor, the DOJ relies on the Northern District of California Local

United States District Court
Northern District of California

16

Criminal Rules to define the scope of the sealing orders.  Gov. Reply at 5-6 (citing Crim. L.R. 56-1(b) (a document may be sealed in a criminal case if "the safety of persons or a legitimate law enforcement objective would be compromised by the public disclosure of the contents of the document"); and Crim. L.R. 56-1(e) (sealed documents "shall be kept from public inspection, including inspection by attorneys and parties to the action.")).

Plaintiffs counter that *Morgan* is directly on point, and that the Government's asserted reasons are insufficient given that the purpose of the sealing orders are to protect release of information to the public from the court's docket during the pendency of an investigation, but are not gag orders.  Pl. Reply at 5-6.  Plaintiffs point out that the cases at issue here are all closed cases, and argue that the Pen Register Statute only seals documents during the pendency of the investigation.  *Id.*  Plaintiffs also argue that the orders prohibit telephone service providers and other third parties from disclosing the information, but not the DOJ.  *Id.* at 6.  In support of this argument, Plaintiffs note that the sealing order grants the DOJ discretion to serve an order "on any other person" in redacted or unredacted form, further providing evidence that the order did not function as a gag by prohibiting all disclosure.  *Id*.  In any event, Plaintiffs argue, the fact that the Court seals its own dockets is not dispositive, without evidence of the Court's reason for doing so.  *Id.* at 6-7.

The dispositive question is whether the issuing court intended the sealing orders to function as protective orders.  *GTE Sylvania, Inc.*, 445 U.S. at 387.  Here, the Government has not met this burden because it has not completed its search of the remaining 349 matters.  The Court recognizes that a number of these matters may contain sealed applications and orders withheld under the Pen Register Statute.  As discussed below, the Pen Register Statute is an exempting statute under FOIA Exemption 3, and thus the DOJ does not have discretion to release any documents that remain under seal pursuant to this statute.  However, to the extent that any remaining documents, such as warrants and supporting affidavits exist, the Government would need to separately justify the reason(s) the record(s) remain under seal.  Again, because the search is incomplete, it is also possible that any remaining documents and accompanying docket information may be exempt from disclosure under other exemptions, such as Exemption 7(C),

17

because the cases, while closed, might not have resulted in conviction.[9]  As the Court cannot determine whether any responsive, non-exempt documents remain under seal, the Government's Motion for Summary Judgment is DENIED.

**D.    FOIA Exemption 3**

Plaintiffs next contend that the Pen Register Statute is not an exempting statute under FOIA Exemption 3.  Pl. Mot. at 22.

FOIA Exemption 3 protects from disclosure information for which disclosure is prohibited by another statute, if that statute either: (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (B) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A), (B). In this case, the DOJ relies on the Pen Register Statute, 18 U.S.C. § 3123(d), to withhold applications and orders for pen registers and trap and trace devices.  Gov. Mot. at 17.  Plaintiffs contend that the Pen Register Statute is not an exempting statute because it only exempts third parties from disclosing the existence of these materials, not the DOJ.  Pl. Reply at 8; Pl. Mot. at 22.

The Pen Register Statute provides:

> An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that--
>
> (1) the order be sealed until otherwise ordered by the court; and
>
> (2) the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

18 U.S.C. § 3123(d).

Despite Plaintiffs' contrary position, a consistent line of cases hold that the pen register

---

[9] *See Am. Civil Liberties Union,* 655 F.3d at 12 (significant public interest in docket numbers, courts, and names of prosecutions in which defendants had been subject to warrantless cell phone tracking, and then were convicted or pleaded guilty, outweighed the individuals' privacy interest in that information as disclosure would inform ongoing public policy discussion regarding warrantless cell phone tracking).

United States District Court
Northern District of California

statute is an Exemption 3 statute. *See Manna v. Dep't of Justice*, 815 F. Supp. 798, 812 (D.N.J. 1993) (finding that "two sealed applications submitted to the court for the installation and use of pen registers" and "two orders issued by the Magistrate Judge who granted the applications" were properly "protected by [§] 3123(d) and Exemption 3"), *aff'd on other grounds*, 51 F.3d 1158 (3d Cir. 1995); *Jennings v. FBI*, No. 03-cv-01651-JDB, slip. op. at 11 (D.D.C. May 6, 2004) (attached as Ex. 3 to Gov. Mot., Dkt. No. 43-3) (finding that "[t]his same reasoning [as applied to protect information obtained from authorized wiretap] applies to the evidence derived from the issuance of a pen register or trap and trace device"); *Riley v. FBI*, 202 U.S. Dist. LEXIS 2632, at *5-6 (D.D.C. Feb. 11, 2002)[10] (finding that sealed pen register applications and orders were properly withheld pursuant to Exemption 3, noting that "18 U.S.C. § 3123 requires that the pen register materials at issue remain under seal"); *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (pen-register information properly withheld under Exemption 3); *Roberts v. FBI*, 845 F. Supp. 2d 96, 101-02 (D.D.C. 2012) (same); *Sennett v. Dep't of Justice*, 962 F. Supp. 2d 270, 283 (D.D.C. 2013) (rejecting argument that § 3123(d) cannot support withholdings pursuant to Exemption 3 advanced without authority for this position or explanation why other district courts have erred in holding the contrary). The Court finds these cases to be persuasive.

In their Cross Motion, Plaintiffs argue that pen register applications are not subject to exemption under the statute. Pl. Mot. at 22 ("Assuming the portion of the decision relating to pen register orders is correct, it is nonetheless distinguishable because Plaintiffs seek pen register applications."). According to Plaintiffs, *Manna* "offered no reasoning in support of the portion of its holding relating to applications." *Id.* This argument, however, ignores relevant language in the statute and the sealing the order itself, which precludes disclosure of "the existence of the pen register or trap and trace device or the existence of the investigation" by relevant parties. *See* 18 U.S.C. § 3123(d)(2). Applications would certainly disclose the existence of the investigation if released. The *Manna* court came to the same conclusion in finding that pen register applications should also be withheld under Exemtion 3. *Manna*, 815 F. Supp. at 812; *see also Jennings,* No.

─────────────────

[10] Only the LEXIS citation is available.

United States District Court
Northern District of California

1   03-cv-01651-JDB, slip. op. at 11 (holding that log sheets, which "would by necessity reveal the

2   existence of [pen register] devices," were "exempt from disclosure by statute and by Exemption

3   3").

4         Plaintiffs also argue that the cases that hold § 3123(d) to be an exempting statute are

5   wrongly decided.  Pl. Reply at 9.  Plaintiffs maintain that the DOJ retains discretion under 18

6   U.S.C. § 3123(d) to disclose the existence of pen registers because the statute does not include

7   specific language prohibiting the agency from disclosure, and thus fails under 5 U.S.C. §

8   552(b)(3)(B).  Pl. Mot. at 22.  For instance, Plaintiffs argue that the decision in *Jennings*, which

9   holds that Section 3123(d) is an exempting statute, is wrongly decided because it "ignores the fact

10  that the prohibition is limited only to specified entities other than DOJ."  Pl. Reply at 9. (citing

11  *Jennings*, No. 03-1651, slip op. at 12-13).  The Court disagrees.

12        In *Jennings*, the AUSA withheld information obtained from a wiretap under the wiretap

13  statute (28 U.S.C. § 2510[11]), and 28 pages of pen register and conversation log sheets under the

14  pen register statute (18 U.S.C. § 3123(d)) pursuant to Exemption 3.  No. 03-cv-01651-JDB, slip.

15  op. at 11-12.  The court held that both statutes were exempting statutes because they

16  unequivocally prohibited disclosure.  *Id*. at 11 ("This same reasoning applies to the evidence

17  derived from the issuance of a pen register or trap and trace device….  According to [the] statute,

18  an order authorizing a pen register or trap and trace device is sealed until otherwise ordered by the

19  court and such an order prohibits disclosure of the existence of the pen register or trap and trace

20  device.")  The court also held that the log sheets, which "would by necessity reveal the existence

21  of these devices," were "exempt from disclosure by statute and by Exemption 3."  *Id*.  Contrary to

22  Plaintiffs' argument, the court easily distinguished between the materials withheld pursuant to §

23  3123(d) and materials the government sought to withhold based only on the fact that they were

24  "under seal."  *Id*. at 13 (citing *Morgan*, 923 F.2d at 195).  The court found that the mere presence

25

26  _____

    [11] This section prohibits "any person" from disclosing to "any other person" the contents of any
27  wire, oral, or electronic communication intercepted through a wiretap…" 18 U.S.C. § 2510.  For
    purposes of this section, "'person' means any employee, or agent of the United States or any State
28  or political subdivision thereof…"  *Id*. § 2510(6).

United States District Court
Northern District of California

of a seal, without any details regarding the sealing order, provided insufficient information for the court to determine whether the seal actually prohibited the government from disclosing the remaining documents. *Id.*

Based on this analysis, the Court finds that the records sealed pursuant to 18 U.S.C. § 3123(d) are exempt from disclosure under Exemption 3. Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED. As the Government has not yet completed its search for documents that are non-exempt, but are under seal, the denial is WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Cross-Motion as to the completion of the search and DENIES Plaintiffs' Cross-Motion as to the sealed documents, WITHOUT PREJUDICE. The Court DENIES Defendants' Motion.

**IT IS SO ORDERED.**

Dated: September 30, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

21